Adam Hosmer-Henner, Esq. (NSBN 12779)
Phil Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
**McDONALD CARANO LLP**
100 West Liberty Street, 10th Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benjamin J.A. Sauter
Amanda N. Tuminelli
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1288
benjamin.sauter@kobrekim.com
amanda.tuminelli@kobrekim.com
(*Pro Hac Vice* applications to be filed)

*Attorneys for Defendant Matthew Brent Goettsche*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations, <br><br> Defendants. | CASE NO.:  2:20-cv-00994-GMN-VCF <br><br> **DEFENDANT MATTHEW BRENT GOETTSCHE'S MOTION TO DISMISS** |

Defendant Matthew Brent Goettsche ("Mr. Goettsche"), by and through undersigned counsel, respectfully moves this Court for an Order dismissing the complaint of Mina De Oro, LLC and The Toy Chest, LLC (collectively, "Plaintiffs") as to Mr. Goettsche for lack of personal jurisdiction and for failure to abide by a binding dispute-resolution agreement. Solely in the alternative, Mr. Goettsche moves the Court for an Order staying these proceedings pending

resolution of the District of New Jersey criminal case involving the same individual Defendants as this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Plaintiffs filed this action for federal securities laws violations and related state law claims against Mr. Goettsche (among others) without establishing personal jurisdiction over Mr. Goettsche and in direct contravention of mandatory mediation and arbitration provisions.

The complaint does not include a single allegation against Mr. Goettsche personally, let alone regarding any relevant contacts he purportedly had with Nevada. In fact, aside from the caption, Mr. Goettsche's name does not appear even once in the entire complaint. The Plaintiffs vaguely allege that "all Defendants" solicited the Plaintiff entities through a website, the internet, and email to purchase "securities" in a company called "Bitclub," but general allegations like this that lump all Defendants together are woefully insufficient to subject Mr. Goettsche to suit in Nevada. Because Plaintiffs have not established personal jurisdiction over Mr. Goettsche, dismissal is required pursuant to Fed. R. Civ. P. 12(b)(2) and controlling Ninth Circuit and Supreme Court precedent.

The complaint should be dismissed for the separate and independent reason that the Plaintiffs failed to comply with the dispute resolution provisions in their Membership Agreements with Bitclub Network ("BCN"). Pursuant to the BCN Policies and Procedures that all members, including the Plaintiffs, must necessarily accept, Plaintiffs are contractually required to raise "any controversy or claim arising out of or relating to the Agreement, or the breach thereof" first through mediation and then, if unsuccessful, through arbitration. These dispute resolution provisions are clear, unambiguous, and enforceable pursuant to Nevada contract law and the Federal Arbitration Act. Because Plaintiffs failed to initiate the mediation and arbitration proceedings required by their binding contracts with BCN before filing this lawsuit, this case should be dismissed.

Solely in the alternative, and only in the event this Court does not dismiss the complaint, this case should be stayed. Specifically, all proceedings against Mr. Goettsche should be stayed

pending the resolution of an ongoing District of New Jersey criminal case, which includes allegations involving all of the named individual defendants in this case. Mr. Goettsche respectfully submits that this Court should exercise its discretion to stay all proceedings against him because the Plaintiffs' claims are related to the allegations in the criminal District of New Jersey Indictment ("D.N.J. Indictment") and would necessarily implicate Mr. Goettsche's Fifth Amendment rights and subject him to prejudice in both actions. On the other hand, staying these proceedings would not prejudice the Plaintiffs, who seek primarily monetary damages, and would serve the interests of judicial economy because of the overlapping claims and Defendants in this action and the criminal case.

## II.   PROCEDURAL HISTORY

The Plaintiffs filed the complaint in this action on June 3, 2020. ECF No. 1. On July 7, 2020, counsel for Mr. Goettsche agreed by email to waive service on Mr. Goettsche's behalf, provided Defendants supplied the proper paperwork pursuant to Fed. R. Civ. P. 4(d). Plaintiffs never followed up to effectuate the waiver of service, despite repeated written requests from Mr. Goettsche's counsel. Decl. of Adam Hosmer-Henner Ex. C.

