**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, *et. al*, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:20-cv-00994-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| MATTHEW BRENT GOETTSCHE, *et. al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 21), filed by Defendant Matthew Brent Goettsche ("Mr. Goettsche"). Plaintiffs Mina De Oro, LLC and The Toy Chest, LLC (collectively, "Plaintiffs"), filed a Response, (ECF No. 28), and Mr. Goettsche filed a Reply, (ECF No. 29).

For the reasons discussed below, Mr. Goettsche's Motion to Dismiss is **GRANTED.**

**I.    BACKGROUND**

This case arises out of alleged federal securities violations in a multi-level bitcoin mining scheme. (*See generally*, Compl., ECF No. 1). Plaintiffs allege that Mr. Goettsche, in concert with the other defendant individuals in this case, fraudulently offered sale positions in a multi-level matrix and shares of a bitcoin mining business. (*Id.* ¶ 6). Defendants solicited these investments using their website www.bitclub.com ("Bitclub"). (*Id.*). To induce investors, Defendants falsely advertised a large crypto currency mining operation and returns on investment. (*Id.* ¶ 8). Relying upon these false statements, Plaintiffs each invested $250,000 into Bitclub's scheme. (*Id.* ¶ 10). However, instead of using the money as advertised, Plaintiffs allege that Defendants diverted the money for personal use. (*Id.* ¶ 9).

Plaintiffs now seek damages from the loss of their investment and the loss of the advertised investment returns. (*Id.* ¶ 14).  The Complaint alleges the following causes of action against all Defendants: (1) violation of 17 C.F.R. § 240.10B-5; (2) violation of Nevada securities law under NRS 90.570; (3) common law fraud; (4) fraudulent inducement; (5) breach of contract; and (6) unjust enrichment. (*Id.* ¶¶ 17–59).  Mr. Goettsche is also a defendant in a criminal case out of the District of New Jersey involving the same conduct. (Mot. Dismiss 2:27–3:9, ECF No. 1).  Mr. Goettsche now moves to dismiss this case for lack of personal jurisdiction. (*Id.* 1:24–27).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2).  When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  District courts take the uncontroverted allegations in the complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Judicial Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit will not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

*v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).  Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

### III.  DISCUSSION

Plaintiff alleges that the Court has specific personal jurisdiction[1] over all of the Defendants in this case for two reasons: (1) Plaintiffs are Nevada entities and the solicitations to purchase the fraudulent securities occurred in the State of Nevada; and (2) Defendants knew Plaintiffs were Nevada residents and purposefully availed themselves of the benefits of conducting business in the State of Nevada and solicited Nevada residents in the State of Nevada. (Compl. ¶ 5).  In contrast, Defendant argues that the Court lacks personal jurisdiction because: (1) Plaintiffs impermissibly lump all of the Defendants together in their allegations and fail to set forth any allegations specifically regarding Mr. Goettsche's contacts with Nevada; (2) Plaintiffs themselves are Mr. Goettsche's only link to Nevada; and (3) Plaintiffs cannot demonstrate purposeful availment with regards to Mr. Goettsche. (Mot. Dismiss 5:16–8:23).[2]

As an initial matter, the Complaint does not make any allegations concerning Mr. Goettsche specifically; it merely alleges that Defendants collectively solicited Plaintiffs to

---

[1] The parties agree that the Court does not have general personal jurisdiction over Mr. Goettsche.

[2] Mr. Goettsche also argues that this case should be dismissed because Plaintiffs failed to engage in mediation prior to bringing this case, as required by Bitclub's Membership Agreement. (Mot. Dismiss 10:1–14:9, ECF No. 21).  However, because the Court finds that it lacks personal jurisdiction over Mr. Goettsche, the Court need not discuss the mediation argument.

participate in a multi-level bitcoin mining scheme. (Compl. ¶ 6). Since the Complaint does not once mention Mr. Goettsche, other than in the caption, the Court cannot assess whether he has sufficient contacts with Nevada to establish personal jurisdiction. *See Medimpact Healthcare Systems, Inc. v. IQVIA Holdings, Inc.*, No. 19cv1865-GPC, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (dismissing a defendant for lack of personal jurisdiction when "plaintiffs [did] not specifically isolate the jurisdictional facts amongst the different . . . entities"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018) (no personal jurisdiction over one individual defendant when the complaint grouped all defendants together).

