Adam Hosmer-Henner, Esq. (NSBN 12779)
Phil Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
**McDONALD CARANO LLP**
100 West Liberty Street, 10th Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benjamin J.A. Sauter (admitted *pro hac vice*)
Amanda N. Tuminelli (admitted *pro hac vice*)
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1288
benjamin.sauter@kobrekim.com
amanda.tuminelli@kobrekim.com

*Attorneys for Defendant Matthew Brent Goettsche*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company, | CASE NO.:  2:20-cv-00994-CDS-VCF |
| Plaintiffs, | **DEFENDANT MATTHEW BRENT GOETTSCHE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations, | |
| Defendants. | |

Defendant Matthew Brent Goettsche ("Mr. Goettsche"), by and through undersigned counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) for an Order dismissing the first amended complaint of Mina De Oro, LLC and The Toy Chest, LLC (collectively, "Plaintiffs"), ECF No. 33, as to Mr. Goettsche for lack of personal jurisdiction and for failure to abide by a binding dispute-resolution agreement.  Solely in the alternative, Mr. Goettsche moves this Court for an Order staying these proceedings pending

resolution of the District of New Jersey criminal case involving the same individual Defendants as this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs' initial claims against Mr. Goettsche were dismissed for lack of personal jurisdiction. ECF No. 30 ("Dismissal Order") at 4.[1] After being granted leave to amend, Plaintiffs refiled essentially the same pleading and added only the allegation (apparently obtained from an internet search) that Mr. Goettsche used an accountant located in Nevada. As this new allegation is wholly insufficient to confer jurisdiction or cure the defects previously identified in the Dismissal Order, the Court should dismiss Plaintiffs' amended complaint and deny further futile amendments.

Plaintiffs' initial claims against Mr. Goettsche were dismissed for lack of personal jurisdiction as their Complaint did "not once mention Mr. Goettsche, other than in the caption" and Plaintiffs failed to demonstrate purposeful direction or purposeful availment by Mr. Goettsche. Dismissal Order at 4 (noting also that the "parties agree that the Court does not have general personal jurisdiction over Mr. Goettsche"); ECF No. 28 at 3n.1 ("Plaintiffs do not dispute that this Court does not have general jurisdiction over Defendant Goettsche"). Regarding purposeful direction, the Court held that Plaintiffs' allegation that the Defendants, including Mr. Goettsche, solicited investments from Nevada residents in the State of Nevada was insufficient to establish personal jurisdiction over Mr. Goettsche.  Further, the Court found that the Plaintiffs failed to demonstrate purposeful availment because they did not allege *how* Mr. Goettsche intended to serve the Nevada market or targeted the Plaintiffs *specifically*.

Plaintiffs' amended complaint flatly fails to address the jurisdictional deficiencies that were identified in the Dismissal Order.  In fact, the amended complaint's jurisdictional allegations are virtually identical to the initial complaint's but for the addition of one new (and equally defective) clause and three irrelevant paragraphs, which were copied nearly verbatim from a press release

---

[1] Hosmer-Henner Decl. Ex. E. As this case has been recently reassigned, certain key filings have been included for the Court's convenience as exhibits to the Declaration of Adam Hosmer-Henner.

about a federal money laundering plea of a non-party, Mr. Goettsche's accountant Brad Beckstead, for acts entirely unrelated to the securities and state law claims asserted in this action. Plaintiffs do not allege any connection between themselves and Mr. Beckstead or his actions. Despite this Court specifically identifying for the Plaintiffs what was missing from their initial complaint, Plaintiffs still do not—and cannot—allege facts sufficient to establish personal jurisdiction over Mr. Goettsche.

*First*, Plaintiffs added six conclusory words to their jurisdictional allegations, which now state—without any supporting factual allegations whatsoever—that the solicitations in Nevada of the Plaintiffs occurred "at the direction of Defendant Goettsche." ECF No. 33 § 5(a). Simply reciting the words "at the direction of Defendant Goettsche" does not cure the failings in Plaintiffs' jurisdictional theories, nor does it overcome this Court's prior holding that personal jurisdiction cannot be established by merely alleging that Mr. Goettsche "solicited investments from Nevada residents in the State of Nevada" without explaining "how this solicitation was an act expressly aimed at Nevada." Dismissal Order at 5. Such an explanation still cannot be found anywhere in the amended complaint. The Dismissal Order was clear that even if the general allegations were attributed to Mr. Goettsche, as Plaintiffs now attempt to claim, this still would not establish personal jurisdiction. *Id.* at 4-5. This alone warrants dismissal as Plaintiffs failed to address the Court's holdings

*Second*, the three additional paragraphs related to the federal plea of non-party Mr. Beckstead, which were clearly added in a cynical attempt to inject irrelevant and scandalous materials into this dispute, do not change the personal jurisdiction analysis as to Mr. Goettsche in the slightest. The causes of action asserted against Mr. Goettsche in this case, which relate to the purported solicitation of the Plaintiffs to purchase "securities" in Bitclub Network ("BCN"), do not arise out of—nor do they relate in any way to—the guilty plea of this non-party for conspiracy to commit money laundering and aiding in the preparation of a false tax return. Plaintiffs' claims and indeed their alleged damages have no relationship to Mr. Goettsche's personal tax returns. Plaintiffs do not allege, nor can they, that their purchases or investments were based on Mr. Goettsche's private and confidential tax returns, that they knew Mr. Beckstead, that they received

any communications from Mr. Beckstead, or that they were harmed in any way by the new allegations related to Mr. Beckstead. As such, these allegations provide no basis for the exercise of specific jurisdiction over Mr. Goettsche.