On October 19, 2020, the Court indefinitely stayed co-Defendant Mr. Weeks' deadline to respond to the complaint, pending further order of the court, and extended the deadline for service of the complaint on the remaining Defendants to January 15, 2021. ECF No. 12.

On or about November 6, 2020, notwithstanding Mr. Goettsche's prior agreement to waive service, Plaintiffs purported to serve Mr. Goettsche with process while he was in pretrial detention in the District of New Jersey. ECF No. 14. Plaintiffs did not notify Mr. Goettsche's counsel that they had attempted personal service. Hosmer-Henner Decl. ¶ 7. It appears from the affidavit of service filed on the docket that Mr. Goettsche was not actually personally served. ECF No. 14.

Nevertheless, on January 11, 2021, Plaintiffs filed a motion for entry of clerk's default against Mr. Goettsche without notifying him or his counsel. ECF No. 17. Mr. Goettsche's counsel discovered the motion by chance while conducting a review of the docket on or about January 20, 2021. Following a meet and confer, Plaintiffs withdrew their motion for clerk's default on January

/ / /

25, 2021, subject to an agreement whereby Mr. Goettsche's counsel accepted service on behalf of Mr. Goettsche and Mr. Goettsche was given until March 23, 2021, to file a responsive pleading.

At no point before instituting this litigation did Plaintiffs attempt to mediate or arbitrate their claims with Mr. Goettsche. Hosmer-Henner Decl. ¶ 8.

## III.  MOTION TO DISMISS

### A.  This Case Should Be Dismissed For Lack Of Personal Jurisdiction.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Ruhlmann v. Rudolfsky*, No. 2:14-CV-00879-RFB, 2015 WL 5692054, at *3 (D. Nev. Sept. 27, 2015) ("A plaintiff bears the burden of establishing personal jurisdiction."). Both Nevada's long-arm statute, NRS 14.065, and the Due Process Clause require "that the defendant have such minimum contacts with the state that the defendant could reasonably anticipate being haled into court here, thereby complying with 'traditional notions of fair play and substantial justice.'" *Rosen Materials of Nevada, LLC v. MDA LLC*, No. 2:17-CV-01687-JAD, 2018 WL 3232832, at *1 (D. Nev. Feb. 7, 2018) (internal quotations and citations omitted).

There are two types of personal jurisdiction that a forum state may potentially exercise over a non-resident defendant like Mr. Goettsche: general jurisdiction and specific jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Because the Plaintiffs fail to establish either type of jurisdiction over Mr. Goettsche, the Plaintiffs have failed to meet their burden and dismissal is required under Fed. R. Civ. P. 12(b)(2).

### 1.  There Is No General Jurisdiction Over Non-Resident Mr. Goettsche In Nevada.

The Plaintiffs fail to establish general jurisdiction over Mr. Goettsche. "[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). The complaint fails to comply with Local Rule 8-1, which requires Plaintiffs to "state the statutory or other basis of claimed federal jurisdiction and the facts to support it," because it does not make any allegations

whatsoever about Mr. Goettsche's domicile.  *See* ECF No. 1 ¶¶ 2, 5.  In fact, Mr. Goettsche domicile is in Colorado where he has lived with his wife and family at all times relevant to the complaint.

In order to establish general jurisdiction over a non-resident defendant like Mr. Goettsche, the Plaintiffs must establish that Mr. Goettsche "has 'substantial' or 'continuous and systematic' contacts with the forum state. . . ."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006).  This standard is "high," demanding that "contacts with a state must 'approximate physical presence.'"  *Tuazon*, 433 F.3d at 1169; *see also Rudolfsky*, 2015 WL 5692054, at *4 ("General jurisdiction requires a defendant be 'domiciled in the forum state,' or that he engage in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state.").

Here, the Plaintiffs do not allege that Mr. Goettsche maintains continuous and systematic business contacts in Nevada.  There are no allegations at all regarding Mr. Goettsche's contacts with Nevada, much less contacts approximating a "physical presence" there.  Accordingly, the Plaintiffs fail to establish general jurisdiction over non-resident Mr. Goettsche.