However, even assuming that the generalized allegations in the Complaint individually apply to Mr. Goettsche, personal jurisdiction is still not established. Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). Further, personal jurisdiction cannot be established from the conduct of a plaintiff or third parties within the forum. *Id.* In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*, 503 F.3d at 1057. If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* However, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* In a securities case, the first prong of the specific jurisdiction analysis may be established either by purposeful direction or purposeful availment. *See, e.g.*, *SEC v. Jammin' Java Corp.*, No. 2:15-cv-08921-SVW-MRW, 2016 U.S. Dist. LEXIS 184773, at *23 (C.D. Cal. July 18, 2016). The Court will address each in turn.

### A.  Purposeful Direction

Under the purposeful direction analysis, district courts consider whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. When determining whether the defendant expressly aimed its conduct at the forum state, the court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284).

As discussed above, the Complaint merely suggests that Defendants solicited investments from Nevada residents in the State of Nevada. (Compl. ¶ 5). The Complaint does not explain how this solicitation was an act expressly aimed at Nevada, rather than an act generally aimed at anyone with access to the internet. *Schwarzenegger*, 374 F.3d at 803. Therefore, on the face of the Complaint, the only link between Mr. Goettsche and Nevada is his connection to Plaintiffs, which is not enough to establish "purposeful direction." *Walden*, 571 U.S. at 284.

//

### B. Purposeful Availment

To establish purposeful availment, a plaintiff must allege conduct "indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co., Ltd*, 480 U.S. at 112). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

With respect to an entity's online presence, the Ninth Circuit has adopted a "sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Applying this approach, courts in this Circuit "recognize[] a distinction between passive websites, which simply display information, and interactive websites, which allow customers to exchange information with a business." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Where a defendant's website is either passive or falls somewhere in the middle of the sliding scale, Courts require "something more" to establish specific jurisdiction. *Desert Rock Entm't II LLC v. D. Hotel & Suites, Inc.*, No. 2:15-cv-01417-MMD-VCF, 2016 U.S. Dist. LEXIS 58042, 2016 WL 1732724, at *3 (D. Nev. May 2, 2016) (quoting *Cybersell*, 130 F.3d at 418). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011).

In the present case, Plaintiffs do not specifically allege whether Bitclub's website is passive or interactive, but the Court assumes that the website fosters some level of interaction, since it allegedly solicited investments. Therefore, Bitclub's website likely falls somewhere in the middle of the sliding scale, and Plaintiffs must demonstrate 'something more,' besides the mere fact that Bitclub's website exists, to establish personal jurisdiction. *See Desert Rock*, 2016 WL 1732724, at *3. However, Plaintiffs' Complaint provides no allegations concerning the interactivity level of Bitclub's website, its geographic scope, or whether Bitclub or Mr. Goettsche individually targeted either Plaintiff. Plaintiff's Response to the Motion to Dismiss offers no further clarification; it cites the *Mavrix* standard, but neglects to provide any explanation of how Mr. Goettsche intended to "serve the market" in Nevada. *Asahi Metal*, 480 U.S. at 112, 107. Accordingly, Plaintiffs fail to establish any purposeful availment.

Because Plaintiffs demonstrated neither that Mr. Goettsche purposefully directed his activities at Nevada, nor that he purposefully availed himself of the privileges of conducting activities in Nevada, the first prong of the specific personal jurisdiction analysis is not met. Therefore, Mr. Goettsche's Motion to Dismiss is granted, and Plaintiffs' claims against Mr. Goettsche are dismissed for lack of personal jurisdiction.

### C.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court finds that Plaintiffs may be able to plead additional facts that could cure the Complaint's current deficiencies related to personal jurisdiction. *See, e.g.*, *Fluidigm Corp. v. bioMerieux SA*, No. 19-cv-02716-LHK, 2019 WL 6612063, at *7 (N.D. Cal. Dec. 5, 2019) (granting leave to amend after dismissing the case for lack of personal jurisdiction when "an opportunity to amend the Complaint would not be futile"). Accordingly, the Court will grant Plaintiffs leave to file an

amended complaint. Plaintiffs shall file their amended complaint within twenty-one (21) days of the entry of this Order.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Mr. Goettsche's Motion to Dismiss, (ECF No. 21), is **GRANTED**. Plaintiffs' claims against Mr. Goettsche are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that if Plaintiffs seek to amend their Complaint for the purposes of establishing personal jurisdiction, Plaintiffs shall file an amended complaint within twenty-one (21) days from the entry of this order.

**DATED** this __28__ day of March, 2022.

_____
Gloria M. Navarro, Chief Judge
United States District Court