Because Plaintiffs have done nothing to cure the jurisdictional defects that doomed their initial complaint, this Court need not go any further. However, the amended complaint should be dismissed for the separate and independent reason that Plaintiffs failed to comply with the dispute resolution provisions in their Membership Agreements with BCN. Pursuant to the BCN Policies and Procedures that all members, including the Plaintiffs, must necessarily accept, Plaintiffs are contractually required to raise "any controversy or claim arising out of or relating to the Agreement, or the breach thereof" first through mediation and then, if unsuccessful, through arbitration. Hosmer-Henner Decl. Ex. B. These dispute resolution provisions are clear, unambiguous, and enforceable pursuant to Nevada contract law and the Federal Arbitration Act. Because Plaintiffs failed to initiate the mediation and arbitration proceedings required by their binding contracts with BCN before filing this lawsuit, this case should be dismissed. Notably absent from Plaintiffs' changes to their complaint are any allegations that address this deficiency.

Solely in the alternative, and only in the event this Court does not dismiss the amended complaint, this case should be stayed. Specifically, all proceedings against Mr. Goettsche should be stayed pending the resolution of an ongoing District of New Jersey criminal case, which includes allegations involving all named individual defendants in this case, and in which Mr. Beckstead may be a witness. Mr. Goettsche respectfully submits that this Court should exercise its discretion to stay all proceedings against him because the Plaintiffs' claims are related to the allegations in the criminal District of New Jersey Indictment and would necessarily implicate Mr. Goettsche's Fifth Amendment rights and subject him to prejudice in both actions. But staying these proceedings would not prejudice the Plaintiffs, who only seek monetary damages, and would serve the interests of judicial economy because of the overlapping claims and Defendants in this action and the criminal case.

//

//

## II.    PROCEDURAL HISTORY

Plaintiffs have made a series of procedural missteps culminating in the current amended pleading. Plaintiffs filed the initial complaint in this action on June 3, 2020.  ECF No. 1.  On July 7, 2020, counsel for Mr. Goettsche agreed by email to waive service on Mr. Goettsche's behalf, provided Defendants supplied the proper paperwork pursuant to Fed. R. Civ. P. 4(d).  Plaintiffs never followed up to effectuate the waiver of service, despite repeated written requests from Mr. Goettsche's counsel.  Hosmer-Henner Decl. Ex. C.

On October 19, 2020, the Court indefinitely stayed co-Defendant Mr. Weeks' deadline to respond to the complaint, pending further order of the court, and extended the deadline for service of the complaint on the remaining Defendants to January 15, 2021.  ECF No. 12.

On or about November 6, 2020, notwithstanding Mr. Goettsche's prior agreement to waive service, Plaintiffs purported to serve Mr. Goettsche with process while he was in pretrial detention in the District of New Jersey.  ECF No. 14.  Plaintiffs did not notify Mr. Goettsche's counsel that they had attempted personal service.  Hosmer-Henner Decl. ¶ 7.  It appears from the affidavit of service filed on the docket that Mr. Goettsche was not actually personally served.  ECF No. 14.

Nevertheless, and without any proper basis, on January 11, 2021, Plaintiffs filed a motion for entry of clerk's default against Mr. Goettsche without notifying him or his counsel.  ECF No. 17.  Mr. Goettsche's counsel discovered the motion by chance while conducting a review of the docket on or about January 20, 2021.  Following a meet and confer, Plaintiffs withdrew their motion for clerk's default on January 25, 2021, subject to an agreement whereby Mr. Goettsche's counsel accepted service on behalf of Mr. Goettsche and Mr. Goettsche was given until March 23, 2021, to file a responsive pleading.

On March 23, 2021, Mr. Goettsche filed a motion to dismiss the initial complaint as to him personally based on (i) lack of personal jurisdiction and (ii) failure to abide by a binding dispute-resolution agreement.   Hosmer-Henner Decl. Ex. D (ECF No. 21).   In their opposition, the Plaintiffs conceded a lack of general jurisdiction and claimed that the defendants purposefully availed themselves of Nevada through the operation of a general website that did not "exclude Nevada from its pool of prospective customers."  Hosmer-Henner Decl. Ex. F (ECF No. 28) at n.1,

3.  Plaintiffs' opposition copied and pasted inapposite case law and left in arguments related to parties in other cases. ECF No. 28 at 4-5 ("As such Nevada substantive law applies here. See also First American Defendant's Motion to Dismiss pg. 10"). Plaintiffs also did not dispute that they failed to comply with the binding dispute resolution and mediation provisions, but instead claimed that they "had no access to the contract prior to filing the lawsuit" and that such provisions "are not applicable" to this dispute. *Id.* at 7-8.

After full briefing, the Court granted Mr. Goettsche's motion to dismiss on March 28, 2022, for failure to establish personal jurisdiction over Mr. Goettsche.  In relevant part, the Court held that "[b]ecause Plaintiffs demonstrated neither that Mr. Goettsche purposefully directed his activities at Nevada, nor that he purposefully availed himself of the privileges of conducting activities in Nevada, the first prong of the specific personal jurisdiction analysis is not met." Dismissal Order at 7.  Because the Court found no personal jurisdiction, it did not address the other basis for dismissal or the alternative request for a stay, both of which are re-asserted herein.

Importantly, at no point before instituting this litigation or after the dismissal, once they were inarguably on notice of the arbitration and mediation provisions, did Plaintiffs attempt to mediate or arbitrate their claims with Mr. Goettsche.  Hosmer-Henner Decl. ¶ 8.