### 2. There Is No Specific Jurisdiction Over Non-Resident Mr. Goettsche In Nevada.

Plaintiffs also fail to establish that Mr. Goettsche is subject to specific personal jurisdiction in Nevada.  In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted).  The Ninth Circuit applies a three-prong test to determine if specific jurisdiction is appropriate over a non-resident defendant, all of which must be satisfied: (i) the non-resident defendant must either "purposefully direct his activities or consummate some transaction with the forum or resident thereof" or "purposefully avail[] himself of the privilege of conducting activities in the forum"; (ii) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e*. it must be reasonable."  *Schwarzenegger v. Fred Martin Motor*

*Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The burden is on the *plaintiff* to establish the first two prongs, which—only if satisfied—shifts to the defendant to rebut the third prong. *Schwarzenegger*, 374 F.3d at 802.

The Plaintiffs fail to establish the first two prongs of the specific personal jurisdiction inquiry.  In the complaint, the Plaintiffs allege that the Defendants "purposely availed themselves of the benefits of conducting business in the State of Nevada" by supposedly soliciting—through a website, the internet, and email—two Nevada entities to purchase securities in a cryptocurrency mining business.  ECF No. 1 ¶¶ 5–6.  There are no other jurisdictional allegations whatsoever contained in the complaint, and these allegations fail to establish the contacts necessary for specific jurisdiction over Mr. Goettsche for at least three dispositive reasons.

*First*, contacts with the forum state must be "contacts that the defendant *himself* creates with the forum state," not the contacts of some other person or entity.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Here, the Plaintiffs impermissibly lump all of the Defendants together in their allegations but fail to set forth any allegations regarding *Mr. Goettsche's* own contacts with Nevada.  *See, e.g.*, ECF No. 1 ¶¶ 5–6.  There is not a single allegation in the entire complaint that is specific to Mr. Goettsche.  Thus, the complaint does not come close to alleging jurisdictionally relevant contacts by Mr. Goettsche with Nevada and must be dismissed.  *See e.g.*, *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19-CV-1865, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (granting dismissal for lack of personal jurisdiction as to two defendants, stating that "Plaintiffs do not specifically isolate the jurisdictional facts amongst the different [defendant] IQVIA entities and improperly lump IQVIA defendants together"); *Broidy Capital Mgmt., LLC v. Qatar*, No. CV 18-2421-JFW(EX), 2018 WL 9943551, at *6 (C.D. Cal. Aug. 22, 2018) (finding plaintiffs failed to sufficiently allege specific jurisdiction over Global Risk Defendants by generically alleging that "Defendants" or "Agent Defendants" took certain actions).[1]

---

[1] Relatedly, the Plaintiffs' pleading practice of lumping all Defendants together—whether for jurisdictional allegations or allegations pertaining to the causes of action—violates Fed. R. Civ. P. 8 and requires dismissal.  Under the pleading standard set forth in Fed. R. Civ. P. 8, "[a] plaintiff suing multiple defendants must allege the basis of his claim against *each defendant*," and if a

*Second*, the relevant contacts considered in a specific jurisdiction analysis are the defendant's "contacts with the forum itself, not with persons residing there," such that "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277. Here, the only link alleged between Mr. Goettsche and Nevada is the Nevada Plaintiffs themselves. Specifically, the Plaintiffs allege that jurisdiction is proper in Nevada because of the Defendants' supposed solicitation of Nevada entities/residents through a website and email. *See* ECF No. 1 ¶¶ 5-6. But "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278.

*Third*, the contacts alleged in the complaint do not establish purposeful availment.[2] "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)

---

complaint "fails to differentiate between any of the named Defendants" or fails to "identify any actions or omissions attributable to a particular Defendant," dismissal is proper. *Bertsch v. Discover Fin. Servs.*, No. 218-CV-00290-GMN-EJY, 2020 WL 1170212, at *3 (D. Nev. Mar. 11, 2020), *reconsideration denied*, No. 218-CV-00290-GMN-EJY, 2021 WL 325708 (D. Nev. Feb. 1, 2021); *Tucker v. JP Morgan Chase Bank, N.A.*, No. 2:10-CV-959 JCM LRL, 2011 WL 280962, at *2-3 (D. Nev. Jan. 25, 2011) (dismissing claims that lumped all defendants together for failure to satisfy Fed. R. Civ. P. 8); *United States ex rel. Juan v. Hauser*, 806 F. App'x 596, 597 (9th Cir. 2020), *cert. denied sub nom. U.S. ex rel. Juan v. Hauser*, No. 20-566, 2020 WL 7132354 (U.S. Dec. 7, 2020) (upholding dismissal of complaint that lumped all defendants together). Because the Plaintiffs impermissibly lump all Defendants together for every single allegation in the complaint, such that there is no single allegation against any one Defendant individually, the complaint fails to satisfy Fed. R. Civ. P. 8 and should be dismissed.