## III.   MOTION TO DISMISS

### A.    This Case Should Be Dismissed For Lack Of Personal Jurisdiction.

Plaintiffs' perfunctory amendment essentially just adds allegations, copied from public press releases, that Mr. Goettsche used a Nevada accountant to file his tax returns. This amendment does not demonstrate any communication, connection, or link whatsoever between Mr. Goettsche's accountant and Plaintiffs. Because Plaintiffs do not, and cannot, address the clearly delineated deficiencies of their initial complaint and still have not established specific jurisdiction over Mr. Goettsche, the Plaintiffs have failed to meet their burden and dismissal is again required under Fed. R. Civ. P. 12(b)(2).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Ruhlmann v. Rudolfsky*, No. 2:14-CV-

00879-RFB, 2015 WL 5692054, at *3 (D. Nev. Sept. 27, 2015) ("A plaintiff bears the burden of establishing personal jurisdiction."). Both Nevada's long-arm statute, NRS 14.065, and the Due Process Clause require "that the defendant have such minimum contacts with the state that the defendant could reasonably anticipate being haled into court here, thereby complying with 'traditional notions of fair play and substantial justice.'" *Rosen Materials of Nevada, LLC v. MDA LLC*, No. 2:17-CV-01687-JAD, 2018 WL 3232832, at *1 (D. Nev. Feb. 7, 2018) (internal quotations and citations omitted). As Plaintiffs conceded that the Court does not have general jurisdiction over Mr. Goettsche, the only analysis for the Court relates to specific jurisdiction. ECF No. 30 at 4; ECF No. 28. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted).

The Ninth Circuit applies a three-prong test to determine if specific jurisdiction is appropriate over a non-resident defendant, all of which must be satisfied: (i) the non-resident defendant must either "purposefully direct his activities or consummate some transaction with the forum or resident thereof" or "purposefully avail[] himself of the privilege of conducting activities in the forum"; (ii) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The burden is on the *plaintiff* to establish the first two prongs, which—only if satisfied—shifts to the defendant to rebut the third prong. *Schwarzenegger*, 374 F.3d at 802.

Despite nearly a year to contemplate modifications to cure defects in their initial complaint, and despite this Court's order which clearly delineated certain of those defects, Plaintiffs *still* fail to establish the first two prongs of the specific personal jurisdiction inquiry. Plaintiffs' amendments fall into two general categories. *First*, Plaintiffs seemingly re-categorize their defective personal jurisdiction allegations from purposeful availment to purposeful direction, now alleging that, "at the direction of Mr. Goettsche," the Defendants solicited—through a website, the internet, and email—two Nevada entities to purchase securities in a cryptocurrency mining business. ECF No. 33 ¶ 5. *Second*, Plaintiffs now allege an unrelated combination of supposed

contacts between Mr. Goettsche and Nevada, namely that Mr. Goettsche purportedly directed a conspiracy in Nevada with a Nevada accountant related to a separate money laundering scheme. ECF No. 33 ¶ 5(b-d).  But the causes of action asserted herein for federal securities violations and related state law claims do not in any way "deriv[e] from," are not "connected with," and do not "arise[] out of or relate[]" to these supposed contacts, as required under *Goodyear*, 564 U.S. at 919 and *Schwarzenegger*, 374 F.3d at 802.  Accordingly, the Plaintiffs still fail to establish the contacts necessary for specific jurisdiction over Mr. Goettsche for at least *four* dispositive reasons.

*First*, contacts with the forum state must be "contacts that the defendant *himself* creates with the forum state," not the contacts of some other person or entity.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Here, although the Plaintiffs now include conclusory language asserting that other defendants' actions were taken "at the direction of Goettsche" in a half-hearted attempt to "unlump" Mr. Goettsche from the other defendants, all of the factual allegations related to the defendants' conduct *still* impermissibly lump all of the Defendants together. Indeed, outside of the jurisdiction section, *Mr. Goettsche's name is not mentioned once throughout the body of the amended complaint*. Additionally, Plaintiffs fail to set forth any allegations regarding *Mr. Goettsche's* own contacts with Nevada. The new jurisdictional allegations (which are entirely irrelevant to the causes of action here) clearly relate to *Mr. Beckstead's* contacts with Nevada, not Mr. Goettsche's.  For example, the Plaintiffs claim that *Mr. Beckstead* is a "former Nevada CPA," who prepared tax returns "in the State of Nevada" and "created and controlled" Nevada entities, as part of a money laundering conspiracy to which he pled guilty.  *See, e.g.*, ECF No. 33 ¶ 5(a-d). Thus, the amended complaint does not come close to alleging jurisdictionally relevant contacts by *Mr. Goettsche* with Nevada and must be dismissed.  *See e.g.*, *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19-CV-1865, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (granting dismissal for lack of personal jurisdiction as to two defendants, stating that "Plaintiffs do not specifically isolate the jurisdictional facts amongst the different [defendant] IQVIA entities and improperly lump IQVIA defendants together"); *Broidy Capital Mgmt., LLC v. Qatar*, No. CV 18-2421-JFW(EX), 2018 WL 9943551, at *6 (C.D. Cal. Aug. 22, 2018) (finding plaintiffs failed

//

to sufficiently allege specific jurisdiction over Global Risk Defendants by generically alleging that "Defendants" or "Agent Defendants" took certain actions).[2]

*Second*, the relevant contacts considered in this specific jurisdiction analysis are the defendant's "contacts with the forum itself, not with persons residing there," such that "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277. Here, the only link alleged between Mr. Goettsche and Nevada that actually relates to the causes of action asserted in this action is the Nevada Plaintiffs themselves.  Specifically, the Plaintiffs allege that jurisdiction is proper in Nevada because of the Defendants' supposed solicitation, at Mr. Goettsche's alleged "direction," of the Plaintiffs, Nevada entities/residents and their managers and members, through a website and email. *See* ECF No. 33 ¶¶ 5-6. But "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278.  Plaintiffs do not allege that Mr. Goettsche was personally involved in soliciting them or that he was even aware of their existence of location in Nevada. Plaintiffs have done nothing to improve upon these already-dismissed allegations.