[2] Plaintiffs expressly assert a purposeful availment theory in the complaint. *See* ECF No. 1 ¶ 5(b). In the event the Court applies the purposeful direction test instead, the Plaintiffs still fail to establish specific jurisdiction over Mr. Goettsche. The purposeful direction test requires that the defendant allegedly have (i) "committed an intentional act"; (ii) "expressly aimed at the forum state"; and (iii) "causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (referring to *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984)). The Plaintiffs fail to make any allegations whatsoever in the complaint that the Defendants expressly aimed their solicitations at Nevada, as opposed to online generally. It is insufficient to allege merely that Defendants knew the Plaintiffs resided in Nevada. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 807 (finding it insufficient for specific jurisdiction that the defendant's intentional act eventually caused harm to the plaintiff in the forum state and that the defendant knew that the plaintiff lived in the forum state, absent a showing that the act was expressly aimed at the forum state).

(internal citations and quotations omitted). Allegations of generic solicitations by defendants as a whole through a website, the internet, and email do not suffice. Otherwise, anyone with a public website accessible in any state would be subject to specific jurisdiction in every single state.

Courts in the Ninth Circuit have consistently held that "a mere web presence is insufficient to establish personal jurisdiction." *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (citing supporting authorities). This is true even if that website is interactive and allows Nevada residents to conduct business and complete financial transactions with it online. *See, e.g.*, *Clover Gifts, Inc. v. Airs Fragrance Prod., Inc.*, No. 205-CV-1084-RCJ-LRL, 2006 WL 8441506, at *3-4 (D. Nev. Mar. 2, 2006) (finding no purposeful availment when an individual "maintain[s] an interactive website which allows residents in Nevada to conduct business and banking transactions with it online," among contacts with Nevada, including entering into contracts with Nevada residents); *see also ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) ([Plaintiff]'s allegation that [defendant]'s website is 'highly interactive' is likewise insufficient to show a prima facie case of specific personal jurisdiction.") (internal citations omitted).

The Ninth Circuit has also found that "ordinarily use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Applied Underwriters, Inc. v. Combined Mgmt., Inc.*, 371 F. App'x 834, 835 (9th Cir. 2010) (internal quotations and citations omitted). Likewise, advertisements that incidentally ended up in the forum state, without evidence that it was specifically designed for the forum state market, are insufficient to establish jurisdiction. *Holland*, 485 F.3d at 460. For all of these reasons, the Plaintiffs fail to meet the first two prongs of the Ninth Circuit's three-prong test for specific personal jurisdiction.

Finally, even assuming arguendo that the Plaintiffs satisfied the first two prongs of the specific jurisdiction test, exercising jurisdiction still would not be "reasonable" or "comport with fair play and substantial justice" under the third prong. *Schwarzenegger*, 374 F.3d at 801. To evaluate reasonableness, the Ninth Circuit uses a seven-factor balancing test, which weighs: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden

on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

Each factor favors Mr. Goettsche: (i) Mr. Goettsche has not purposefully interjected into Nevada's affairs at all, and Plaintiffs fail to make a single allegation to suggest otherwise; (ii) Mr. Goettsche resides in Colorado and is presently under home confinement with bail conditions that he not have access to a computer or the internet, which would render it nearly impossible and extremely burdensome to defend this action in Nevada; (iii) there is a conflict with the sovereignty of Mr. Goettsche's resident state, where Mr. Goettsche is subject to personal jurisdiction; (iv) Nevada has little cognizable interest in adjudicating a dispute with non-resident defendants involving events that took place and witnesses that reside outside of Nevada; (v) this action would be more efficiently resolved through mediation and/or arbitration, as required under the terms of the contracts at issue (detailed further below); (vi) although the Plaintiffs are Nevada entities, none of the Defendants are Nevada residents and therefore few of the relevant facts, documents, or witnesses are likely to be in Nevada, which burdens all parties, and the contracts at issue are not governed by Nevada law; and (vii) although the Plaintiffs bear the burden of proving the unavailability of an alternate forum, *Freestream*, 905 F.3d at 609—which they have not done—Mr. Goettsche is domiciled in Colorado and is, accordingly, subject to general jurisdiction there and, as detailed further below, this dispute is subject to alternative dispute resolution procedures.