*Third*, the contacts alleged in the complaint do not establish purposeful direction, which the Plaintiffs now appear to allege.[3]  Under the purposeful direction analysis, the Plaintiffs must

---

[2]  Relatedly, the Plaintiffs' pleading practice of lumping all Defendants together—whether for jurisdictional allegations or allegations pertaining to the causes of action—*still* violates Fed. R. Civ. P. 8 and requires dismissal.  Under the pleading standard set forth in Fed. R. Civ. P. 8, "[a] plaintiff suing multiple defendants must allege the basis of his claim against *each defendant*," and if a complaint "fails to differentiate between any of the named Defendants" or fails to "identify any actions or omissions attributable to a particular Defendant," dismissal is proper.  *Bertsch v. Discover Fin. Servs.*, No. 218-CV-00290-GMN-EJY, 2020 WL 1170212, at *3 (D. Nev. Mar. 11, 2020), *reconsideration denied*, No. 218-CV-00290-GMN-EJY, 2021 WL 325708 (D. Nev. Feb. 1, 2021); *Tucker v. JP Morgan Chase Bank, N.A.*, No. 2:10-CV-959 JCM LRL, 2011 WL 280962, at *2-3 (D. Nev. Jan. 25, 2011) (dismissing claims that lumped all defendants together for failure to satisfy Fed. R. Civ. P. 8); *United States ex rel. Juan v. Hauser*, 806 F. App'x 596, 597 (9th Cir. 2020), *cert. denied sub nom. U.S. ex rel. Juan v. Hauser*, No. 20-566, 2020 WL 7132354 (U.S. Dec. 7, 2020) (upholding dismissal of complaint that lumped all defendants together).  Because the Plaintiffs impermissibly lump all Defendants together for every single allegation in the complaint outside of the jurisdiction section, such that there is no single allegation against any one Defendant individually, the complaint fails to satisfy Fed. R. Civ. P. 8 and should be dismissed.

[3]  The Plaintiffs now seem to assert a purposeful direction theory in the amended complaint. *See* ECF No. 33 ¶ 5.  In the event the Court also applies the purposeful availment test to the allegations, the Plaintiffs still fail to establish specific jurisdiction over Mr. Goettsche for all of the

allege facts showing that Mr. Goettsche has (i) "committed an intentional act"; (ii) "expressly aimed at the forum state"; and (iii) "causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (referring to *Calder v. Jones*, 465 U.S. 783 (1984)).

As with the initial complaint, this amended complaint fails to establish purposeful direction.  In its prior dismissal order, this Court rejected as insufficient to establish purposeful direction the allegation that "Defendants solicited investments from Nevada residents in the State of Nevada", clearly stating that "[t]he Complaint does not explain how this solicitation was an act expressly aimed at Nevada, rather than an act generally aimed at anyone with access to the internet." Dismissal Order at 5.  The amended complaint fails to address these specifically defined deficiencies—Plaintiffs' jurisdictional theories are still based entirely on acts "generally aimed at anyone with access to the internet" that Plaintiffs allege happened to include certain Nevada residents.  In the amended complaint, the Plaintiffs merely add the six words of "at the direction of Mr. Goettsche" to the *same* allegations that this Court previously found to be insufficient to establish purposeful direction.  *See* ECF No. 33 ¶ 5(a).

Plaintiffs *still* fail to make any allegations whatsoever in the amended complaint that Mr. Goettsche *himself* expressly aimed solicitations at Nevada, as opposed to BCN soliciting online

---

reasons detailed in Mr. Goettsche's original motion to dismiss and as held by this Court in its prior order of dismissal. *See* Hosmer-Henner Decl. Ex. D (ECF No. 21) at 8-9; Dismissal Order at 6-7.

To establish purposeful availment, the Plaintiffs are required to demonstrate conduct "indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987).  Although not detailed in the amended complaint, the only allegations that conceivably relate to purposeful availment are that "Defendants engaged in these private and public solicitations through a website (www.bitclub.com ("Bitclub") wherein the Defendants created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet."  ECF No. 33 ¶ 6.  However, this Court expressly rejected this exact theory of personal jurisdiction as insufficient, holding that "Plaintiffs' Complaint provides no allegations concerning the interactivity level of Bitclub's website, its geographic scope, or whether Bitclub or Mr. Goettsche individually targeted either Plaintiff" and "neglects to provide any explanation of how Mr. Goettsche intended to 'serve the market' in Nevada." Dismissal Order at 7.  In the amended complaint, the Plaintiffs do not even attempt to address any of these deficiencies raised by the Court and merely restate all of their prior allegations. Accordingly, the Plaintiffs' amended complaint also fails to establish purposeful availment.

1    generally. And even if the Plaintiffs did allege that Mr. Goettsche—not BCN or the other

2    defendants—solicited Nevada residents through BCN's website, such an allegation still fails.  As

3    this Court has already properly held, mere knowledge of a plaintiff's citizenship and the notion

4    that "Plaintiff could be harmed in Nevada" is "insufficient because potential foreseeability does

5    not amount to purposeful direction." *Moose Run, LLC v. Libric*, No. 218-CV-00425-GMN-NJK,

6    2019 WL 1261103, at *6 (D. Nev. Mar. 19, 2019); *see also Overholt v. Airista Flow Inc.*, No. 17-

7    CV-1337-MMA-AGS, 2018 WL 355231, at *13 (S.D. Cal. Jan. 10, 2018) ("The only link between

8    [Defendant] and California, as alleged, is that Plaintiff resides in California and Plaintiff suffered

9    harm in California. Such a connection is insufficient to satisfy the 'express aiming' requirement

10   [of purposeful direction].").