Based on the foregoing, the Plaintiffs fail to establish specific jurisdiction over non-resident Defendant Mr. Goettsche and the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

/ / /

/ / /

/ / /

/ / /

**B.     This Case Should Be Dismissed Because Plaintiffs Did Not Comply With A Binding Dispute Resolution Agreement.**

**1.     The Parties' Dispute Resolution Agreement Requires The Plaintiffs To Mediate Before Submitting Their Claims To Arbitration.**

Plaintiffs, like all BCN members, are parties to a Membership Agreement containing a mandatory mediation and arbitration clause. Exhibit A to the Hosmer-Henner Declaration is the BCN Membership Agreement displayed to "Prospective BitClub Network Member[s]." *See* Hosmer-Henner Decl. Ex. A. The Membership Agreement provides that, "as a Member of Bitclub Network, [members] are bound by… the Membership Agreement [and] BCN's Policies and Procedures." *Id.* Prospective members had to affirmatively click the "I agree" button manifesting their consent to the Membership Agreement. *See* Hosmer-Henner Decl. Ex. A.

Moreover, before confirming their agreement to the Membership Agreement, members had to affirmatively click a box next to the statement, "I agree to the Policies and Procedures." *See* Hosmer-Henner Decl. Ex. A. These Policies and Procedures were linked and mandate that, "It is the responsibility of each Member to read, understand, adhere to and ensure that he or she is aware of and operating under the most current version of these Agreements." *See* Hosmer-Henner Decl. Ex. B, Section 2. Thus, as members of BCN, Plaintiffs were parties to the BCN Membership Agreement, including the BCN Policies and Procedures, and were required to operate under the most current version of the Policies and Procedures. *See* Hosmer-Henner Decl. Ex. B, Section 2.

BCN's Policies and Procedures contain a clear and unambiguous procedure for dispute resolution, requiring the Plaintiffs to engage in non-binding mediation in the first instance, and if that is not successful, to settle any remaining disputes through confidential arbitration:

> SECTION 8.2 – Mediation
> Prior to instituting an arbitration, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.
>
> SECTION 8.3 – Arbitration
> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, not including unilateral discretionary policy enforcement by the Company, shall be settled by confidential arbitration. The Parties waive all rights to trial by jury or to any court. Arbitration shall be conducted in either

> Douglas, Isle of Man, or, if the Isle of Man is determined to be inconvenient, then Manila, Philippines.

Hosmer-Henner Decl. Ex. B.

Courts routinely enforce dispute resolution procedures like the one in the BCN Membership Agreement. "When parties enter into a valid and enforceable agreement to engage in a non-binding dispute resolution process before submitting their claims to binding arbitration or litigation, courts should require compliance with that agreement." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1000 (9th Cir. 2010); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1207 (9th Cir. 1998) (reversing denial of motion to compel arbitration and enforcing contract provision requiring plaintiff to submit dispute to multi-tiered dispute resolution process). Accordingly, Plaintiffs are bound by the plain language of BCN's Policies and Procedures requiring them to first submit "any dispute arising from or relating to the [Membership] Agreement" to non-binding mediation. *See MB Am., Inc. v. Alaska Pac. Leasing,* 132 Nev. 78, 82 (2016) (rejecting claims because plaintiff failed to comply with a pre-litigation mediation provision: "Here, as the provision at issue unambiguously addresses mediation as a condition precedent to litigation, the terms are given their 'usual and ordinary signification.'").