11        *Fourth*, and finally, the amended complaint's new allegations concerning non-party Mr.

12   Beckstead's money laundering activities and/or fraudulent tax filings do nothing to change the

13   jurisdictional analysis as to Mr. Goettsche, as the amended complaint's causes of action for

14   securities violations and related state law claims clearly do not "arise[] out of or relate[] to" the

15   alleged actions set forth in Mr. Beckstead's plea deal. *See Schwarzenegger*, 374 F.3d at 802.  Nor

16   do Plaintiffs even attempt to assert any such connection.  Plaintiffs are *not* alleging any cause of

17   action related to Mr. Goettsche's alleged false tax filings, nor are they alleging any cause of action

18   arising out of Mr. Beckstead's money laundering scheme. Rather, they are alleging causes of action

19   premised on fraudulent misrepresentations related to an alleged security.  ECF No. 33 ¶¶ 7-13, 19-

20   24, 28-32, 36-39, 42-47. The location of an outside professional, such as an accountant, simply

21   does not establish personal jurisdiction over the individual that retained that professional. *Nat'l*

22   *Conf. for Cmty. & Just., Inc. v. Bos. Ctr. for Cmty. & Just., Inc.*, No. 06 C 4854, 2007 WL 9814430,

23   at *10 (N.D. Ill. Mar. 8, 2007) (concluding that the location of an outside accountant did not create

24   minimum contacts with that jurisdiction). Plaintiffs do not allege any relationship with any of the

25   entities created by Mr. Beckstead or that Mr. Beckstead (or his entities) was involved in soliciting

26   them in any way. Accordingly, the Plaintiffs fail to establish the second prong of the personal

27   jurisdiction analysis and the amended complaint must be dismissed. *See Com. Ins. Co. of Newark,*

28   *N. J. v. Pac.-Peru Const. Corp.*, 558 F.2d 948, 955 (9th Cir. 1977) (finding insufficient contacts

related to the cause of action to confer jurisdiction over a New York company even though the company sent attorneys to Hawaii to collect collateral security under an indemnity agreement and sent letters to attempt the collection of monies due under the agreement and dismissing the complaint).

Finally, even assuming arguendo that the Plaintiffs satisfied the first two prongs of the specific jurisdiction test, exercising jurisdiction still would not be "reasonable" or "comport with fair play and substantial justice" under the third prong. *Schwarzenegger*, 374 F.3d at 801. To evaluate reasonableness, the Ninth Circuit uses a seven-factor balancing test, which weighs: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

Each factor favors Mr. Goettsche: (i) Mr. Goettsche has not purposefully interjected into Nevada's affairs at all, and Plaintiffs fail to make a single allegation to suggest otherwise; (ii) Mr. Goettsche resides in Colorado and is presently under home confinement with restrictive bail conditions that he not have access to a computer or the internet, which would render it nearly impossible and extremely burdensome to defend this action in Nevada; (iii) there is a conflict with the sovereignty of Mr. Goettsche's resident state, where Mr. Goettsche is subject to personal jurisdiction; (iv) Nevada has little cognizable interest in adjudicating a dispute with non-resident defendants involving events that took place and witnesses that reside outside of Nevada; (v) this action would be more efficiently resolved through mediation and/or arbitration, as required under the terms of the contracts at issue (detailed further below); (vi) although the Plaintiffs are Nevada entities, none of the Defendants are Nevada residents and therefore few of the relevant facts, documents, or witnesses are likely to be in Nevada, which burdens all parties, and the contracts at issue are not governed by Nevada law; and (vii) although the Plaintiffs bear the burden of proving the unavailability of an alternate forum, *Freestream*, 905 F.3d at 609—which they have not done—

Mr. Goettsche is domiciled in Colorado and is, accordingly, subject to general jurisdiction there and, as detailed further below, this dispute is subject to alternative dispute resolution procedures.

Based on the foregoing, the Plaintiffs fail to establish specific jurisdiction over non-resident Defendant Mr. Goettsche and the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

> **B.** **This Case Should Be Dismissed Because Plaintiffs Did Not Comply With A Binding Dispute Resolution Agreement, Which Plaintiffs Failed to Address in the Amended Complaint.**

> **1.** **The Parties' Dispute Resolution Agreement Requires The Plaintiffs To Mediate Before Submitting Their Claims To Arbitration.**

Plaintiffs, like all BCN members, are parties to a Membership Agreement containing a mandatory mediation and arbitration clause, which the Plaintiffs ignore entirely in their amended complaint, despite being on notice thereof through the prior briefing on this issue. *See* Hosmer-Henner Decl. Ex. A (BCN Membership Agreement displayed to "Prospective BitClub Network Member[s]"). The Membership Agreement provides that, "as a Member of Bitclub Network, [members] are bound by… the Membership Agreement [and] BCN's Policies and Procedures." *Id.* Prospective members had to affirmatively click the "I agree" button manifesting their consent to the Membership Agreement. *See* Hosmer-Henner Decl. Ex. A.

Moreover, before confirming their agreement to the Membership Agreement, members like Plaintiffs had to affirmatively click a box next to the statement, "I agree to the Policies and Procedures." *See id*. These Policies and Procedures were linked and mandate that, "It is the responsibility of each Member to read, understand, adhere to and ensure that he or she is aware of and operating under the most current version of these Agreements." *See* Hosmer-Henner Decl. Ex. B, Sec. 2. Thus, as members of BCN, the Plaintiffs were parties to the BCN Membership Agreement, including the BCN Policies and Procedures, and were required to operate under the most current version of the Policies and Procedures. *See* Hosmer-Henner Decl. Ex. B, Section 2.