The Plaintiffs' claims clearly arise from and relate to the BCN Membership Agreement, and they cannot avoid this result by strategically drafting their complaint to avoid mentioning the Membership Agreement and the mandatory dispute resolution provision by name. *See Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), applying California contract law principles identical to Nevada contract law: "Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."). The complaint affirmatively alleges the Plaintiffs' membership in BCN, alleges breach of contract and fraud claims related to the Plaintiffs' contract with BCN, and seeks monetary damages based on "dividends, bonuses, commissions and other compensation" allegedly owed pursuant to their contract with BCN. By its plain terms, the BCN Membership Agreement requires the parties to attempt to mediate such claims in good faith, and if that is not successful, to arbitrate their claims. Because the Plaintiffs never attempted to mediate or arbitrate as required by the contract, the

complaint fails to state a claim and should be dismissed under Federal Rule 12(b)(6). *See Brosnan,* 2008 WL 2388392, at *1.[3]

### 2. The Plaintiffs' Claims Should Be Dismissed Because They Are Subject to Mandatory Arbitration.

Even if the Plaintiffs had attempted to mediate, which they did not, their claims still are not properly before this Court because they are subject to mandatory arbitration. Where the claims in a plaintiff's complaint are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6). *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding district court erred in failing to grant motion to compel arbitration of state claims) (citing 9 U.S.C. §§ 3, 4); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms." (citing *Reynolds,* 470 U.S. at 221)).

When a party petitions a court to enforce an arbitration provision under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if

---

[3] Other Circuits and district courts have likewise upheld the principle that a party's failure to comply with mandatory dispute resolution procedures bars that party from pursuing litigation. *See, e.g.*, *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 335 (7th Cir. 1987) (affirmed judgment against plaintiff for failure to comply with mediation clause before instituting litigation); *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003) (holding mediation was a condition precedent to arbitration); *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002) (same); *Ponce Roofing, Inc. v. Roumel Corp.*, 190 F. Supp. 2d 264, 267 (D.P.R. 2002) (dismissing action where the plaintiff failed to submit to multi-tiered ADR process); *Ziarno v. Gardner Carton & Douglas, LLP*, Civ. A. 03-3880, 2004 WL 838131, at *3 (E.D. Pa. Apr. 8, 2004) (dismissing action where plaintiff failed to comply with agreement to proceed before "mediator-arbitrator who has special expertise").

so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). Because the BCN Membership Agreement is "a contract evidencing a transaction involving commerce," it is subject to the FAA. 9 U.S.C. § 2.

The Plaintiffs' claims, all of which arise out of or relate to the BCN Membership Agreement, are subject to mandatory arbitration. By its terms, the BCN Membership Agreement requires the parties to attempt to mediate in good faith, and if that is not successful, to arbitrate "any controversy or claim arising out of or relating to the Agreement, or the breach thereof." The provision is unambiguously broad: any claims arising out of the BCN Membership Agreement or relating to the agreement must be arbitrated.

The Ninth Circuit routinely enforces broad arbitration provisions similar to the one in the BCN Membership Agreement. *See, Optimum Prods. v. Home Box Office,* No. 19-56222, 2020 WL 7334537, at *1 (9th Cir. Dec. 14, 2020) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly, and we likewise conclude that the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.") (cleaned up); *Peters v. Amazon Servs., LLC*, 669 F. App'x 487, 488 (9th Cir. 2016) (affirming district court's order compelling arbitration where agreement required arbitration of "[a]ny dispute . . . or claim relating in any way" to the agreement).

The Plaintiff's claims here—which relate to their membership in BCN and expressly allege breach of contract and fraud claims related to the Plaintiffs' contract with BCN—are clearly encompassed by the arbitration clause.[4] To the extent there is any question as to whether the

---

[4] This includes the Plaintiffs' claim for fraudulent inducement, which alleges that the Defendants made "misrepresentations. . . in order to induce Plaintiffs" to enter into a contract with BCN in general, but does not allege that the Plaintiffs were fraudulently induced to enter into the arbitration provision specifically. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Buckeye Check Cashing, Inc. v. Cardegna*,

Plaintiffs' claims fall within the scope of the arbitration clause, doubts are resolved "in favor of arbitration." *See Optimum,* 2020 WL 7334537, at *1 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25 (1983))).

Because the BCN Membership Agreement's dispute resolution provisions are unambiguous and enforceable against the Plaintiffs, Mr. Goettsche respectfully requests that this Court dismiss this litigation pursuant to Rule 12(b)(6) and the Federal Arbitration Act. *See, e.g., See Lei v. Amway Corp.,* No. CV1404022RGKAGRX, 2014 WL 12596787, at *12 (C.D. Cal. July 23, 2014) (dismissing arbitrable claims (citing *Thinket Ink Info.,* 368 F.3d at 1060)).