BCN's Policies and Procedures contain a clear and unambiguous procedure for dispute resolution, requiring the Plaintiffs to engage in non-binding mediation in the first instance, and if that is not successful, to settle any remaining disputes through confidential arbitration:

SECTION 8.2 – Mediation

Prior to instituting an arbitration, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.


SECTION 8.3 – Arbitration

If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, not including unilateral discretionary policy enforcement by the Company, shall be settled by confidential arbitration. The Parties waive all rights to trial by jury or to any court. Arbitration shall be conducted in either Douglas, Isle of Man, or, if the Isle of Man is determined to be inconvenient, then Manila, Philippines.

Hosmer-Henner Decl. Ex. B.

Courts routinely enforce dispute resolution procedures like the one in the BCN Membership Agreement.  "When parties enter into a valid and enforceable agreement to engage in a non-binding dispute resolution process before submitting their claims to binding arbitration or litigation, courts should require compliance with that agreement." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1000 (9th Cir. 2010); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1207 (9th Cir. 1998) (reversing denial of motion to compel arbitration and enforcing contract provision requiring plaintiff to submit dispute to multi-tiered dispute resolution process). Accordingly, Plaintiffs are bound by the plain language of BCN's Policies and Procedures requiring them to first submit "any dispute arising from or relating to the [Membership] Agreement" to non-binding mediation. *See MB Am., Inc. v. Alaska Pac. Leasing,* 132 Nev. 78, 82 (2016) (rejecting claims because plaintiff failed to comply with a pre-litigation mediation provision: "Here, as the provision at issue unambiguously addresses mediation as a condition precedent to litigation, the terms are given their 'usual and ordinary signification.'").

Plaintiffs' claims clearly arise from and relate to the BCN Membership Agreement, and they cannot avoid this result by strategically drafting their amended complaint to avoid mentioning the Membership Agreement and the mandatory dispute resolution provision by name. *See Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6,

2008) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), applying California contract law principles identical to Nevada contract law: "Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.").  The amended complaint affirmatively alleges Plaintiffs' membership in BCN and breach of contract and fraud claims related to the Plaintiffs' contract with BCN, and seeks monetary damages based on "dividends, bonuses, commissions and other compensation" allegedly owed pursuant to their contract with BCN.  By its plain terms, the BCN Membership Agreement requires the parties to attempt to mediate such claims in good faith, and if that is not successful, to arbitrate their claims. Because the Plaintiffs never attempted to mediate or arbitrate as required by the contract, the complaint fails to state a claim and should be dismissed under Federal Rule 12(b)(6).  *See Brosnan*, 2008 WL 2388392, at *1.[4]

### 2.   The Plaintiffs' Claims Should Be Dismissed Because They Are Subject to Mandatory Arbitration.

Even if the Plaintiffs had attempted to mediate, which they did not and have not between their initial complaint and this amended complaint, their claims still are not properly before this Court because they are subject to mandatory arbitration. Where the claims in a plaintiff's complaint are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6).  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1060 (9th Cir. 2004).

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

---

[4]   Other Circuits and district courts have likewise upheld the principle that a party's failure to comply with mandatory dispute resolution procedures bars that party from pursuing litigation. *See, e.g.*, *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 335 (7th Cir. 1987) (affirmed judgment against plaintiff for failure to comply with mediation clause before instituting litigation); *HIM Portland, LLC v. DeVito Builders, Inc*., 317 F.3d 41, 44 (1st Cir. 2003) (holding mediation was a condition precedent to arbitration); *Kemiron Atl., Inc. v. Aguakem Int'l, Inc*., 290 F.3d 1287, 1291 (11th Cir. 2002) (same); *Ponce Roofing, Inc. v. Roumel Corp*., 190 F. Supp. 2d 264, 267 (D.P.R. 2002) (dismissing action where the plaintiff failed to submit to multi-tiered ADR process); *Ziarno v. Gardner Carton & Douglas, LLP*, Civ. A. 03-3880, 2004 WL 838131, at *3 (E.D. Pa. Apr. 8, 2004) (dismissing action where plaintiff failed to comply with agreement to proceed before "mediator-arbitrator who has special expertise").

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding district court erred in failing to grant motion to compel arbitration of state claims) (citing 9 U.S.C. §§ 3, 4); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms." (citing *Reynolds,* 470 U.S. at 221)).

When a party petitions a court to enforce an arbitration provision under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.  If the answer is yes to both questions, the court must enforce the agreement." *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016). Because the BCN Membership Agreement is "a contract evidencing a transaction involving commerce," it is subject to the FAA.  9 U.S.C. § 2.

Plaintiffs' claims, all of which arise out of or relate to the BCN Membership Agreement, are subject to mandatory arbitration.  By its terms, the BCN Membership Agreement requires the parties to attempt to mediate in good faith, and if that is not successful, to arbitrate "any controversy or claim arising out of or relating to the Agreement, or the breach thereof."   The provision is unambiguously broad: any claims arising out of the BCN Membership Agreement or relating to the agreement must be arbitrated.

The Ninth Circuit routinely enforces broad arbitration provisions similar to the one in the BCN Membership Agreement.  *See, Optimum Prods. v. Home Box Office,* No. 19-56222, 2020 WL 7334537, at *1 (9th Cir. Dec. 14, 2020) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly, and we likewise conclude that the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.") (cleaned up); *Peters v. Amazon Servs., LLC*, 669 F. App'x 487, 488 (9th Cir. 2016) (affirming district court's order compelling arbitration where agreement required arbitration of "[a]ny dispute . . . or claim relating in any way" to the agreement).