## IV.   ALTERNATIVE MOTION TO STAY PROCEEDINGS

### A.   Solely In The Alternative, This Litigation Should Be Stayed Pending The Resolution Of The District of New Jersey Criminal Case.

A district court may exercise its discretion to stay civil proceedings pending the outcome of parallel criminal proceedings. *Nat'l Fire & Marine Ins. Co. v. Holper*, No. 2:18-CV-1338, 2018 WL 5726191, at *1 (D. Nev. Oct. 31, 2018) (staying wrongful death action pending related criminal case); *Perez v. Station Casinos LLC*, No. 2:15-CV-01553, 2016 WL 8959135, at *2 (D. Nev. Feb. 8, 2016) (staying civil case pending related criminal case). In determining whether to stay civil proceedings while parallel criminal proceedings are pending, courts must consider the particular circumstances and competing interests involved, including (i) the extent to which the defendant's Fifth Amendment rights are implicated; (ii) the plaintiff's interest in proceeding expeditiously; (iii) the burden the proceedings may impose on the defendant; (iv) the convenience of the court and the efficient use of judicial resources; (v) the interests of persons not parties to the civil litigation; and (vi) the interest of the public in the pending civil and criminal litigation. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).

Analysis of the above factors weighs heavily in favor of staying this civil action while the D.N.J. criminal proceeding is pending.

---

546 U.S. 440 (2006) (holding challenges to validity of a contract as a whole, rather than the arbitration clause within it, must be resolved by the arbitrator) (collecting cases).

1. **Litigating This Case Implicates Mr. Goettsche's Fifth Amendment Rights.**

Mr. Goettsche's Fifth Amendment rights will be heavily implicated if he is required to participate in this litigation while the District of New Jersey criminal case proceeds, because the Plaintiffs' claims are related to the triable criminal allegations in the D.N.J. Indictment.

The Fifth Amendment privilege against self-incrimination protects a person not only from being a witness against himself in a criminal proceeding, but also privileges him from having to answer in a civil proceeding when it may incriminate him in a criminal proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (holding that Fifth Amendment privilege can be asserted in any civil proceeding "and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."). "[T]he 'privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution' and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (internal citations omitted).

The strongest case for a stay of a civil action occurs after an indictment is returned in the criminal matter because the possibility for self-incrimination is greatest at that stage and the potential harm to civil litigants arising from delaying the case is reduced by the Speedy Trial Act. *See Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir. 1989) (explaining stay of civil proceedings is more important after criminal indictment is filed); *Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. #2*, No. 06-CV-124, 2007 WL 1227592, at *2 (D. Mont. Apr. 24, 2007) (same). Such is the case here.

The Plaintiffs' allegations that the Defendants made misrepresentations to BCN members, defrauded the Plaintiffs, and violated securities laws are similar to the criminal acts described in the D.N.J. Indictment, which was filed on December 5, 2019, long before the Plaintiffs filed their complaint. *See* 2:19-CR-877 (CCC), ECF No. 9 (Indictment).  Thus, there is "the substantial probability that discovery will include inquiring into" facts at issue in the criminal case. *See Nat'l*

*Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2. In order to defend this action, Mr. Goettsche will need to make representations to the Court about what occurred between the parties, and any representations made by Mr. Goettsche would implicate his Fifth Amendment rights and prejudice his ability to defend himself against the charges in the D.N.J.

Simply put, Mr. Goettsche should not be forced to choose between invoking his Fifth Amendment rights and defending himself in this action, and this is a choice that all named Defendants will face in this case. Accordingly, this factor weighs strongly in favor of a stay. *See Nat'l Fire & Marine Ins. Co.,* 2018 WL 5726191, at *2 (finding first *Keating* factor favored a stay because defendant "will be forced to decide whether he should risk an adverse inference or participate in discovery at the detriment of his criminal case").

### 2. The Plaintiff's Interest In Proceeding Expeditiously Is Outweighed By The Burden On Mr. Goettsche To Litigate Both Actions Without Resources.