Plaintiff's claims here—which relate to their membership in BCN and expressly allege breach of contract and fraud claims related to the Plaintiffs' contract with BCN—are clearly encompassed by the arbitration clause.[5]  To the extent there is any question as to whether the Plaintiffs' claims fall within the scope of the arbitration clause, doubts are resolved "in favor of arbitration."  *See Optimum,* 2020 WL 7334537, at *1 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25 (1983))).

Because the BCN Membership Agreement's dispute resolution provisions are unambiguous and enforceable against the Plaintiffs, Mr. Goettsche respectfully requests that this Court dismiss this litigation pursuant to Rule 12(b)(6) and the Federal Arbitration Act.  *See, e.g., See Lei v. Amway Corp.,* No. 14-CV-04022-RGK-AGRx, 2014 WL 12596787, at *12 (C.D. Cal. July 23, 2014) (dismissing arbitrable claims).

## IV.   ALTERNATIVE MOTION TO STAY PROCEEDINGS

### A.   Solely In The Alternative, This Litigation Should Be Stayed Pending The Resolution Of The District of New Jersey Criminal Case.

A district court may exercise its discretion to stay civil proceedings pending the outcome of parallel criminal proceedings.  *Nat'l Fire & Marine Ins. Co. v. Holper,* No. 2:18-CV-1338, 2018 WL 5726191, at *1 (D. Nev. Oct. 31, 2018) (staying wrongful death action pending related criminal case); *Perez v. Station Casinos LLC,* No. 2:15-CV-01553, 2016 WL 8959135, at *2 (D. Nev. Feb. 8, 2016) (staying civil case pending related criminal case).  In determining whether to stay civil proceedings while parallel criminal proceedings are pending, courts must consider the particular circumstances and competing interests involved, including (i) the extent to which the

---

[5]   This includes the Plaintiffs' claim for fraudulent inducement, which alleges that the Defendants made "misrepresentations. . . in order to induce Plaintiffs" to enter into a contract with BCN in general but does not allege that the Plaintiffs were fraudulently induced to enter into the arbitration provision specifically.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006) (holding challenges to validity of a contract as a whole, rather than the arbitration clause within it, must be resolved by the arbitrator) (collecting cases).

defendant's Fifth Amendment rights are implicated; (ii) the plaintiff's interest in proceeding expeditiously; (iii) the burden the proceedings may impose on the defendant; (iv) the convenience of the court and the efficient use of judicial resources; (v) the interests of persons not parties to the civil litigation; and (vi) the interest of the public in the pending civil and criminal litigation. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).

Analysis of the above factors weighs heavily in favor of staying this civil action while the District of New Jersey criminal proceeding is pending.

### 1. Litigating This Case Implicates Mr. Goettsche's Fifth Amendment Rights.

Mr. Goettsche's Fifth Amendment rights will be heavily implicated if he is required to participate in this litigation while the District of New Jersey criminal case proceeds, because the Plaintiffs' claims are related to the triable criminal allegations in the District of New Jersey Indictment.  Indeed, the Plaintiffs now rely on allegations related to the federal criminal plea of Mr. Beckstead, who is expected to be a government witness in Mr. Goettsche's pending criminal case.  To be clear, the allegations related to Mr. Beckstead do not have any relationship to Plaintiffs and do not create personal jurisdiction, but to the extent the amended complaint is allowed to proceed then there would potentially be significant interference with the criminal proceedings.

The Fifth Amendment privilege against self-incrimination protects a person not only from being a witness against himself in a criminal proceeding, but also privileges him from having to answer in a civil proceeding when it may incriminate him in a criminal proceeding.  *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (holding that Fifth Amendment privilege can be asserted in any civil proceeding "and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.").  "[T]he 'privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution' and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence."  *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (internal citations omitted).

The strongest case for a stay of a civil action occurs after an indictment is returned in the criminal matter because the possibility for self-incrimination is greatest at that stage and the potential harm to civil litigants arising from delaying the case is reduced by the Speedy Trial Act. *See Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir. 1989) (explaining stay of civil proceedings is more important after criminal indictment is filed); *Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. #2*, No. 06-CV-124, 2007 WL 1227592, at *2 (D. Mont. Apr. 24, 2007) (same).  Such is the case here.

The Plaintiffs' allegations that the Defendants made misrepresentations to BCN members, defrauded the Plaintiffs, and violated securities laws are similar to the criminal acts described in the District of New Jersey Indictment, which was filed on December 5, 2019, long before the Plaintiffs filed their complaint.  *See* 2:19-CR-877 (CCC), ECF No. 9 (Indictment).  Thus, there is "the substantial probability that discovery will include inquiring into" facts at issue in the criminal case.  *See Nat'l Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2.  In order to defend this action, Mr. Goettsche may need to make representations to the Court about what occurred with BCN, and any representations made by Mr. Goettsche would implicate his Fifth Amendment rights and prejudice his ability to defend himself against the charges in the District of New Jersey.  For example, the Plaintiffs now inject allegations related to Mr. Beckstead's criminal plea agreement in the amended complaint.  The allegations contained in the plea agreement and Mr. Beckstead himself are expected to play an important role in the criminal case against Mr. Goettsche, such that if Mr. Goettsche needs to answer discovery here (although it should be deemed irrelevant) related to Mr. Beckstead, his Fifth Amendment rights will undoubtedly be implicated.