Putting aside Mr. Goettsche's Constitutional Rights, which are paramount here, Mr. Goettsche will be irreparably prejudiced by being forced to litigate both cases with limited access to the information relevant to this action, counsel, and financial resources.

Mr. Goettsche was detained until fairly recently (December 18, 2020), at which point he was released to home confinement with the conditions that he not have access to a computer or the internet. *See* 2:19-CR-877, ECF No. 171 (Order Setting Conditions of Release). In addition, the Government previously seized all of his personal paper files, phones, and other electronic devices, so he no longer has access to any records related to BCN. He therefore has no access to any documents or communications that may be relevant to this action. It will also prove to be extremely difficult, if not impossible, for him to appear in Nevada for court proceedings, given his release conditions. Without a stay, Mr. Goettsche is forced to litigate this action with one hand tied behind his back.

By contrast, the Plaintiffs will not be prejudiced by a stay of this action. It took nearly eight months for the Plaintiffs to even attempt to serve Mr. Goettsche, which does not indicate that Plaintiffs have a strong interest in "proceeding expeditiously." *See Perez*, 2016 WL 8959135, at *2 (noting there was little potential prejudice to plaintiff in staying civil case where plaintiff

failed to follow up on proposed discovery order). There is no reason to believe that any evidence will be spoiled while the case is stayed or that any of the Plaintiffs' claims will be affected with the passage of time. Further, the Plaintiffs risk only monetary damages, "which is a relatively minimal harm in comparison" to Mr. Goettsche's Fifth Amendment rights. *See Nat'l Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2. Accordingly, the second and third factors identified in *Keating* weigh in favor of a stay. *See id.*

### 3. The Remaining *Keating* Factors Support A Stay.

The remaining factors – the convenience of the court and the efficient use of judicial resources, the interests of third parties, and the interest of the public in both actions –all weigh in favor of granting a stay.

If the Court stays this action at this stage, pre-answer and before discovery has begun, it will avoid unnecessary delays caused by Mr. Goettsche's and the other Defendants' inability to access information. In addition, the Court has already stayed Mr. Weeks' time to respond to the complaint indefinitely. The other Defendants either have not been served or have not appeared in this action. Because the D.N.J. Indictment also includes allegations against the other individual Defendants named in this action, staying this action will actually conserve judicial resources until such time that all Defendants are meaningfully able to participate in the litigation. *See Perez*, 2016 WL 8959135, at *2.

Mr. Goettsche is unaware of any third parties who have an interest in this litigation, meaning the factor regarding third party interests weighs in favor of a stay. *See Nat'l Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2.[5]

Finally, the last factor weighs in favor of a stay because the public interest in fair criminal proceedings is stronger than in resolving a civil case. *Id.* at *2 ("Lastly, the court cannot ignore the remarkable public interest in favor of fair criminal proceedings."); *accord Perez,* 2016 WL 8959135, at *2 (staying civil case pending related criminal case and holding, "Finally, the Court

---

[5] Plaintiffs vaguely refer to "independent business operators" in the complaint. ECF No. 1 ¶ 6. To the extent the Plaintiffs assert they relied on misrepresentations by independent entities other than Defendants, Mr. Goettsche expressly reserves and does not waive his right to move for dismissal for failure to join a necessary party.

finds that the interest of the public in the criminal litigation is greater than that of the public in the civil litigation").

Accordingly, all of the *Keating* factors weigh in favor of staying this action while the pending criminal proceeding in the D.N.J. is resolved.

## V. CONCLUSION

For the reasons set forth above, Defendant Matthew Brent Goettsche respectfully requests that this Court dismiss the complaint against Mr. Goettsche for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act. Solely in the alternative, Mr. Goettsche requests that the action be stayed pending resolution of the criminal case.

DATED: March 23, 2021.

McDONALD CARANO LLP

*/s/ Adam Hosmer-Henner*
Adam Hosmer-Henner, Esq. (NSBN 12779)
Phil Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
100 West Liberty Street, 10th Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benjamin J.A. Sauter
Amanda N. Tuminelli
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
(212) 488-1288
benjamin.sauter@kobrekim.com
amanda.tuminelli@kobrekim.com
(*Pro Hac Vice* applications to be filed)

*Attorneys for Defendant Matthew Brent Goettsche*