Simply put, Mr. Goettsche should not be forced to choose between invoking his Fifth Amendment rights and defending himself in this action, and this is a choice that all named Defendants will face in this case.  Accordingly, this factor weighs strongly in favor of a stay.  *See Nat'l Fire & Marine Ins. Co.,* 2018 WL 5726191, at *2 (finding first *Keating* factor favored a stay because defendant "will be forced to decide whether he should risk an adverse inference or participate in discovery at the detriment of his criminal case").

//

**2.     The Plaintiffs' Interest In Proceeding Expeditiously Is Outweighed By The Burden On Mr. Goettsche To Litigate Both Actions Without Resources.**

Putting aside Mr. Goettsche's Constitutional Rights, which are paramount here, Mr. Goettsche will be irreparably prejudiced by being forced to litigate both cases with limited access to the information relevant to this action, counsel, and financial resources.

Mr. Goettsche was detained until December 18, 2020, at which point he was released to home confinement with the conditions that he not have access to a computer or the internet.  *See* 2:19-CR-877, ECF No. 171 (Order Setting Conditions of Release).  In addition, the Government previously seized all of his personal paper files, phones, and other electronic devices, so he no longer has access to any records related to BCN.  He therefore has no access to any documents or communications that may be relevant to this action.  It will also prove to be extremely difficult for him to appear in Nevada for court proceedings, given his release conditions.  Without a stay, Mr. Goettsche is forced to litigate this action with one hand tied behind his back.

By contrast, the Plaintiffs will not be prejudiced by a stay of this action.  It took nearly eight months for the Plaintiffs to even attempt to serve Mr. Goettsche, which does not indicate that Plaintiffs have a strong interest in "proceeding expeditiously."  *See Perez*, 2016 WL 8959135, at *2 (noting there was little potential prejudice to plaintiff in staying civil case where plaintiff failed to follow up on proposed discovery order).  There is no reason to believe that any evidence will be spoiled while the case is stayed or that any of the Plaintiffs' claims will be affected with the passage of time.  Further, the Plaintiffs risk only monetary damages, "which is a relatively minimal harm in comparison" to Mr. Goettsche's Fifth Amendment rights.  *See Nat'l Fire & Marine Ins. Co.,* 2018 WL 5726191, at *2.  Accordingly, the second and third factors identified in *Keating* weigh in favor of a stay.  *See id.*

**3.     The Remaining *Keating* Factors Support A Stay.**

The remaining factors – the convenience of the court and the efficient use of judicial resources, the interests of third parties, and the interest of the public in both actions –all weigh in favor of granting a stay.

//

If the Court stays this action at this stage, pre-answer and before discovery has begun, it will avoid unnecessary delays caused by Mr. Goettsche's and the other Defendants' inability to access information.  In addition, the Court has already stayed Mr. Weeks' time to respond to the complaint indefinitely.  The other Defendants either have not been served or have not appeared in this action.  Because the District of New Jersey Indictment also includes allegations against the other individual Defendants named in this action and the criminal trial will likely involve Mr. Beckstead, staying this action will actually conserve judicial resources until such time that all Defendants are meaningfully able to participate in the litigation.  *See Perez,* 2016 WL 8959135, at *2.

Mr. Goettsche is unaware of any third parties who have an interest in this litigation, meaning the factor regarding third party interests weighs in favor of a stay.  *See Nat'l Fire & Marine Ins. Co.,* 2018 WL 5726191, at *2.[6]

Finally, the last factor weighs in favor of a stay because the public interest in fair criminal proceedings is stronger than in resolving a civil case.  *Id.* at *2 ("Lastly, the court cannot ignore the remarkable public interest in favor of fair criminal proceedings."); *accord Perez,* 2016 WL 8959135, at *2 (staying civil case pending related criminal case and holding, "Finally, the Court finds that the interest of the public in the criminal litigation is greater than that of the public in the civil litigation").

Accordingly, all of the *Keating* factors weigh in favor of staying this action while the pending criminal proceeding in the District of New Jersey is resolved.

//

//

//

//

//

---

[6]    Plaintiffs vaguely refer to "independent business operators" in the complaint.  ECF No. 33 ¶ 6.  To the extent the Plaintiffs assert they relied on misrepresentations by independent entities other than Defendants, Mr. Goettsche expressly reserves and does not waive his right to move for dismissal for failure to join a necessary party.

1

**V.      CONCLUSION**

2

       For the reasons set forth above, Defendant Matthew Brent Goettsche respectfully requests

3

that this Court again dismiss the claims against Mr. Goettsche for lack of personal jurisdiction

4

pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)

5

and the Federal Arbitration Act.  Solely in the alternative, Mr. Goettsche requests that the action

6

be stayed pending resolution of the criminal case.

7

       DATED: May 2, 2022.

                   McDONALD CARANO LLP

8

9

                   */s/  Adam Hosmer-Henner*

10

                   Adam Hosmer-Henner, Esq. (NSBN 12779)
                   Phil Mannelly, Esq. (NSBN 14236)

11

                   Chelsea Latino, Esq. (NSBN 14227)
                   100 West Liberty Street, 10th Floor

12

                   Reno, NV 89501
                   (775) 788-2000

13

                   ahosmerhenner@mcdonaldcarano.com
                   pmannelly@mcdonaldcarano.com

14

                   clatino@mcdonaldcarano.com

15

                   Benjamin J.A. Sauter (admitted *pro hac vice*)
                   Amanda N. Tuminelli (admitted *pro hac vice*)

16

                   KOBRE & KIM LLP
                   800 Third Avenue

17

                   New York, NY 10022
                   (212) 488-1288

18

                   benjamin.sauter@kobrekim.com
                   amanda.tuminelli@kobrekim.com

19

                   *Attorneys for Defendant Matthew Brent*
                   *Goettsche*

20

4869-7110-8894, v. 5

21

22

23

24

25

26

27

28