# EXHIBIT A

BitClub Network Inc.'s Membership Agreement

# EXHIBIT A



About    Opportunity    Mining    Trading    Contact us    ≡ EN



Welcome: cryptoBtrader    → Sign out

Next Payout:    22:02:00

Your Rank    Founder

HOME    MY ACCOUNT ⌄    MY WALLETS ⌄    MY TEAM ⌄    RESOURCES ⌄    PRODUCTS ⌄    ENROLL MEMBER

 **ATTENTION:** Your account is not verified. Please provide full KYC documentation by clicking **here**. You have until Dec 31st to submit your information or your account will be suspended.

Back Online! September 13th News Update - Click Here

### BITCLUB NETWORK, INC.

### MEMBERSHIP AGREEMENT

**Membership with BitClub Network, Inc. ("BitClub Network"), and gaining access to its opportunities and benefits is conditioned upon (1) satisfying eligibility requirements including age and residence, (2) acknowledging that the prospective member agrees to the terms of the BitClub Network agreements, as set forth below, and (3) payment of a membership fee.**

<u>**Membership Agreement Terms**</u>

**Prospective BitClub Network Member:**

1. **By executing this Membership Agreement below, you confirm:**

   a. **that you are at least 18 years of age; and**
   b. **that you are not a citizen or resident of the following countries:**
      1. **United States of America, or its territories**
      2. **Philippines**

2. **By executing this Membership Agreement below, you agree that as a Member of BitClub Network, you are bound by the following agreements:**

   a. **This Membership Agreement;**
   b. **BitClub Network, Inc.'s Policies and Procedures and**
   c. **Any agreement required of Members to participate in BitClub Network's Mining Pool opportunities.**

3. **Payment of a membership fee is required before you may become a BitClub Network Member, and that the membership fee is paid by transferring payment in Bitcoin Cash (BCH) in an amount equivalent to USD $99.**

☑ I agree to the Policies and Procedures
☐ I agree to the Pooled Unit Mining Agreement

I Agree

Copyright ©2019 BitClub Network. All rights reserved.    Terms of Service    Privacy Policy

# EXHIBIT B

BitClub Network Inc.'s Policies and Procedures

# EXHIBIT B



About    Opportunity    Mining    Trading    Contact us    EN



Welcome cryptoBtrader    → Sign out                Next Payout:  22:01:34

Your Rank        Founder

HOME    MY ACCOUNT ▾    MY WALLETS ▾    MY TEAM ▾    RESOURCES ▾    PRODUCTS ▾    ENROLL MEMBER



⚠ **ATTENTION:** Your account is not verified. Please provide full KYC documentation by clicking here. You have until Dec 31st to submit your information or your account will be suspended.

Back Online! September 13th News Update - Click Here

### POLICIES AND PROCEDURES

**SECTION 1 – THE COMPANY**

BitClub Network, Inc. (the "Company") is an entity incorporated in Nevis as an International Business Corporation, offering club membership to prospective members. Company membership benefits include opportunities to contribute to the acquisition of digital asset mining equipment and to participate in the benefits generated from the utilization of such digital asset mining equipment, which benefits are in the form of mined digital assets that are distributed to participating Company members. Additionally, Members can participate in the Company's compensation plan.

**SECTION 2 – INTRODUCTION Section 2.1 – Combining Membership Agreement with Policies and Procedures and Compensation Plan**

The Membership Agreement includes and incorporates these Policies and Procedures, and collectively they form the Company Membership Agreement (hereafter, collectively the "Agreements") which are further defined by reference to the Company Compensation Plan. It is the responsibility of each Member to read, understand, adhere to and ensure that he or she is aware of and operating under the most current version of these Agreements.

**Section 2.2 – Changes to Agreements**

The Company reserves the right, in its discretion, to amend the Agreements, and the Member agrees to abide by such amended Agreements. Amendments take affect when published to Members by one or more of the following methods: (1) posting on the Company's official website; (2) electronic mail; and/or (3) posting in Members back-offices.

**Section 2.3 – Severability and invalidity**

If any provision of the Agreements are found to be invalid, or unenforceable, such provision shall not render the agreement invalid but shall be severable from the agreement and the remaining provisions shall remain in full force and effect.

**Section 2.4 – No Waiver**

The Company shall not be deemed to have waived or relinquished its right to insist on compliance by the Member with the Agreements. And, no failure of the Company to exercise any right or power or to insist upon strict compliance by a Member with the Agreements shall constitute a waiver of the Company's right to demand exact compliance, nor shall a waiver be created by any custom or practice of the parties at variance with the terms of the Agreements.

### SECTION 3 – BECOMING A MEMBER
#### Section 3.1 – Requirements to Become a Member

Company Membership requires the following:

    a. Be at least 18 years of age;
    b. Reside in a country that is not prohibited by the Company (Prohibited Countries List);
    c. and submit to the Company the information requested in its Membership Application;
    d. Agree to the terms of the Company Agreements (Membership Agreement, and Policies and Procedures)(as further defined by reference to the
       Company Compensation Plan); and
    e. Provide payment to the Company in the form and amount required as part of the online application.

The Company reserves the right to accept or reject any prospective member and/or application for membership for any reason or for no reason.

#### Section 3.2 – No Purchase Required

There is no obligation to purchase any product or service from the Company to obtain Membership.

#### Section 3.3 – Member Benefits

Membership in the Company allows the following Member rights:

    a. Right to promote the Company's benefits and opportunities;
    b. Right to participate in the Company Compensation Plan;
    c. Right to sponsor prospective Company members;
    d. Right to receive Company literature and Company communications; and
    e. Right to participate in Company sponsored functions.

### SECTION 4 – OPERATING AS A MEMBER
#### Section 4.1 – Advertising
#### Section 4.1.1 – General

Members shall safeguard and promote the good reputation of the Company and its benefits and opportunities. Member's marketing and promotion of the Company, the opportunities and benefits from Company Membership, including the Company Compensation Plan, must avoid all illegal, discourteous, deceptive, misleading, unethical or immoral conduct or practices. The Company reserves the right to request and require any Member to either modify or discontinue use of marketing or promotional materials if the Company, in its sole discretion, deems such materials to be in violation of the Agreements.

#### Section 4.1.2 – Trademarks and Copyrights

The name of the Company and other names as may be adopted by the Company are proprietary trade names, trademarks and service marks of the Company (collectively "marks"). The Company reserves the right to require a Member to discontinue use of any of the Company's trade names, trademarks, designs or symbols or any derivatives of such marks.

Members agree to make clear the distinction between the Member as independent from the Company. The Company reserves the right to require a Member to discontinue using the Company name in any team name, tagline, external website name, personal website address or extension, e-mail address, personal name, or nickname. For example, Members may not secure the domain name www.buybitclubnetwork.com nor may they create an email address such as info@bitclubnetwork.com.

#### Section 4.1.3 – Media and Media Inquiries

Members agree to not respond to media inquiries regarding the Company, including its benefits and opportunities, and/or the Member's independent Company business activities.

#### Section 4.1.4 – Unsolicited Email

The Company does not authorize Members to send unsolicited commercial emails.

#### Section 4.2 – Online Conduct
#### Section 4.2.1 – Member Web Sites

Members may be provided with a replicated template website by the Company, from which the Member can enroll new Members, and manage their Company business activities through their back-office.

Member may also have their own websites and agree that their website and its content will comply at all times with the terms of these Policies and Procedures.

It is the Member's obligation to ensure their online marketing and promotion activities are truthful, are not deceptive and do not mislead prospective Members. Websites and web promotion activities and tactics that mislead or are deceptive, regardless of intent, will result in disciplinary action. Misleading tactics include, but are not limited to, spam linking, unethical search engine optimization ("SEO"), and misleading click-through ads. The Company, in its sole discretion, will determine whether activities are truthful, misleading, deceptive, and/or violate these Policies and Procedures.

### SECTION 4.2.2 – Domain Names, Email Addresses and Online Aliases

Members agree not to register Company trademarks, trade names or any derivatives for any Internet domain name, email address or online alias. Additionally, Members agree not to use or register domain names, email addresses, and/or online aliases that could cause confusion, or be misleading or deceptive, in that they cause individuals to believe or assume the communication is from the Company. The Company reserves the right to determine in its sole discretion if a name, address, or alias is misleading or deceptive, and to require the Member to change or discontinue using such name, address, or alias.

### SECTION 4.2.3 – Digital Media Submission (YouTube, Facebook, Instagram, etc.)

Members may upload, submit or publish video, audio or photo content relating to their Membership in the Company that they develop and create so long as it aligns with Company values, contributes to Company community greater good and is in compliance with the Company's Policies and Procedures. Submissions must identify the Member as an Independent Company Member, and the content and description tag must comply with all copyright/legal requirements and state that the Member posting such material, not the Company, is solely responsible for the content. Members may not upload, submit or publish any content (video, audio, presentations or any computer files) received from the Company or captured at official Company events or in buildings owned or operated by the Company without prior permission.

### SECTION 4.2.4 – Social Media

Social Media may be used by a Member to share information about the Company's benefits and opportunities and for prospecting and sponsoring prospective new members, so long as the Member complies with these Policies and Procedures.

### SECTION 4.2.5 – Members are Responsible for Postings

Members are responsible for their postings and their other online activity that relates to the Company. Members are also responsible for postings which occur on any blog or Social Media site that the Member owns, operates or controls.

### SECTION 4.2.6 – Deceptive Postings Prohibited

Postings that are false, misleading, deceptive, or that promote illegal conduct are prohibited; and, the Company, reserves the right, in its sole discretion, to determine whether postings are false, misleading, deceptive, or promote illegal conduct.

### SECTION 4.2.7 – Use of Third Party Intellectual Property

If a Member uses the trademarks, trade names, service marks, copyrights or intellectual property of any third party in any posting, it is Member's responsibility to ensure that he or she has received the proper license to use such intellectual property and has paid the appropriate license fee. A Member must adhere to the restrictions and conditions that the intellectual property owner places on the use of its intellectual property.

### SECTION 4.2.7 – Respecting Privacy

A Member must respect the privacy of others by refraining from gossip and not advancing rumors about any individual, company or competitive products or services. Members will not list names individuals or entities without their permission or consent.

### SECTION 4.2.8 – Professionalism

Members' postings must be truthful and accurate and will not contain offensive language.

### SECTION 4.2.9 – Obscene Postings Prohibited

Members will not make any postings or link to any postings or other material that are:

1. Sexually explicit, obscene, or pornographic;
2. Offensive, profane, hateful, threatening, harmful, defamatory, libelous, harassing, or discriminatory (whether based on race, ethnicity, creed, religion, gender, sexual orientation, physical disability, or otherwise);
3. Graphically violent, including any violent video game images;
4. Solicitous of any unlawful behavior;
5. Engaging in personal attacks on any individual, group, or entity; and/or
6. Violating intellectual property rights of the Company or any third party.

The Company, reserves the right, in its sole discretion, to determine whether postings or links violate these Policies and Procedures.

### SECTION 4.2.10 – Refrain from Responding to Negative Posts

Members will refrain from responding to negative posts against a Member and/or against the Company.

### SECTION 4.2.11 – Social Media Sites with Website-Like Features

The Company reserves the sole and exclusive right to classify certain social media sites as websites and require that Members using such sites adhere to the Company's policies relating to using websites.

### SECTION 4.2.12 – Cancellation of Membership

If a Member's membership is canceled for any reason, the Member must discontinue using the Company's name, and all of Company trademarks, trade names, service marks, and other intellectual property, and all derivatives of such marks and intellectual property.

### SECTION 4.3 – Waiver of Claims

The Company reserves the sole and exclusive right to determine the final disposition of a downline organization. MEMBERS WAIVE ANY AND ALL CLAIMS AGAINST THE COMPANY, ITS OFFICERS, DIRECTORS, CEO, OWNERS, EMPLOYEES, ADVISORS AND AGENTS THAT RELATE TO OR ARISE FROM THE COMPANY'S DECISION REGARDING THE DISPOSITION OF ANY DOWNLINE ORGANIZATION THAT DEVELOPS BELOW A CANCELED MEMBERSHIP.

### SECTION 4.4 – Unauthorized Claims and Actions
### SECTION 4.4.1 – No Member Indemnification

A Member is fully responsible for all of his or her verbal and written statements made regarding Company products, services, and the Compensation Plan. Members agree to indemnify the Company, and its directors, officers, employees, and agents and hold them harmless from all liability including judgments, civil penalties, refunds, attorney fees, court costs, or lost business incurred by the Company as a result of the Member's unauthorized representations or actions. This provision shall survive the termination of the Member Agreement.

### SECTION 4.4.2 – Product Claims

Members shall not make claims regarding any opportunity or benefit offered by the Company except conveying claims made by the Company or claims supported by reference to a public blockchain, and such claims shall comply with the laws and regulations of the applicable jurisdiction.

### SECTION 4.4.3 – Opportunities and Benefits Claims

A Member must make it clear to prospective members that financial success derived from the opportunities and benefits of Company Membership requires commitment, effort, and skill. A Member must never make representations such as:

1. It's a turnkey system;
2. The system will do the work for a Member;
3. Just get in and your downline will build through spill over;
4. Just join and I'll build your downline for you; or
5. The company does all the work for its Members.

The above are just examples of improper representations about the Company, its opportunity and its benefits, including under the Compensation Plan.

### SECTION 4.4.4 – Income Claims

A Member, when presenting or discussing the Company's opportunities and/or benefits, including the Compensation Plan, to a prospective Member, must not make income projections, or income claims, but may disclose benefits received by the Member from Membership in the Company but only to the extent the Member also provides documents or verifiable information to the prospective Member supporting the disclosure or representation.

**SECTION 4.5 – Conflict of Interests**
**SECTION 4.5.1 – Confidential Information**

"Confidential Information" includes, but is not limited to the identities of Company Members, contact information of Company Members, Members' personal and group sales volumes, and Member rank and/or achievement levels. Confidential Information is, or may be available, to Members in their respective back-offices. Member access to such Confidential Information is password protected and is confidential and constitutes proprietary information and trade secrets belonging to the Company. Such Confidential Information is provided or made available to Members in strictest confidence and is made available to Members for the sole purpose of assisting Members. The Member and the Company agree that, but for this agreement of confidentiality and nondisclosure, the Company would not provide Confidential Information to the Member.

To protect the Confidential Information, Members shall not, on his or her own behalf, or on behalf of any other person, partnership, association, corporation or other entity:

1. Directly or indirectly disclose any Confidential Information to any third party;
2. Directly or indirectly disclose the password or other access code to his or her back-office;
3. Use any Confidential Information to compete with the Company or for any purpose other than promoting the Company's opportunities or obtaining the Company's benefits;
4. Recruit or solicit any Member, or in any manner attempt to influence or induce any Member, to alter their relationship with the Company; or
5. Use or disclose to any person, partnership, association, corporation, or other entity any Confidential Information.

The obligation not to disclose Confidential Information shall survive cancellation or termination of the Agreements and shall remain effective and binding irrespective of whether one of the Agreements has been terminated.

**SECTION 4.6 – Targeting Other Direct Sellers**

The Company does not condone Members solicitation or enticement of members of the sales force of another company to violate the terms of their contract with such other company. Members bear the risk of such conduct and the Company will not pay any of the Member's defense costs or legal fees, nor will the Company indemnify the Member for any judgment, award, or settlement.

**SECTION 4.7 – Errors or Questions**

A Member must notify the Company of any errors regarding commissions, bonuses, genealogy lists, or charges within 60 days of the date of the purported error. The Company will not be responsible for any errors, omissions or problems not reported to the Company within 60 days of the error.

**SECTION 4.8 – Governmental Approval or Endorsement**

Members shall not represent or imply that the Company or its Compensation Plan have been "approved," "endorsed" or otherwise sanctioned by any government agency.

**SECTION 4.9 – Income Taxes**

Each Member is responsible for paying the applicable taxes, if any, on any value received or generated as an Independent Member. Unfortunately, the Company cannot provide a Member with any personal tax advice, but a Member should consult a tax accountant, tax attorney or another tax professional.

**SECTION 4.10 – Independent Contractor Status**

Members are independent contractors. No agreement between the Company and its Members creates an employer/employee relationship, agency, partnership, or joint venture. Members shall not be treated as an employee for his or her services or for tax purposes. The Member has no authority (expressed or implied), to bind the Company to any obligation. Each Member shall establish his or her own goals, hours, and methods of sale, so long as he or she complies with the Member Agreement, these Policies and Procedures, and applicable laws.

**SECTION 4.11 – International Marketing**

In countries where the Company has prohibited promotional or sales activities (Prohibited Countries List), Members agree that they will not: (a) conduct sales, enrollment or training meetings; (b) enroll or attempt to enroll prospective Members; or (c) conduct any other activity for the purpose of promoting Company opportunities or benefits, or establishing a marketing organization. Failure to comply with these Policies and Procedures may result in termination of the Member's membership in the Company.

### SECTION 4.12 – Adherence to Law and Ordinances

Many cities, Counties, Provinces, and municipalities have laws and ordinances regulating certain businesses. Members shall comply with all laws and regulations in all Countries where the Member conducts business related to the Company.

### SECTION 4.13 – Actions of Household Members

If any member of a Member's Immediate household engages in any activity which, if performed by the Member, would violate any provision of the Agreement, such activity will be deemed a violation by the Member and the Company may take disciplinary action pursuant to the Statement of Policies against the Member.

### SECTION 4.14 – Actions of Entity Representative

If any individual associated in any way with a Member that is a corporation, partnership, LLC, trust or another entity violates the Agreement, such action(s) will be deemed a violation by the Member.

### SECTION 4.15 – Sponsoring Online

Members who sponsor or assist Prospective Members in completing the Membership Application are prohibited from acknowledging or confirming, on behalf of the Prospective Member, any agreement to the Membership Agreement, these Policies and Procedures, and the Compensation Plan. The Prospective Member is required to agree and confirm their agreement to these Agreements to obtain Membership in the Company.

### SECTION 5 – RESPONSIBILITIES OF MEMBERS
### SECTION 5.1 – Non-Disparagement

Members must not disparage, demean, or make negative remarks about the Company, other Company Members, the Company products, the Compensation Plan, or the Company directors, officers, or employees.

### SECTION 6 – BONUSES AND COMMISSIONS
### SECTION 6.1 – Bonus and Commission Qualifications and Accrual

So long as a Member complies with the terms of the Agreements, the Company shall pay commissions to such Member in accordance with the Compensation Plan.

### SECTION 7 – REFUNDS AND BUYOUTS
### SECTION 7.1 – Membership Application Fee Refund

Refund requests must be made within 72 hours of payment of the membership application fee, or prior to receiving any of the benefits or membership, including participating in a mining pool. Untimely refund requests will be rejected. Timely requests for refunding the membership application fee will be refunded to the new Member.

### SECTION 7.2 – Buyout Requests

Buyout requests must be made within the first year of membership in the Company. A Member's request for a "Buyout" is not a refund but is a request to take possession of a portion of the digital asset mining equipment intended for use in acquiring or creating digital assets that would be distributed to participating Members. If a Member requests a "Buyout," the Company may consider this request and may provide the Member with a calculation of value of the Member's interest in the equipment, minus any costs for shipping and handling of the equipment to the Member. If a Member elects a buyout, the Member forfeits all future mining pool earnings or benefits, and forfeits any commissions under the Compensation Plan.

## SECTION 8 – DISPUTE RESOLUTION AND DISCIPLINARY PROCEEDINGS
### SECTION 8.1 – Disciplinary Sanctions

Violation of the Agreement, these Policies and Procedures, violation of any common law duty, including but not limited to any applicable duty of loyalty, or any illegal, fraudulent, deceptive or unethical conduct, or any act or omission by a Member that, in the sole discretion of the Company may damage its reputation or goodwill (such damaging act or omission need not be related to the Member's business with the Company), may result, at the Company's discretion, in one or more of the following corrective measures:

1. Issuance of a written warning or admonition;
2. Requiring the Member to take immediate corrective measures;
3. Imposition of a fine, which may be withheld from bonus and commission checks;
4. Loss of rights to one or more bonus and commission checks;
5. The Company may withhold from a Member all or part of the Member's bonuses and commissions during the period that the Company is investigating any conduct allegedly in violation of the Agreement. If a Member's business is canceled, the Member will not be entitled to recover any commissions withheld during the investigation period;
6. Suspension of the individual's Member Agreement for one or more pay periods;
7. Permanent or temporary loss of, or reduction in, the current and/or lifetime rank of a Member (which may subsequently be re-earned by the Member);
8. Transfer or removal of some or all of a Member's downline;
9. Involuntary termination of the offender's Member Agreement;
10. Suspension and/or termination of the offending Member's Company website or website access;
11. Any other measure expressly allowed within any provision of the Agreement or which the Company deems practicable to implement and appropriate to equitably resolve injuries caused partially or exclusively by the Member's policy violation or contractual breach;

In situations deemed appropriate by the Company, the Company may institute legal proceedings for monetary and/or equitable relief.

### SECTION 8.2 – Mediation

Prior to instituting an arbitration, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.

### SECTION 8.3 – Arbitration

If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, not including unilateral discretionary policy enforcement by the Company, shall be settled by confidential arbitration. The Parties waive all rights to trial by jury or to any court. Arbitration shall be conducted in either Douglas, Isle of Man, or, if the Isle of Man is determined to be inconvenient, then Manila, Philippines.

### SECTION 8.4 – Temporary Judicial Relief

Notwithstanding the foregoing, nothing in these Policies and Procedures shall prevent the Company from applying to and obtaining from any court having jurisdiction, a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available but only to safeguard and protect its intellectual property rights, its trade secrets, and/or to enforce its rights under the non-solicitation provision of the Agreement; all other temporary or preliminary relief is waived.

### SECTION 8.5 – Governing Law, Jurisdiction and Venue

Jurisdiction and venue of any matter not subject to arbitration shall reside exclusively in the City of Douglas, Isle of Man. The law of Isle of Man shall govern all other matters relating to or arising from the Agreement.

### SECTION 9 – PAYMENTS
### SECTION 9.1- Payment Using Cryptocurrency

The required method of payment for all products and services is cryptocurrency through an applicable wallet.

### SECTION 10 – Cancellation
### SECTION 10.1 – Voluntary Cancellation

A Member may cancel his or her membership at any time by sending an electronic mail notification to the Company confirming that the Member requests that his or her membership be cancelled, and the Company may rely on such electronic mail notification.

### SECTION 11 – EFFECTIVE DATE

The Policies and Procedures are effective as of July 1, 2018, and shall remain in effect until modified and/or updated. All data mentioned above is subject to change without notice. Amendments take immediate effect.

Copyright ©2019 BitClub Network, All rights reserved.

# EXHIBIT C

Email Correspondence between Sterline Kerr
and Adam Hosmer-Henner

# EXHIBIT C

| | |
|---|---|
| **From:** | Adam Hosmer-Henner |
| **To:** | Sterling Kerr |
| **Cc:** | Benjamin.Sauter@kobrekim.com |
| **Subject:** | RE: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994 |
| **Date:** | Tuesday, July 7, 2020 10:32:00 PM |

Sterling,

Thank you for your patience as we have sorted out our internal procedural matters. This message confirms that we are able and willing to waive service for Defendant Matthew Brent Goettsche pursuant to Fed. R. Civ. P. 4(d)(1). Could you please conform the previous document to this rule and for my signature?

Best,

**Adam Hosmer-Henner**  Partner

**McDONALD CARANO**

**P:** 775.788.2000  **E:** ahosmerhenner@mcdonaldcarano.com

**From:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Sent:** Monday, June 15, 2020 1:56 PM
**To:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Subject:** Re: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

How about 2:00 pm pacific time on June 22, 2020.  Please initiate the call.  Adam also please confirm this will work for your time.

Sterling

P. Sterling Kerr, Esq.
Law Offices of P. Sterling Kerr, P.C.
2450 St. Rose Parkway, Suite 120
Henderson, NV 89074
P: (702) 451-2055 | F: (702) 451-2077
E: sterling@sterlingkerrlaw.com

Law Offices of P. Sterling Kerr Standard Disclaimer

This electronic mail message and any attachments are confidential and may also contain privileged attorney-client information or work product.  The message and any attachments are intended only for the use of the addressee.  If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, disseminate, distribute or copy this communication.  If you have received this email in error, please immediately notify us by reply electronic mail or by telephone at (702) 451-2055, and delete this original message.  Thank you.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding any penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein. This communication may not be forwarded (other than within the recipient to which it has been sent) without our express written consent.

---

**From:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Sent:** Saturday, June 13, 2020 6:39 PM
**To:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Subject:** RE: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Appreciate the response and looking forward to speaking with you. Would anytime on the afternoon of June 22nd or the mornings of June 23 or 24th work for you?

There should not be any problem accepting service and I expect to be able to do so, but am awaiting the finalization of our firm's engagement first, which I anticipate occurring prior to the above dates.

**Adam Hosmer-Henner**  Partner

**McDONALD CARANO**

**P:** 775.788.2000  **E:** ahosmerhenner@mcdonaldcarano.com

**From:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Sent:** Tuesday, June 9, 2020 10:47 AM
**To:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Subject:** Re: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Adam,
I would be happy to discuss the case with you at your convenience.  In the interim, would you agree to accept service on behalf of Goettsche?

Sterling

P. Sterling Kerr, Esq.
Law Offices of P. Sterling Kerr, P.C.
2450 St. Rose Parkway, Suite 120
Henderson, NV 89074
P: (702) 451-2055 | F: (702) 451-2077
E: sterling@sterlingkerrlaw.com

Law Offices of P. Sterling Kerr Standard Disclaimer

This electronic mail message and any attachments are confidential and may also contain privileged attorney-client information or work product.  The message and any attachments are intended only for the use of

the addressee. If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, disseminate, distribute or copy this communication. If you have received this email in error, please immediately notify us by reply electronic mail or by telephone at (702) 451-2055, and delete this original message. Thank you.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding any penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein. This communication may not be forwarded (other than within the recipient to which it has been sent) without our express written consent.

---

**From:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Sent:** Monday, June 8, 2020 1:38 PM
**To:** Sterling Kerr <sterling@sterlingkerrlaw.com>; Taylor Simpson <taylor@sterlingkerrlaw.com>
**Cc:** Chelsea Latino <clatino@mcdonaldcarano.com>
**Subject:** Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Mr. Kerr and Mr. Simpson,

It appears that we will be retained to represent Defendant Matthew Brent Goettsche in a lawsuit that you filed on behalf of Mina de Oro, LLC and The Toy Chest, LLC. Please let me know if you might have a few minutes this week to discuss the case. I can best be reached at 646-725-1515.

Best,

**Adam Hosmer-Henner**  Partner

**McDONALD CARANO**

100 West Liberty Street  Tenth Floor
Reno, NV 89501
**P:** 775.788.2000  **F:** 775.788.2020

BIO | WEBSITE | V-CARD | LINKEDIN

MERITAS®

PERSONAL AND CONFIDENTIAL: This message originates from the law firm of McDonald Carano LLP. This message and any file(s) or attachment(s) transmitted with it are confidential, intended only for the named recipient, and may contain information that is a trade secret, proprietary, protected by the attorney work product doctrine, subject to the attorney-client privilege, or is otherwise protected against unauthorized use or disclosure. This message and any file(s) or attachment(s) transmitted with it are transmitted based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express only the view of the sender and are not attributable to McDonald Carano LLP.

| | |
|---|---|
| **From:** | Adam Hosmer-Henner |
| **To:** | Sterling Kerr |
| **Cc:** | Benjamin.Sauter@kobrekim.com |
| **Subject:** | RE: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994 |
| **Date:** | Friday, July 10, 2020 1:18:00 PM |

Sterling – just following up on the waiver of service. Is there a document ready for signature?

**Adam Hosmer-Henner** Partner

**McDONALD CARANO**

**P:** 775.788.2000  **E:** ahosmerhenner@mcdonaldcarano.com

**From:** Adam Hosmer-Henner
**Sent:** Tuesday, July 7, 2020 10:33 PM
**To:** 'Sterling Kerr' <sterling@sterlingkerrlaw.com>
**Cc:** 'Benjamin.Sauter@kobrekim.com' <Benjamin.Sauter@kobrekim.com>
**Subject:** RE: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Sterling,

Thank you for your patience as we have sorted out our internal procedural matters. This message confirms that we are able and willing to waive service for Defendant Matthew Brent Goettsche pursuant to Fed. R. Civ. P. 4(d)(1). Could you please conform the previous document to this rule and for my signature?

Best,

**Adam Hosmer-Henner** Partner

**McDONALD CARANO**

**P:** 775.788.2000  **E:** ahosmerhenner@mcdonaldcarano.com

**From:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Sent:** Monday, June 15, 2020 1:56 PM
**To:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Subject:** Re: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

How about 2:00 pm pacific time on June 22, 2020.  Please initiate the call.  Adam also please confirm this will work for your time.

Sterling

P. Sterling Kerr, Esq.
Law Offices of P. Sterling Kerr, P.C.
2450 St. Rose Parkway, Suite 120

Henderson, NV 89074
P: (702) 451-2055 | F: (702) 451-2077
E: sterling@sterlingkerrlaw.com

Law Offices of P. Sterling Kerr Standard Disclaimer

This electronic mail message and any attachments are confidential and may also contain privileged attorney-client information or work product.  The message and any attachments are intended only for the use of the addressee.  If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, disseminate, distribute or copy this communication.  If you have received this email in error, please immediately notify us by reply electronic mail or by telephone at (702) 451-2055, and delete this original message.  Thank you.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding any penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein. This communication may not be forwarded (other than within the recipient to which it has been sent) without our express written consent.

---

**From:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Sent:** Saturday, June 13, 2020 6:39 PM
**To:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Subject:** RE: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Appreciate the response and looking forward to speaking with you. Would anytime on the afternoon of June 22nd or the mornings of June 23 or 24th work for you?

There should not be any problem accepting service and I expect to be able to do so, but am awaiting the finalization of our firm's engagement first, which I anticipate occurring prior to the above dates.

**Adam Hosmer-Henner** Partner
**McDONALD CARANO**

**P:** 775.788.2000  **E:** ahosmerhenner@mcdonaldcarano.com

**From:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Sent:** Tuesday, June 9, 2020 10:47 AM
**To:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Subject:** Re: Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Adam,
I would be happy to discuss the case with you at your convenience.  In the interim, would you agree to accept service on behalf of Goettsche?

Sterling

P. Sterling Kerr, Esq.
Law Offices of P. Sterling Kerr, P.C.
2450 St. Rose Parkway, Suite 120
Henderson, NV 89074
P: (702) 451-2055 | F: (702) 451-2077
E: sterling@sterlingkerrlaw.com

Law Offices of P. Sterling Kerr Standard Disclaimer

This electronic mail message and any attachments are confidential and may also contain privileged attorney-client information or work product. The message and any attachments are intended only for the use of the addressee. If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, disseminate, distribute or copy this communication. If you have received this email in error, please immediately notify us by reply electronic mail or by telephone at (702) 451-2055, and delete this original message. Thank you.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding any penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein. This communication may not be forwarded (other than within the recipient to which it has been sent) without our express written consent.

**From:** Adam Hosmer-Henner <ahosmerhenner@mcdonaldcarano.com>
**Sent:** Monday, June 8, 2020 1:38 PM
**To:** Sterling Kerr <sterling@sterlingkerrlaw.com>; Taylor Simpson <taylor@sterlingkerrlaw.com>
**Cc:** Chelsea Latino <clatino@mcdonaldcarano.com>
**Subject:** Mina de Oro, LLC et al. v. Goettsche et al. - Case No. 2:20-cv-00994

Mr. Kerr and Mr. Simpson,

It appears that we will be retained to represent Defendant Matthew Brent Goettsche in a lawsuit that you filed on behalf of Mina de Oro, LLC and The Toy Chest, LLC. Please let me know if you might have a few minutes this week to discuss the case. I can best be reached at 646-725-1515.

Best,

**Adam Hosmer-Henner** Partner
**McDONALD CARANO**

100 West Liberty Street  Tenth Floor
Reno, NV 89501
**P:** 775.788.2000 **F:** 775.788.2020

BIO | WEBSITE | V-CARD | LINKEDIN

MERITAS[20]

PERSONAL AND CONFIDENTIAL: This message originates from the law firm of McDonald Carano LLP. This message and any file(s) or attachment(s) transmitted with it are confidential, intended only for the named recipient, and may contain information that is a trade secret, proprietary, protected by the attorney work product doctrine, subject to the attorney-client privilege, or is otherwise protected against unauthorized use or disclosure. This message and any file(s) or attachment(s) transmitted with it are transmitted based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express only the view of the sender and are not attributable to McDonald Carano LLP.

# EXHIBIT D

Initial Motion to Dismiss (ECF No. 21)

# EXHIBIT D

1   Adam Hosmer-Henner, Esq. (NSBN 12779)
    Phil Mannelly, Esq. (NSBN 14236)
2   Chelsea Latino, Esq. (NSBN 14227)
    **McDONALD CARANO LLP**
3   100 West Liberty Street, 10th Floor
    Reno, NV 89501
4   (775) 788-2000
    ahosmerhenner@mcdonaldcarano.com
5   pmannelly@mcdonaldcarano.com
    clatino@mcdonaldcarano.com
6
    Benjamin J.A. Sauter
7   Amanda N. Tuminelli
    **KOBRE & KIM LLP**
8   800 Third Avenue
    New York, NY 10022
9   (212) 488-1288
    benjamin.sauter@kobrekim.com
10  amanda.tuminelli@kobrekim.com
    (*Pro Hac Vice* applications to be filed)
11
    *Attorneys for Defendant Matthew Brent Goettsche*
12
                    **UNITED STATES DISTRICT COURT**
13
                         **DISTRICT OF NEVADA**
14

15   MINA DE ORO, LLC, a Nevada limited
     liability company; THE TOY CHEST, LLC a          CASE NO.:  2:20-cv-00994-GMN-VCF
16   Nevada limited liability company,

17                        Plaintiffs,                 **DEFENDANT MATTHEW BRENT
                                                      GOETTSCHE'S MOTION TO DISMISS**
18   v.

19   MATTHEW BRENT GOETTSCHE, an
     individual, JOBEDIAH SINCLAIR WEEKS,
20   an individual, JOSEPH FRANK ABEL, an
     individual, SILVIU CATALIN BALACI, an
21   individual, BITCLUB, an unknown entity, and
     DOE and ROE Corporations,
22
                         Defendants.
23

24           Defendant Matthew Brent Goettsche ("Mr. Goettsche"), by and through undersigned

25   counsel, respectfully moves this Court for an Order dismissing the complaint of Mina De Oro,

26   LLC and The Toy Chest, LLC (collectively, "Plaintiffs") as to Mr. Goettsche for lack of personal

27   jurisdiction and for failure to abide by a binding dispute-resolution agreement.  Solely in the

28   alternative, Mr. Goettsche moves the Court for an Order staying these proceedings pending

resolution of the District of New Jersey criminal case involving the same individual Defendants as this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

The Plaintiffs filed this action for federal securities laws violations and related state law claims against Mr. Goettsche (among others) without establishing personal jurisdiction over Mr. Goettsche and in direct contravention of mandatory mediation and arbitration provisions.

The complaint does not include a single allegation against Mr. Goettsche personally, let alone regarding any relevant contacts he purportedly had with Nevada.  In fact, aside from the caption, Mr. Goettsche's name does not appear even once in the entire complaint.  The Plaintiffs vaguely allege that "all Defendants" solicited the Plaintiff entities through a website, the internet, and email to purchase "securities" in a company called "Bitclub," but general allegations like this that lump all Defendants together are woefully insufficient to subject Mr. Goettsche to suit in Nevada.  Because Plaintiffs have not established personal jurisdiction over Mr. Goettsche, dismissal is required pursuant to Fed. R. Civ. P. 12(b)(2) and controlling Ninth Circuit and Supreme Court precedent.

The complaint should be dismissed for the separate and independent reason that the Plaintiffs failed to comply with the dispute resolution provisions in their Membership Agreements with Bitclub Network ("BCN").  Pursuant to the BCN Policies and Procedures that all members, including the Plaintiffs, must necessarily accept, Plaintiffs are contractually required to raise "any controversy or claim arising out of or relating to the Agreement, or the breach thereof" first through mediation and then, if unsuccessful, through arbitration.  These dispute resolution provisions are clear, unambiguous, and enforceable pursuant to Nevada contract law and the Federal Arbitration Act.  Because Plaintiffs failed to initiate the mediation and arbitration proceedings required by their binding contracts with BCN before filing this lawsuit, this case should be dismissed.

Solely in the alternative, and only in the event this Court does not dismiss the complaint, this case should be stayed.  Specifically, all proceedings against Mr. Goettsche should be stayed

1   pending the resolution of an ongoing District of New Jersey criminal case, which includes

2   allegations involving all of the named individual defendants in this case.    Mr. Goettsche

3   respectfully submits that this Court should exercise its discretion to stay all proceedings against

4   him because the Plaintiffs' claims are related to the allegations in the criminal District of New

5   Jersey Indictment ("D.N.J. Indictment") and would necessarily implicate Mr. Goettsche's Fifth

6   Amendment rights and subject him to prejudice in both actions.    On the other hand, staying these

7   proceedings would not prejudice the Plaintiffs, who seek primarily monetary damages, and would

8   serve the interests of judicial economy because of the overlapping claims and Defendants in this

9   action and the criminal case.

10   **II.     PROCEDURAL HISTORY**

11       The Plaintiffs filed the complaint in this action on June 3, 2020.  ECF No. 1.  On July 7,

12   2020, counsel for Mr. Goettsche agreed by email to waive service on Mr. Goettsche's behalf,

13   provided Defendants supplied the proper paperwork pursuant to Fed. R. Civ. P. 4(d).  Plaintiffs

14   never followed up to effectuate the waiver of service, despite repeated written requests from Mr.

15   Goettsche's counsel.  Decl. of Adam Hosmer-Henner Ex. C.

16       On October 19, 2020, the Court indefinitely stayed co-Defendant Mr. Weeks' deadline to

17   respond to the complaint, pending further order of the court, and extended the deadline for service

18   of the complaint on the remaining Defendants to January 15, 2021.  ECF No. 12.

19       On or about November 6, 2020, notwithstanding Mr. Goettsche's prior agreement to waive

20   service, Plaintiffs purported to serve Mr. Goettsche with process while he was in pretrial detention

21   in the District of New Jersey.  ECF No. 14.  Plaintiffs did not notify Mr. Goettsche's counsel that

22   they had attempted personal service.  Hosmer-Henner Decl. ¶ 7.  It appears from the affidavit of

23   service filed on the docket that Mr. Goettsche was not actually personally served.  ECF No. 14.

24       Nevertheless, on January 11, 2021, Plaintiffs filed a motion for entry of clerk's default

25   against Mr. Goettsche without notifying him or his counsel.  ECF No. 17.  Mr. Goettsche's counsel

26   discovered the motion by chance while conducting a review of the docket on or about January 20,

27   2021.  Following a meet and confer, Plaintiffs withdrew their motion for clerk's default on January

28   / / /

1   25, 2021, subject to an agreement whereby Mr. Goettsche's counsel accepted service on behalf of

2   Mr. Goettsche and Mr. Goettsche was given until March 23, 2021, to file a responsive pleading.

3           At no point before instituting this litigation did Plaintiffs attempt to mediate or arbitrate

4   their claims with Mr. Goettsche.  Hosmer-Henner Decl. ¶ 8.

5   **III.     MOTION TO DISMISS**

6           **A.     This Case Should Be Dismissed For Lack Of Personal Jurisdiction.**

7           "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

8   the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co.*

9   *v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Ruhlmann v. Rudolfsky*, No. 2:14-CV-

10  00879-RFB, 2015 WL 5692054, at *3 (D. Nev. Sept. 27, 2015) ("A plaintiff bears the burden of

11  establishing personal jurisdiction.").  Both Nevada's long-arm statute, NRS 14.065, and the Due

12  Process Clause require "that the defendant have such minimum contacts with the state that the

13  defendant could reasonably anticipate being haled into court here, thereby complying with

14  'traditional notions of fair play and substantial justice.'"  *Rosen Materials of Nevada, LLC v. MDA*

15  *LLC*, No. 2:17-CV-01687-JAD, 2018 WL 3232832, at *1 (D. Nev. Feb. 7, 2018) (internal

16  quotations and citations omitted).

17          There are two types of personal jurisdiction that a forum state may potentially exercise

18  over a non-resident defendant like Mr. Goettsche: general jurisdiction and specific jurisdiction.

19  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Because the Plaintiffs fail to establish

20  either type of jurisdiction over Mr. Goettsche, the Plaintiffs have failed to meet their burden and

21  dismissal is required under Fed. R. Civ. P. 12(b)(2).

22          **1.     There Is No General Jurisdiction Over Non-Resident Mr. Goettsche In**
                    **Nevada.**

23

24          The Plaintiffs fail to establish general jurisdiction over Mr. Goettsche.  "[T]he paradigm

25  forum for the exercise of general jurisdiction is the individual's domicile. . . ."  *Daimler AG v.*

26  *Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014).  The complaint fails

27  to comply with Local Rule 8-1, which requires Plaintiffs to "state the statutory or other basis of

28  claimed federal jurisdiction and the facts to support it," because it does not make any allegations

1   whatsoever about Mr. Goettsche's domicile.  *See* ECF No. 1 ¶¶ 2, 5.  In fact, Mr. Goettsche

2   domicile is in Colorado where he has lived with his wife and family at all times relevant to the

3   complaint.

4         In order to establish general jurisdiction over a non-resident defendant like Mr. Goettsche,

5   the Plaintiffs must establish that Mr. Goettsche "has 'substantial' or 'continuous and systematic'

6   contacts with the forum state. . . ."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171

7   (9th Cir. 2006).  This standard is "high," demanding that "contacts with a state must 'approximate

8   physical presence.'"  *Tuazon*, 433 F.3d at 1169; *see also Rudolfsky*, 2015 WL 5692054, at *4

9   ("General jurisdiction requires a defendant be 'domiciled in the forum state,' or that he engage in

10  'continuous and systematic general business contacts' that 'approximate physical presence' in the

11  forum state.").

12        Here, the Plaintiffs do not allege that Mr. Goettsche maintains continuous and systematic

13  business contacts in Nevada.  There are no allegations at all regarding Mr. Goettsche's contacts

14  with Nevada, much less contacts approximating a "physical presence" there.  Accordingly, the

15  Plaintiffs fail to establish general jurisdiction over non-resident Mr. Goettsche.

16        **2.      There Is No Specific Jurisdiction Over Non-Resident Mr. Goettsche In**
17               **Nevada.**

18        Plaintiffs also fail to establish that Mr. Goettsche is subject to specific personal jurisdiction

19  in Nevada.  In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of

20  issues deriving from, or connected with, the very controversy that establishes jurisdiction."

21  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and

22  quotations omitted).  The Ninth Circuit applies a three-prong test to determine if specific

23  jurisdiction is appropriate over a non-resident defendant, all of which must be satisfied: (i) the

24  non-resident defendant must either "purposefully direct his activities or consummate some

25  transaction with the forum or resident thereof" or "purposefully avail[] himself of the privilege of

26  conducting activities in the forum"; (ii) "the claim must be one which arises out of or relates to

27  the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with

28  fair play and substantial justice, *i.e.* it must be reasonable."  *Schwarzenegger v. Fred Martin Motor*

1    *Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The burden is on the *plaintiff* to establish the first two

2    prongs, which—only if satisfied—shifts to the defendant to rebut the third prong.

3    *Schwarzenegger*, 374 F.3d at 802.

4           The Plaintiffs fail to establish the first two prongs of the specific personal jurisdiction

5    inquiry.  In the complaint, the Plaintiffs allege that the Defendants "purposely availed themselves

6    of the benefits of conducting business in the State of Nevada" by supposedly soliciting—through

7    a website, the internet, and email—two Nevada entities to purchase securities in a cryptocurrency

8    mining business.  ECF No. 1 ¶¶ 5–6.  There are no other jurisdictional allegations whatsoever

9    contained in the complaint, and these allegations fail to establish the contacts necessary for

10   specific jurisdiction over Mr. Goettsche for at least three dispositive reasons.

11          *First*, contacts with the forum state must be "contacts that the defendant *himself* creates

12   with the forum state," not the contacts of some other person or entity.  *Walden v. Fiore*, 571 U.S.

13   277, 285 (2014).  Here, the Plaintiffs impermissibly lump all of the Defendants together in their

14   allegations but fail to set forth any allegations regarding *Mr. Goettsche's* own contacts with

15   Nevada.  *See, e.g.*, ECF No. 1 ¶¶ 5–6.  There is not a single allegation in the entire complaint that

16   is specific to Mr. Goettsche.  Thus, the complaint does not come close to alleging jurisdictionally

17   relevant contacts by Mr. Goettsche with Nevada and must be dismissed.  *See e.g.*, *Medimpact*

18   *Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19-CV-1865, 2020 WL 1433327, at *5 (S.D.

19   Cal. Mar. 24, 2020) (granting dismissal for lack of personal jurisdiction as to two defendants,

20   stating that "Plaintiffs do not specifically isolate the jurisdictional facts amongst the different

21   [defendant] IQVIA entities and improperly lump IQVIA defendants together"); *Broidy Capital*

22   *Mgmt., LLC v. Qatar*, No. CV 18-2421-JFW(EX), 2018 WL 9943551, at *6 (C.D. Cal. Aug. 22,

23   2018) (finding plaintiffs failed to sufficiently allege specific jurisdiction over Global Risk

24   Defendants by generically alleging that "Defendants" or "Agent Defendants" took certain

25   actions).[1]

26   _____

27   [1] Relatedly, the Plaintiffs' pleading practice of lumping all Defendants together—whether for
     jurisdictional allegations or allegations pertaining to the causes of action—violates Fed. R. Civ.

28   P. 8 and requires dismissal.  Under the pleading standard set forth in Fed. R. Civ. P. 8, "[a] plaintiff
     suing multiple defendants must allege the basis of his claim against *each defendant*," and if a

1    *Second*, the relevant contacts considered in a specific jurisdiction analysis are the

2    defendant's "contacts with the forum itself, not with persons residing there," such that "[t]he

3    plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277.

4    Here, the only link alleged between Mr. Goettsche and Nevada is the Nevada Plaintiffs

5    themselves. Specifically, the Plaintiffs allege that jurisdiction is proper in Nevada because of the

6    Defendants' supposed solicitation of Nevada entities/residents through a website and email. *See*

7    ECF No. 1 ¶¶ 5-6. But "mere injury to a forum resident is not a sufficient connection to the

8    forum." *Walden*, 571 U.S. at 278.

9    *Third*, the contacts alleged in the complaint do not establish purposeful availment.[2] "To

10   have purposefully availed itself of the privilege of doing business in the forum, a defendant must

11   have performed some type of affirmative conduct which allows or promotes the transaction of

12   business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)

13

14   complaint "fails to differentiate between any of the named Defendants" or fails to "identify any
     actions or omissions attributable to a particular Defendant," dismissal is proper. *Bertsch v.*
15   *Discover Fin. Servs.*, No. 218-CV-00290-GMN-EJY, 2020 WL 1170212, at *3 (D. Nev. Mar. 11,
     2020), *reconsideration denied*, No. 218-CV-00290-GMN-EJY, 2021 WL 325708 (D. Nev. Feb.
16   1, 2021); *Tucker v. JP Morgan Chase Bank, N.A.*, No. 2:10-CV-959 JCM LRL, 2011 WL 280962,
17   at *2-3 (D. Nev. Jan. 25, 2011) (dismissing claims that lumped all defendants together for failure
     to satisfy Fed. R. Civ. P. 8); *United States ex rel. Juan v. Hauser*, 806 F. App'x 596, 597 (9th Cir.
18   2020), *cert. denied sub nom. U.S. ex rel. Juan v. Hauser*, No. 20-566, 2020 WL 7132354 (U.S.
     Dec. 7, 2020) (upholding dismissal of complaint that lumped all defendants together). Because
19   the Plaintiffs impermissibly lump all Defendants together for every single allegation in the
20   complaint, such that there is no single allegation against any one Defendant individually, the
     complaint fails to satisfy Fed. R. Civ. P. 8 and should be dismissed.
21
     [2] Plaintiffs expressly assert a purposeful availment theory in the complaint. *See* ECF No. 1 ¶ 5(b).
22   In the event the Court applies the purposeful direction test instead, the Plaintiffs still fail to
     establish specific jurisdiction over Mr. Goettsche. The purposeful direction test requires that the
23   defendant allegedly have (i) "committed an intentional act"; (ii) "expressly aimed at the forum
24   state"; and (iii) "causing harm that the defendant knows is likely to be suffered in the forum state."
     *Schwarzenegger*, 374 F.3d at 803 (referring to *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79
25   L.Ed.2d 804 (1984)). The Plaintiffs fail to make any allegations whatsoever in the complaint that
     the Defendants expressly aimed their solicitations at Nevada, as opposed to online generally. It is
26   insufficient to allege merely that Defendants knew the Plaintiffs resided in Nevada. *See, e.g.*,
     *Schwarzenegger*, 374 F.3d at 807 (finding it insufficient for specific jurisdiction that the
27   defendant's intentional act eventually caused harm to the plaintiff in the forum state and that the
28   defendant knew that the plaintiff lived in the forum state, absent a showing that the act was
     expressly aimed at the forum state).

1    (internal citations and quotations omitted).  Allegations of generic solicitations by defendants as

2    a whole through a website, the internet, and email do not suffice.  Otherwise, anyone with a public

3    website accessible in any state would be subject to specific jurisdiction in every single state.

4              Courts in the Ninth Circuit have consistently held that "a mere web presence is insufficient

5    to establish personal jurisdiction." *See, e.g., Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485

6    F.3d 450, 460 (9th Cir. 2007) (citing supporting authorities).  This is true even if that website is

7    interactive and allows Nevada residents to conduct business and complete financial transactions

8    with it online. *See, e.g., Clover Gifts, Inc. v. Airs Fragrance Prod., Inc.*, No. 205-CV-1084-RCJ-

9    LRL, 2006 WL 8441506, at *3-4 (D. Nev. Mar. 2, 2006) (finding no purposeful availment when

10   an individual "maintain[s] an interactive website which allows residents in Nevada to conduct

11   business and banking transactions with it online," among contacts with Nevada, including entering

12   into contracts with Nevada residents); *see also ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813

13   F. App'x 316, 318 (9th Cir. 2020) ([Plaintiff]'s allegation that [defendant]'s website is 'highly

14   interactive' is likewise insufficient to show a prima facie case of specific personal jurisdiction.")

15   (internal citations omitted).

16             The Ninth Circuit has also found that "ordinarily use of the mails, telephone, or other

17   international communication simply do not qualify as purposeful activity invoking the benefits

18   and protection of the [forum] state." *Applied Underwriters, Inc. v. Combined Mgmt., Inc.*, 371 F.

19   App'x 834, 835 (9th Cir. 2010) (internal quotations and citations omitted).  Likewise,

20   advertisements that incidentally ended up in the forum state, without evidence that it was

21   specifically designed for the forum state market, are insufficient to establish jurisdiction. *Holland*,

22   485 F.3d at 460.  For all of these reasons, the Plaintiffs fail to meet the first two prongs of the

23   Ninth Circuit's three-prong test for specific personal jurisdiction.

24             Finally, even assuming arguendo that the Plaintiffs satisfied the first two prongs of the

25   specific jurisdiction test, exercising jurisdiction still would not be "reasonable" or "comport with

26   fair play and substantial justice" under the third prong. *Schwarzenegger*, 374 F.3d at 801.  To

27   evaluate reasonableness, the Ninth Circuit uses a seven-factor balancing test, which weighs: "(1)

28   the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden

1  on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

2  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

3  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

4  convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft*

5  *(Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

6        Each factor favors Mr. Goettsche: (i) Mr. Goettsche has not purposefully interjected into

7  Nevada's affairs at all, and Plaintiffs fail to make a single allegation to suggest otherwise; (ii) Mr.

8  Goettsche resides in Colorado and is presently under home confinement with bail conditions that

9  he not have access to a computer or the internet, which would render it nearly impossible and

10  extremely burdensome to defend this action in Nevada; (iii) there is a conflict with the sovereignty

11  of Mr. Goettsche's resident state, where Mr. Goettsche is subject to personal jurisdiction;

12  (iv) Nevada has little cognizable interest in adjudicating a dispute with non-resident defendants

13  involving events that took place and witnesses that reside outside of Nevada; (v) this action would

14  be more efficiently resolved through mediation and/or arbitration, as required under the terms of

15  the contracts at issue (detailed further below); (vi) although the Plaintiffs are Nevada entities, none

16  of the Defendants are Nevada residents and therefore few of the relevant facts, documents, or

17  witnesses are likely to be in Nevada, which burdens all parties, and the contracts at issue are not

18  governed by Nevada law; and (vii) although the Plaintiffs bear the burden of proving the

19  unavailability of an alternate forum, *Freestream*, 905 F.3d at 609—which they have not done—

20  Mr. Goettsche is domiciled in Colorado and is, accordingly, subject to general jurisdiction there

21  and, as detailed further below, this dispute is subject to alternative dispute resolution procedures.

22        Based on the foregoing, the Plaintiffs fail to establish specific jurisdiction over non-

23  resident Defendant Mr. Goettsche and the complaint should be dismissed pursuant to Fed. R. Civ.

24  P. 12(b)(2).

25  / / /

26  / / /

27  / / /

28  / / /

**B.    This Case Should Be Dismissed Because Plaintiffs Did Not Comply With A Binding Dispute Resolution Agreement.**

**1.    The Parties' Dispute Resolution Agreement Requires The Plaintiffs To Mediate Before Submitting Their Claims To Arbitration.**

Plaintiffs, like all BCN members, are parties to a Membership Agreement containing a mandatory mediation and arbitration clause.  Exhibit A to the Hosmer-Henner Declaration is the BCN Membership Agreement displayed to "Prospective BitClub Network Member[s]."  *See* Hosmer-Henner Decl. Ex. A.  The Membership Agreement provides that, "as a Member of Bitclub Network, [members] are bound by... the Membership Agreement [and] BCN's Policies and Procedures."  *Id.*  Prospective members had to affirmatively click the "I agree" button manifesting their consent to the Membership Agreement.  *See* Hosmer-Henner Decl. Ex. A.

Moreover, before confirming their agreement to the Membership Agreement, members had to affirmatively click a box next to the statement, "I agree to the Policies and Procedures."  *See* Hosmer-Henner Decl. Ex. A.  These Policies and Procedures were linked and mandate that, "It is the responsibility of each Member to read, understand, adhere to and ensure that he or she is aware of and operating under the most current version of these Agreements."  *See* Hosmer-Henner Decl. Ex. B, Section 2.  Thus, as members of BCN, Plaintiffs were parties to the BCN Membership Agreement, including the BCN Policies and Procedures, and were required to operate under the most current version of the Policies and Procedures.  *See* Hosmer-Henner Decl. Ex. B, Section 2.

BCN's Policies and Procedures contain a clear and unambiguous procedure for dispute resolution, requiring the Plaintiffs to engage in non-binding mediation in the first instance, and if that is not successful, to settle any remaining disputes through confidential arbitration:

> SECTION 8.2 – Mediation
> Prior to instituting an arbitration, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.
>
> SECTION 8.3 – Arbitration
> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, not including unilateral discretionary policy enforcement by the Company, shall be settled by confidential arbitration. The Parties waive all rights to trial by jury or to any court. Arbitration shall be conducted in either

Douglas, Isle of Man, or, if the Isle of Man is determined to be
inconvenient, then Manila, Philippines.

Hosmer-Henner Decl. Ex. B.

Courts routinely enforce dispute resolution procedures like the one in the BCN Membership Agreement. "When parties enter into a valid and enforceable agreement to engage in a non-binding dispute resolution process before submitting their claims to binding arbitration or litigation, courts should require compliance with that agreement." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1000 (9th Cir. 2010); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1207 (9th Cir. 1998) (reversing denial of motion to compel arbitration and enforcing contract provision requiring plaintiff to submit dispute to multi-tiered dispute resolution process). Accordingly, Plaintiffs are bound by the plain language of BCN's Policies and Procedures requiring them to first submit "any dispute arising from or relating to the [Membership] Agreement" to non-binding mediation. *See MB Am., Inc. v. Alaska Pac. Leasing,* 132 Nev. 78, 82 (2016) (rejecting claims because plaintiff failed to comply with a pre-litigation mediation provision: "Here, as the provision at issue unambiguously addresses mediation as a condition precedent to litigation, the terms are given their 'usual and ordinary signification.'").

The Plaintiffs' claims clearly arise from and relate to the BCN Membership Agreement, and they cannot avoid this result by strategically drafting their complaint to avoid mentioning the Membership Agreement and the mandatory dispute resolution provision by name. *See Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), applying California contract law principles identical to Nevada contract law: "Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."). The complaint affirmatively alleges the Plaintiffs' membership in BCN, alleges breach of contract and fraud claims related to the Plaintiffs' contract with BCN, and seeks monetary damages based on "dividends, bonuses, commissions and other compensation" allegedly owed pursuant to their contract with BCN. By its plain terms, the BCN Membership Agreement requires the parties to attempt to mediate such claims in good faith, and if that is not successful, to arbitrate their claims. Because the Plaintiffs never attempted to mediate or arbitrate as required by the contract, the

1    complaint fails to state a claim and should be dismissed under Federal Rule 12(b)(6). *See Brosnan,*

2    2008 WL 2388392, at *1.[3]

3            **2.    The Plaintiffs' Claims Should Be Dismissed Because They Are Subject**
              **to Mandatory Arbitration.**

4

5            Even if the Plaintiffs had attempted to mediate, which they did not, their claims still are

6    not properly before this Court because they are subject to mandatory arbitration. Where the claims

7    in a plaintiff's complaint are subject to arbitration, a court may dismiss the complaint under Rule

8    12(b)(6). *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir.

9    2004).

10           The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate

11   controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save

12   upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

13   "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead

14   mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

15   an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218

16   (1985) (holding district court erred in failing to grant motion to compel arbitration of state claims)

17   (citing 9 U.S.C. §§ 3, 4); *see also Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)

18   ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms." (citing

19   *Reynolds,* 470 U.S. at 221)).

20           When a party petitions a court to enforce an arbitration provision under the FAA, "the

21   district court's role is limited to determining whether a valid arbitration agreement exists and, if

22   _____

23   [3] Other Circuits and district courts have likewise upheld the principle that a party's failure to
     comply with mandatory dispute resolution procedures bars that party from pursuing litigation.
24   *See, e.g., DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 335 (7th Cir. 1987)
     (affirmed judgment against plaintiff for failure to comply with mediation clause before instituting
25   litigation); *HIM Portland, LLC v. DeVito Builders, Inc.,* 317 F.3d 41, 44 (1st Cir. 2003) (holding
     mediation was a condition precedent to arbitration); *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.,* 290
26   F.3d 1287, 1291 (11th Cir. 2002) (same); *Ponce Roofing, Inc. v. Roumel Corp.,* 190 F. Supp. 2d
     264, 267 (D.P.R. 2002) (dismissing action where the plaintiff failed to submit to multi-tiered ADR
27   process); *Ziarno v. Gardner Carton & Douglas, LLP,* Civ. A. 03-3880, 2004 WL 838131, at *3
     (E.D. Pa. Apr. 8, 2004) (dismissing action where plaintiff failed to comply with agreement to
28   proceed before "mediator-arbitrator who has special expertise").

1    so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions,

2    the court must enforce the agreement." *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016)

3    (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).

4    Because the BCN Membership Agreement is "a contract evidencing a transaction involving

5    commerce," it is subject to the FAA. 9 U.S.C. § 2.

6          The Plaintiffs' claims, all of which arise out of or relate to the BCN Membership

7    Agreement, are subject to mandatory arbitration. By its terms, the BCN Membership Agreement

8    requires the parties to attempt to mediate in good faith, and if that is not successful, to arbitrate

9    "any controversy or claim arising out of or relating to the Agreement, or the breach thereof." The

10   provision is unambiguously broad: any claims arising out of the BCN Membership Agreement or

11   relating to the agreement must be arbitrated.

12         The Ninth Circuit routinely enforces broad arbitration provisions similar to the one in the

13   BCN Membership Agreement. *See, Optimum Prods. v. Home Box Office*, No. 19-56222, 2020

14   WL 7334537, at *1 (9th Cir. Dec. 14, 2020) ("Every court that has construed the phrase 'arising

15   in connection with' in an arbitration clause has interpreted that language broadly, and we likewise

16   conclude that the language 'arising in connection with' reaches every dispute between the parties

17   having a significant relationship to the contract and all disputes having their origin or genesis in

18   the contract.") (cleaned up); *Peters v. Amazon Servs., LLC*, 669 F. App'x 487, 488 (9th Cir. 2016)

19   (affirming district court's order compelling arbitration where agreement required arbitration of

20   "[a]ny dispute . . . or claim relating in any way" to the agreement).

21         The Plaintiff's claims here—which relate to their membership in BCN and expressly allege

22   breach of contract and fraud claims related to the Plaintiffs' contract with BCN—are clearly

23   encompassed by the arbitration clause.[4] To the extent there is any question as to whether the

24

---

[4] This includes the Plaintiffs' claim for fraudulent inducement, which alleges that the Defendants
25   made "misrepresentations. . . in order to induce Plaintiffs" to enter into a contract with BCN in
     general, but does not allege that the Plaintiffs were fraudulently induced to enter into the
26   arbitration provision specifically. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.
     395, 403-404 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself—an
27   issue which goes to the making of the agreement to arbitrate—the federal court may proceed to
     adjudicate it. But the statutory language does not permit the federal court to consider claims of
28   fraud in the inducement of the contract generally."); *Buckeye Check Cashing, Inc. v. Cardegna*,

1   Plaintiffs' claims fall within the scope of the arbitration clause, doubts are resolved "in favor of

2   arbitration." *See Optimum*, 2020 WL 7334537, at *1 ("any doubts concerning the scope of

3   arbitrable issues should be resolved in favor of arbitration" (quoting *Moses H. Cone Mem'l Hosp.*

4   *v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983))).

5       Because the BCN Membership Agreement's dispute resolution provisions are

6   unambiguous and enforceable against the Plaintiffs, Mr. Goettsche respectfully requests that this

7   Court dismiss this litigation pursuant to Rule 12(b)(6) and the Federal Arbitration Act. *See, e.g.,*

8   *See Lei v. Amway Corp.*, No. CV1404022RGKAGRX, 2014 WL 12596787, at *12 (C.D. Cal. July

9   23, 2014) (dismissing arbitrable claims (citing *Thinket Ink Info.*, 368 F.3d at 1060)).

10  **IV.   ALTERNATIVE MOTION TO STAY PROCEEDINGS**

11      **A.   Solely In The Alternative, This Litigation Should Be Stayed Pending The
             Resolution Of The District of New Jersey Criminal Case.**

12

13      A district court may exercise its discretion to stay civil proceedings pending the outcome

14  of parallel criminal proceedings. *Nat'l Fire & Marine Ins. Co. v. Holper*, No. 2:18-CV-1338,

15  2018 WL 5726191, at *1 (D. Nev. Oct. 31, 2018) (staying wrongful death action pending related

16  criminal case); *Perez v. Station Casinos LLC*, No. 2:15-CV-01553, 2016 WL 8959135, at *2 (D.

17  Nev. Feb. 8, 2016) (staying civil case pending related criminal case).   In determining whether to

18  stay civil proceedings while parallel criminal proceedings are pending, courts must consider the

19  particular circumstances and competing interests involved, including (i) the extent to which the

20  defendant's Fifth Amendment rights are implicated; (ii) the plaintiff's interest in proceeding

21  expeditiously; (iii) the burden the proceedings may impose on the defendant; (iv) the convenience

22  of the court and the efficient use of judicial resources; (v) the interests of persons not parties to

23  the civil litigation; and (vi) the interest of the public in the pending civil and criminal litigation.

24  *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).

25      Analysis of the above factors weighs heavily in favor of staying this civil action while the

26  D.N.J. criminal proceeding is pending.

27  _____

28  546 U.S. 440 (2006) (holding challenges to validity of a contract as a whole, rather than the
    arbitration clause within it, must be resolved by the arbitrator) (collecting cases).

1.   **Litigating This Case Implicates Mr. Goettsche's Fifth Amendment Rights.**

Mr. Goettsche's Fifth Amendment rights will be heavily implicated if he is required to participate in this litigation while the District of New Jersey criminal case proceeds, because the Plaintiffs' claims are related to the triable criminal allegations in the D.N.J. Indictment.

The Fifth Amendment privilege against self-incrimination protects a person not only from being a witness against himself in a criminal proceeding, but also privileges him from having to answer in a civil proceeding when it may incriminate him in a criminal proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (holding that Fifth Amendment privilege can be asserted in any civil proceeding "and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."). "[T]he 'privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution' and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (internal citations omitted).

The strongest case for a stay of a civil action occurs after an indictment is returned in the criminal matter because the possibility for self-incrimination is greatest at that stage and the potential harm to civil litigants arising from delaying the case is reduced by the Speedy Trial Act. *See Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir. 1989) (explaining stay of civil proceedings is more important after criminal indictment is filed); *Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. #2*, No. 06-CV-124, 2007 WL 1227592, at *2 (D. Mont. Apr. 24, 2007) (same). Such is the case here.

The Plaintiffs' allegations that the Defendants made misrepresentations to BCN members, defrauded the Plaintiffs, and violated securities laws are similar to the criminal acts described in the D.N.J. Indictment, which was filed on December 5, 2019, long before the Plaintiffs filed their complaint. *See* 2:19-CR-877 (CCC), ECF No. 9 (Indictment).   Thus, there is "the substantial probability that discovery will include inquiring into" facts at issue in the criminal case. *See Nat'l*

1   *Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2. In order to defend this action, Mr. Goettsche

2   will need to make representations to the Court about what occurred between the parties, and any

3   representations made by Mr. Goettsche would implicate his Fifth Amendment rights and prejudice

4   his ability to defend himself against the charges in the D.N.J.

5           Simply put, Mr. Goettsche should not be forced to choose between invoking his Fifth

6   Amendment rights and defending himself in this action, and this is a choice that all named

7   Defendants will face in this case. Accordingly, this factor weighs strongly in favor of a stay. *See*

8   *Nat'l Fire & Marine Ins. Co.*, 2018 WL 5726191, at *2 (finding first *Keating* factor favored a stay

9   because defendant "will be forced to decide whether he should risk an adverse inference or

10  participate in discovery at the detriment of his criminal case").

11                    **2.    The Plaintiff's Interest In Proceeding Expeditiously Is Outweighed By
                            The Burden On Mr. Goettsche To Litigate Both Actions Without
12                          Resources.**

13          Putting aside Mr. Goettsche's Constitutional Rights, which are paramount here, Mr.

14  Goettsche will be irreparably prejudiced by being forced to litigate both cases with limited access

15  to the information relevant to this action, counsel, and financial resources.

16          Mr. Goettsche was detained until fairly recently (December 18, 2020), at which point he

17  was released to home confinement with the conditions that he not have access to a computer or

18  the internet. *See* 2:19-CR-877, ECF No. 171 (Order Setting Conditions of Release). In addition,

19  the Government previously seized all of his personal paper files, phones, and other electronic

20  devices, so he no longer has access to any records related to BCN. He therefore has no access to

21  any documents or communications that may be relevant to this action. It will also prove to be

22  extremely difficult, if not impossible, for him to appear in Nevada for court proceedings, given

23  his release conditions. Without a stay, Mr. Goettsche is forced to litigate this action with one hand

24  tied behind his back.

25          By contrast, the Plaintiffs will not be prejudiced by a stay of this action. It took nearly

26  eight months for the Plaintiffs to even attempt to serve Mr. Goettsche, which does not indicate

27  that Plaintiffs have a strong interest in "proceeding expeditiously." *See Perez*, 2016 WL 8959135,

28  at *2 (noting there was little potential prejudice to plaintiff in staying civil case where plaintiff

1   failed to follow up on proposed discovery order).  There is no reason to believe that any evidence

2   will be spoiled while the case is stayed or that any of the Plaintiffs' claims will be affected with

3   the passage of time.  Further, the Plaintiffs risk only monetary damages, "which is a relatively

4   minimal harm in comparison" to Mr. Goettsche's Fifth Amendment rights.  *See Nat'l Fire &*

5   *Marine Ins. Co.,* 2018 WL 5726191, at *2.  Accordingly, the second and third factors identified

6   in *Keating* weigh in favor of a stay.  *See id.*

7              **3.    The Remaining *Keating* Factors Support A Stay.**

8              The remaining factors – the convenience of the court and the efficient use of judicial

9   resources, the interests of third parties, and the interest of the public in both actions –all weigh in

10   favor of granting a stay.

11             If the Court stays this action at this stage, pre-answer and before discovery has begun, it

12   will avoid unnecessary delays caused by Mr. Goettsche's and the other Defendants' inability to

13   access information.  In addition, the Court has already stayed Mr. Weeks' time to respond to the

14   complaint indefinitely.  The other Defendants either have not been served or have not appeared in

15   this action.  Because the D.N.J. Indictment also includes allegations against the other individual

16   Defendants named in this action, staying this action will actually conserve judicial resources until

17   such time that all Defendants are meaningfully able to participate in the litigation.  *See Perez,*

18   2016 WL 8959135, at *2.

19             Mr. Goettsche is unaware of any third parties who have an interest in this litigation,

20   meaning the factor regarding third party interests weighs in favor of a stay.  *See Nat'l Fire &*

21   *Marine Ins. Co.,* 2018 WL 5726191, at *2.[5]

22             Finally, the last factor weighs in favor of a stay because the public interest in fair criminal

23   proceedings is stronger than in resolving a civil case.  *Id.* at *2 ("Lastly, the court cannot ignore

24   the remarkable public interest in favor of fair criminal proceedings."); *accord Perez,* 2016 WL

25   8959135, at *2 (staying civil case pending related criminal case and holding, "Finally, the Court

26   

27   [5] Plaintiffs vaguely refer to "independent business operators" in the complaint. ECF No. 1 ¶ 6.
    To the extent the Plaintiffs assert they relied on misrepresentations by independent entities other

28   than Defendants, Mr. Goettsche expressly reserves and does not waive his right to move for
    dismissal for failure to join a necessary party.

1    finds that the interest of the public in the criminal litigation is greater than that of the public in the

2    civil litigation").

3        Accordingly, all of the *Keating* factors weigh in favor of staying this action while the

4    pending criminal proceeding in the D.N.J. is resolved.

5    **V.    CONCLUSION**

6        For the reasons set forth above, Defendant Matthew Brent Goettsche respectfully requests

7    that this Court dismiss the complaint against Mr. Goettsche for lack of personal jurisdiction

8    pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)

9    and the Federal Arbitration Act. Solely in the alternative, Mr. Goettsche requests that the action

10   be stayed pending resolution of the criminal case.

11       DATED: March 23, 2021.

McDONALD CARANO LLP

*/s/ Adam Hosmer-Henner*
Adam Hosmer-Henner, Esq. (NSBN 12779)
Phil Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
100 West Liberty Street, 10th Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benjamin J.A. Sauter
Amanda N. Tuminelli
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
(212) 488-1288
benjamin.sauter@kobrekim.com
amanda.tuminelli@kobrekim.com
(*Pro Hac Vice* applications to be filed)

*Attorneys for Defendant Matthew Brent Goettsche*

# EXHIBIT E

Dismissal Order (ECF No. 30)

# EXHIBIT E

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, *et. al*, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:20-cv-00994-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| MATTHEW BRENT GOETTSCHE, *et. al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 21), filed by Defendant Matthew Brent Goettsche ("Mr. Goettsche"). Plaintiffs Mina De Oro, LLC and The Toy Chest, LLC (collectively, "Plaintiffs"), filed a Response, (ECF No. 28), and Mr. Goettsche filed a Reply, (ECF No. 29).

For the reasons discussed below, Mr. Goettsche's Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

This case arises out of alleged federal securities violations in a multi-level bitcoin mining scheme. (*See generally*, Compl., ECF No. 1). Plaintiffs allege that Mr. Goettsche, in concert with the other defendant individuals in this case, fraudulently offered sale positions in a multi-level matrix and shares of a bitcoin mining business. (*Id.* ¶ 6). Defendants solicited these investments using their website www.bitclub.com ("Bitclub"). (*Id.*). To induce investors, Defendants falsely advertised a large crypto currency mining operation and returns on investment. (*Id.* ¶ 8). Relying upon these false statements, Plaintiffs each invested $250,000 into Bitclub's scheme. (*Id.* ¶ 10). However, instead of using the money as advertised, Plaintiffs allege that Defendants diverted the money for personal use. (*Id.* ¶ 9).

Plaintiffs now seek damages from the loss of their investment and the loss of the advertised investment returns. (*Id.* ¶ 14). The Complaint alleges the following causes of action against all Defendants: (1) violation of 17 C.F.R. § 240.10B-5; (2) violation of Nevada securities law under NRS 90.570; (3) common law fraud; (4) fraudulent inducement; (5) breach of contract; and (6) unjust enrichment. (*Id.* ¶¶ 17–59). Mr. Goettsche is also a defendant in a criminal case out of the District of New Jersey involving the same conduct. (Mot. Dismiss 2:27–3:9, ECF No. 1). Mr. Goettsche now moves to dismiss this case for lack of personal jurisdiction. (*Id.* 1:24–27).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). District courts take the uncontroverted allegations in the complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Judicial Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit will not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

*v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).  Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

## III.   **DISCUSSION**

Plaintiff alleges that the Court has specific personal jurisdiction[1] over all of the Defendants in this case for two reasons: (1) Plaintiffs are Nevada entities and the solicitations to purchase the fraudulent securities occurred in the State of Nevada; and (2) Defendants knew Plaintiffs were Nevada residents and purposefully availed themselves of the benefits of conducting business in the State of Nevada and solicited Nevada residents in the State of Nevada. (Compl. ¶ 5).  In contrast, Defendant argues that the Court lacks personal jurisdiction because: (1) Plaintiffs impermissibly lump all of the Defendants together in their allegations and fail to set forth any allegations specifically regarding Mr. Goettsche's contacts with Nevada; (2) Plaintiffs themselves are Mr. Goettsche's only link to Nevada; and (3) Plaintiffs cannot demonstrate purposeful availment with regards to Mr. Goettsche. (Mot. Dismiss 5:16–8:23).[2]

As an initial matter, the Complaint does not make any allegations concerning Mr. Goettsche specifically; it merely alleges that Defendants collectively solicited Plaintiffs to

---

[1] The parties agree that the Court does not have general personal jurisdiction over Mr. Goettsche.

[2] Mr. Goettsche also argues that this case should be dismissed because Plaintiffs failed to engage in mediation prior to bringing this case, as required by Bitclub's Membership Agreement. (Mot. Dismiss 10:1–14:9, ECF No. 21).  However, because the Court finds that it lacks personal jurisdiction over Mr. Goettsche, the Court need not discuss the mediation argument.

participate in a multi-level bitcoin mining scheme. (Compl. ¶ 6).  Since the Complaint does not once mention Mr. Goettsche, other than in the caption, the Court cannot assess whether he has sufficient contacts with Nevada to establish personal jurisdiction. *See Medimpact Healthcare Systems, Inc. v. IQVIA Holdings, Inc.*, No. 19cv1865-GPC, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (dismissing a defendant for lack of personal jurisdiction when "plaintiffs [did] not specifically isolate the jurisdictional facts amongst the different . . . entities"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018) (no personal jurisdiction over one individual defendant when the complaint grouped all defendants together).

However, even assuming that the generalized allegations in the Complaint individually apply to Mr. Goettsche, personal jurisdiction is still not established.  Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). Further, personal jurisdiction cannot be established from the conduct of a plaintiff or third parties within the forum. *Id.*  In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

1    *Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

2          "The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*,

3    503 F.3d at 1057.  If the plaintiff satisfies the first two prongs, the burden will shift to the

4    defendant to show that exercising jurisdiction would be unreasonable. *Id.*  However, "[i]f the

5    plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the

6    forum state." *Id.*  In a securities case, the first prong of the specific jurisdiction analysis may be

7    established either by purposeful direction or purposeful availment. *See, e.g., SEC v. Jammin'*

8    *Java Corp.*, No. 2:15-cv-08921-SVW-MRW, 2016 U.S. Dist. LEXIS 184773, at *23 (C.D. Cal.

9    July 18, 2016).  The Court will address each in turn.

10         **A.     Purposeful Direction**

11         Under the purposeful direction analysis, district courts consider whether the defendant

12   "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

13   the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at

14   803.  When determining whether the defendant expressly aimed its conduct at the forum state,

15   the court focuses on "the defendant's contacts with the forum State itself, not the defendant's

16   contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d

17   1064, 1070 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284).

18         As discussed above, the Complaint merely suggests that Defendants solicited

19   investments from Nevada residents in the State of Nevada. (Compl. ¶ 5).  The Complaint does

20   not explain how this solicitation was an act expressly aimed at Nevada, rather than an act

21   generally aimed at anyone with access to the internet. *Schwarzenegger*, 374 F.3d at 803.

22   Therefore, on the face of the Complaint, the only link between Mr. Goettsche and Nevada is his

23   connection to Plaintiffs, which is not enough to establish "purposeful direction." *Walden*, 571

24   U.S. at 284.

25   //

Page 5 of 8

**B.     Purposeful Availment**

To establish purposeful availment, a plaintiff must allege conduct "indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co., Ltd*, 480 U.S. at 112). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

With respect to an entity's online presence, the Ninth Circuit has adopted a "sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Applying this approach, courts in this Circuit "recognize[] a distinction between passive websites, which simply display information, and interactive websites, which allow customers to exchange information with a business." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Where a defendant's website is either passive or falls somewhere in the middle of the sliding scale, Courts require "something more" to establish specific jurisdiction. *Desert Rock Entm't II LLC v. D. Hotel & Suites, Inc.*, No. 2:15-cv-01417-MMD-VCF, 2016 U.S. Dist. LEXIS 58042, 2016 WL 1732724, at *3 (D. Nev. May 2, 2016) (quoting *Cybersell*, 130 F.3d at 418). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011).

1    In the present case, Plaintiffs do not specifically allege whether Bitclub's website is

2  passive or interactive, but the Court assumes that the website fosters some level of interaction,

3  since it allegedly solicited investments.  Therefore, Bitclub's website likely falls somewhere in

4  the middle of the sliding scale, and Plaintiffs must demonstrate 'something more,' besides the

5  mere fact that Bitclub's website exists, to establish personal jurisdiction. *See Desert Rock*, 2016

6  WL 1732724, at *3.  However, Plaintiffs' Complaint provides no allegations concerning the

7  interactivity level of Bitclub's website, its geographic scope, or whether Bitclub or Mr.

8  Goettsche individually targeted either Plaintiff.  Plaintiff's Response to the Motion to Dismiss

9  offers no further clarification; it cites the *Mavrix* standard, but neglects to provide any

10  explanation of how Mr. Goettsche intended to "serve the market" in Nevada. *Asahi Metal*, 480

11  U.S. at 112, 107.  Accordingly, Plaintiffs fail to establish any purposeful availment.

12    Because Plaintiffs demonstrated neither that Mr. Goettsche purposefully directed his

13  activities at Nevada, nor that he purposefully availed himself of the privileges of conducting

14  activities in Nevada, the first prong of the specific personal jurisdiction analysis is not met.

15  Therefore, Mr. Goettsche's Motion to Dismiss is granted, and Plaintiffs' claims against Mr.

16  Goettsche are dismissed for lack of personal jurisdiction.

17    **C.    Leave to Amend**

18    Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give

19  leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Court finds that

20  Plaintiffs may be able to plead additional facts that could cure the Complaint's current

21  deficiencies related to personal jurisdiction. *See, e.g., Fluidigm Corp. v. bioMerieux SA*, No.

22  19-cv-02716-LHK, 2019 WL 6612063, at *7 (N.D. Cal. Dec. 5, 2019) (granting leave to amend

23  after dismissing the case for lack of personal jurisdiction when "an opportunity to amend the

24  Complaint would not be futile").  Accordingly, the Court will grant Plaintiffs leave to file an

25

amended complaint.  Plaintiffs shall file their amended complaint within twenty-one (21) days of the entry of this Order.

IV.    **CONCLUSION**

    **IT IS HEREBY ORDERED** that Mr. Goettsche's Motion to Dismiss, (ECF No. 21), is **GRANTED**.  Plaintiffs' claims against Mr. Goettsche are **DISMISSED without prejudice**.

    **IT IS FURTHER ORDERED** that if Plaintiffs seek to amend their Complaint for the purposes of establishing personal jurisdiction, Plaintiffs shall file an amended complaint within twenty-one (21) days from the entry of this order.

    **DATED** this __28__ day of March, 2022.

                                 _____

                               Gloria M. Navarro, Chief Judge
                               United States District Court

# EXHIBIT F

Opposition to Defendant5 Matthew Brent
Goettsche's Motion to Dismiss (ECF No. 28)

# EXHIBIT F

1   P. STERLING KERR, ESQ.
    Nevada Bar No. 3978
2   PETER R. PRATT, ESQ.
    Nevada Bar No. 6458
3   LAW OFFICES OF P. STERLING KERR
    2450 St. Rose Parkway, Suite 120
4   Henderson, Nevada 89074
    Telephone No. (702) 451–2055
5   Facsimile No. (702) 451-2077
    Email: sterling@sterlingkerrlaw.com
6   Email: peter@sterlingkerrlaw.com
    *Attorneys for Plaintiffs*

7

                    **UNITED STATES DISTRICT COURT**
8                       **DISTRICT OF NEVADA**

9   MINA DE ORO, LLC, a Nevada limited          Case No.: 2:20-cv-00994-GMN-VCF
    liability company; THE TOY CHEST,
10  LLC, a Nevada limited liability company;
                                                **OPPOSITION TO DEFENDANT**
11              Plaintiffs,                      **MATTHEW BRENT GOETTSCHE'S**
                                                **MOTION TO DISMISS**
12  v.

13  MATTHEW BRENT GOETTSCHE, an
    individual, JOBEDIAH SINCLAIR
14  WEEKS, an individual, JOSPEH FRANK
    ABEL, an individual, SILVIU CATALIN
15  BALACI, an individual, BITCLUB, an
    unknown entity, and DOE and ROE
16  corporations,

17              Defendants.

18          COMES NOW Plaintiffs, Mina De Oro, LLC and The Toy Chest, LLC, by and through

19  their attorneys the Law Offices of P. Sterling Kerr, and hereby oppose Defendant Matthew Brent

20  Goettsche's Motion to Dismiss.

21  ///

22  ///

23  ///

24

25

26

27

28

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone (702) 451-2055 Facsimile (702) 451-2077

1    This Opposition is made and based upon all the papers and pleadings on file herein, the

2   Points and Authorities attached hereto, and such oral argument as may be adduced at a hearing of

3   this matter.

4    DATED this 6th day of April, 2021.

5                                                LAW OFFICES OF P. STERLING KERR

6

7   By: /s/ Peter R. Pratt

        P. STERLING KERR, ESQ.

8       Nevada Bar No. 3978
        PETER R. PRATT, ESQ.

9       Nevada Bar No. 6458
        2450 St. Rose Parkway, Suite 120

10      Henderson, Nevada 89074

11              **MEMORANDUM OF POINTS AND AUTHORITIES**

12

13   **I.   INTRODUCTION**

14

15    This matter involves Defendants who have faced or are currently facing major criminal

16   charges regarding cryptocurrency and crypto-mining schemes.  Plaintiffs have alleged violations

17   of various federal and state securities statutes, as well as claims.  Defendants induced Plaintiffs

18   to invest $500,000 with Defendants and have deprived Plaintiffs of the use of the funds or the

19   profits from the funds, as Defendants diverted the money to personal use.

20    Defendants eventually shut down their website and refused to return the funds to Plaintiffs.

21   Plaintiffs had zero access to the contracts, as the contracts were all online, and no ability to

22   exercise any contract provisions, including mediation and arbitration provisions set forth in the

23   Motion to Dismiss, which Plaintiffs had no access to even view.

24    Since the filing of the Motion to Dismiss, counsel for Plaintiffs has reached out to counsel for

25   Goettsche regarding staying proceedings to conduct mediation, but Goettsche has been unwilling

26   to do so.

27    Defendant's Motion is based upon two primary points:  1, a lack of personal jurisdiction over

28

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Defendant Goettsche and 2, a failure to engage in binding dispute resolution.  Defendant

Goettsche additionally moves, in the alternative, for a stay pending the resolution of a related

criminal case in New Jersey.

## II.  JURISDICTION IS PROPER

The Court must deny Goettsche's Motion to Dismiss as the Court has sufficient contacts

with Nevada to have specific personal jurisdiction over these claims, venue is proper, and the

claims have been properly pled as to fulfill the requirements of FRCP 8(a)(2).[1]

Goettsche repeatedly makes false statements in his Motion that he "did not perform any

of the alleged acts in, direct his conduct to, or target the State of Nevada."  *See* Motion to

Dismiss at p. 2, 4, 5.  Plaintiffs specified in the Complaint that the tortious acts in question were

posted on the internet, and that the tortious statements were directed toward the Plaintiffs, which

are Nevada entities.  Defendants made no effort to exclude Nevada from its prospective

customers, and instead purposefully did not exclude Nevada.

The Complaint clearly sets forth the basis for Nevada jurisdiction.  While Goettsche

attempts to minimize this, there is sufficient basis to hold that Goettsche and his co-defendants

purposefully availed themselves of Nevada and rejected the opportunity to exclude Nevada from

its pool of prospective customers.  It is entirely reasonable to hold that Nevada has jurisdiction in

this matter.

## III. ANALYSIS

### A.  MOTION TO DISMISS STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d

80 (1957); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir.1996).

According to FRCP 12(b)(6) a court may dismiss a complaint for "failure to state a claim

---

[1] Plaintiffs do not dispute that this Court does not have general jurisdiction over Defendant Gottsche.

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile (702) 451-2077

1   upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must

2   provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."

3   FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not

4   require detailed factual allegations, it demands more than "labels and conclusions or a formulaic

5   recitation of the elements of a cause of action. . . " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

6   (citation omitted) (internal quotations omitted). "Factual allegations must be enough to rise

7   above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a

8   complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

9   face." *Iqbal*, 556 U.S. at 678 (citation omitted).

10       In *Iqbal*, the Supreme Court clarified the two-step approach to apply when considering

11   motions to dismiss. First, the court must accept as true all well-pled factual allegations in the

12   complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. Mere

13   recitals of the elements of a cause of action, supported only by conclusory statements, do not

14   suffice. *Id*. Second, the court must consider whether the factual allegations in the complaint

15   allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's

16   complaint alleges facts that allow the court to draw a reasonable inference that the defendant is

17   liable for the alleged misconduct. *Id*. at 678.

18   Where the complaint permits the court to infer more than the mere possibility of misconduct, the

19   complaint has "alleged - but not shown - that the pleader is entitled to relief." *Id*. at 679 (internal

20   quotations omitted). When the allegations in a complaint have crossed the line from conceivable

21   to plausible, plaintiff's claim must survive. *See Twombly*, 550 U.S. at 570.

22       A federal court must apply the substantive law of the forum state when a federal question

23   is not involved. *See Cornett v. Gawker media*, LLC, 2014 WL 2863093, at 5 (D. Nev. June 23,

24   2014); see also *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed.1188

25   (1938). Likewise, when "federal subject matter jurisdiction is based on diversity, courts apply the

26   law of the forum state to determine which state's statute of limitations to apply." *Id*. (citing to

27   *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); see also <u>Flowers v. Carville</u>, 310 F.3d

28   1118, 1123 (9th Cir. 2002)). As such Nevada substantive law applies here. See also First

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

1    American Defendant's Motion to Dismiss pg. 10.

2           As to the request to dismiss pursuant to FRCP 12(b)(2) for lack of personal jurisdiction,

3    "At the motion to dismiss stage, a plaintiff is generally required only to make out a prima facie

4    showing of personal jurisdiction to overcome a 12(b)(2) motion." See *Glencore Grain Rotterdam*

5    *B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir.2002).

6           B.   THE DISTRICT COURT OF NEVADA HAS SPECIFIC PERSONAL
                 JURISDICTION OVER THE CLAIMS MADE AGAINST GOETTSCHE IN
7                THIS CASE

8           This Court has specific personal jurisdiction over the claims alleged in the Complaint

9    pursuant to the Nevada long arm statute, and the recent federal case law outlining the

10   requirements of personal jurisdiction regarding allegations of tortious activity by a defendant on

11   the internet.  As stated in Goettsche's Motion, "Where, as here, no federal statute authorizes

12   personal jurisdiction, the district court applies the law of the state in which the court sits.

13   Fed.R.Civ.P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998)."

14   *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F. 3d 1218 - Court of Appeals, 9th Circuit

15   2011.  The federal court has analyzed the Nevada statute, "Nevada's long-arm statute permits the

16   exercise of jurisdiction to the same extent as the Constitution. Nev.Rev.Stat. § 14.065 (2001).

17   Hence, we consider only the constitutional principles of due process which require that RII have

18   minimum contacts with Nevada 'such that the maintenance of the suit does not offend traditional

19   notions of fair play and substantial justice.' *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66

20   S.Ct. 154, 90 L.Ed. 95 (1945)."

21   *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F. 3d 1007 - Court of Appeals, 9th Circuit 2002.

22          The Ninth Circuit uses an analysis of three elements to determine whether personal

23   jurisdiction over a defendant exists, "(1) The non-resident defendant must *purposefully direct his*

24   *activities* or consummate some transaction with the forum or resident thereof; *or* perform some

25   act by which he *purposefully avails himself* of the privilege of conducting activities in the forum,

26   thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

27   out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction

28   must comport with fair play and substantial justice, i.e. it must be reasonable.

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone (702) 451-2055 Facsimile (702) 451-2077

1  *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th

2  Cir.1987) (emphases added))." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F. 3d 1218 -

3  Court of Appeals, 9th Circuit 2011.

4      The *Mavrix* case goes on to discuss the first factor in the context of a tort case like this

5  one. "The 'effects' test, which is based on the Supreme Court's decision in Calder v. Jones, 465

6  U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that 'the defendant allegedly must

7  have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

8  that the defendant knows is likely to be suffered in the forum state.' Brayton Purcell, 606 F.3d at

9  1128 (quoting Yahoo!, 433 F.3d at 1206)." *Id.* at 1228.

10      The *Mavrix* case is important to discuss in this situation because there is an analysis of

11  personal jurisdiction in the context of website and internet activity. The *Mavrix* court continues

12  by stating that the acts must be "'expressly aimed at the forum state.' In prior cases, we have

13  struggled with the question whether tortious conduct on a nationally accessible website is

14  expressly aimed at any, or all, of the forums in which the website can be viewed. See, e.g.,

15  Brayton Purcell, 606 F.3d at 1129-31; Pebble Beach, 453 F.3d at 1156-58; Rio Props., Inc. v. Rio

16  Int'l Interlink, 284 F.3d 1007, 1019-21 (9th Cir.2002); Panavision Int'l, L.P. v. Toeppen, 141

17  F.3d 1316, 1321-22 (9th Cir.1998); Cybersell, 130 F.3d at 417. On the one hand, we have made

18  clear that "maintenance of a passive website alone cannot satisfy the express aiming prong."

19  Brayton Purcell, 606 F.3d at 1129. On the other, we have held that "operating even a passive

20  website in conjunction with `something more' — conduct directly targeting the forum — is

21  sufficient." Rio Props., 284 F.3d at 1020. In determining whether a nonresident defendant has

22  done "something more," we have considered several factors, including the interactivity of the

23  defendant's website, e.g., Pebble Beach, 453 F.3d at 1153-54, 1158; Cybersell, 130 F.3d at 417-

24  20; the geographic scope of the defendant's commercial ambitions, e.g., Pebble Beach, 453 F.3d

25  at 1156-58; Rio Props., 284 F.3d at 1020-21; and whether the defendant "individually targeted" a

26  plaintiff known to be a forum resident, e.g., Brayton Purcell, 606 F.3d at 1129; Pebble Beach,

27  453 F.3d at 1156-57; Panavision, 141 F.3d at 1321-22.

28      Here, we are not talking about merely operating a website and nominal interaction.

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Instead, this matter relates to an investment of a half million dollars, wherein the Defendants, including Goettsche, made significant misrepresentations and engaged in violations of both state and federal law and are facing or have faced criminal charges related to the violations and frauds. Contrary to the arguments set forth by Goettsche, the prior case law in both *Schwarznegger* and *Freestream Aircraft* (cited by Goettsche) would hold it to be reasonable to adjudicate this dispute in Nevada, where the Plaintiffs are domiciled and where Defendants, including Goettsche, purposefully availed themselves of the use of the forum for the purpose of violating securities law and harming Plaintiffs.

C.   LEAVE TO AMEND SHOULD BE GRANTED IN ORDER TO AMEND PERCEIVED DEFICIENCIES IN THE AMENDED COMPLAINT

FRCP 15(a) directs that leave shall be freely given to amend a pleading when justice so requires. Insofar as this Court finds the cause of action in Plaintiffs' Complaint to be improperly pled, Plaintiffs requests leave of this Court to amend the Complaint accordingly.

D.   BINDING PREDISPUTE RESOLUTION PROVISIONS DO NOT REQUIRE DISMISSAL

Plaintiffs had no access to the contract prior to filing the lawsuit.  Defendants had maintained the contracts on their website and had shut down the website and denied Plaintiffs any access to the contract or its provisions.  As such, Defendants breached the contract at the time they shut down the website.  Instead of approaching Plaintiffs and other investors to mediate a termination of the contract, Defendants refused contact and refused to mediate the matter.

Additionally, since the filing of this Motion, Plaintiffs have reached out about mediating this matter and staying the matter pending mediation.  However, Goettsche has refused to even consider doing so.  As such, it appears that the request for enforcement of the mediation clause is mere deception.  Goettsche has no desire to mediate any claims against him.  Moreover, while Goettsche was a member of Defendant Bitclub, Bitclub is not here requesting for enforcement of the mediation clause.  Plaintiffs have claims against Goettsche personally.  The contract does not limit Plaintiffs from seeking damages from Goettsche individually and does not protect

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone (702) 451-2055 Facsimile (702) 451-2077

1    Goettsche individually.  If Goettsche individually engaged in fraudulent actions, if Goettsche

2    was unjustly enriched by taking the Plaintiffs' money and converting to his personal use, if

3    Goettsche fraudulently induced Plaintiffs into investing in Bitclub, then Plaintiffs can separately

4    proceed in their action against Goettsche.

5              If Bitclub, which has been defaulted in this matter, wishes to come to this court and seek

6    to enforce the mediation clause, it is free to do so.  If Goettsche is representing that Bitclub as his

7    alter ego and he can exert all the rights and privileges of Bitclub (which he has not done

8    heretofore), such as enforcement of a mediation clause, then he also would be responsible for all

9    the acts of Bitclub, both criminally and civilly, a position that his criminal defense attorneys in

10   New Jersey might object to at this time.

11             As such, the Bitclub mediation and arbitration provisions are not applicable to a dispute

12   between Plaintiffs and Goettsche.  As such, this Court should deny the Motion to Dismiss on this

13   basis.

14             E.   THE CASE SHOULD NOT BE STAYED PENDING THE CRIMINAL CASE

15

16             The request, in the alternative, to stay the litigation pending the criminal matter, would, in

17   effect, deny Plaintiffs of justice.  To support his argument, Goettsche cites *Keating v. Office of*

18   *Trust Supervision*, 45 F.3d 322 (9th Cir. 1995).  This case involved notorious savings and loan

19   fraudster Charles Keating, whose illegal activities led to severe political consequences.   The

20   court there set forth a six-factor test to determine whether a civil proceeding should be allowed to

21   go forward while a criminal case was pending.  Contrary to the argument of Goettsche, these

22   factors do not weigh in his favor.

23             This matter involves an investment by Plaintiffs with Defendants of $500,000.   Plaintiffs

24   have been without their funds for years, while Defendants, including Goettsche, have taken full

25   advantage of the money for their personal use and enjoyment, along with the money of many

26   other investors.  It is extremely important and proper that this matter proceed so that Plaintiffs

27   can be compensated as soon as possible.  Many other third parties have been impacted by the

28   misdeeds of the Defendants and so there is general interest in this matter proceeding.  Goettsche,

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

1    while claiming difficulty affording to defend both the civil and criminal matter at the same time,

2    nonetheless has multiple law firms on this matter and appears more than able to fund an ample

3    defense of the litigation, both here and elsewhere.

4           Wherefore, this Court should not stay this litigation pending the outcome of the New

5    Jersey criminal case.

6    **III.     CONCLUSION**

7           For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Goettsche's

8    Motion to Dismiss in its entirety as it is without merit.   In the alternative, Plaintiffs request leave

9    of the Court to amend its complaint if the Court finds it deficient in any way.

10          DATED this 6th day of April, 2021.

11                                                    LAW OFFICES OF P. STERLING KERR

12                                           By: /s/ Peter R. Pratt
                                                  P. STERLING KERR, ESQ.
13                                                Nevada Bar No. 3978
                                                  PETER R. PRATT, ESQ.
14                                                Nevada Bar No. 6458
                                                  2450 St. Rose Parkway, Suite 120
15                                                Henderson, Nevada 89074

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on April 6, 2021, a true and correct copy of **OPPOSITION TO DEFENDANT MATTHEW BRENT GOETTSCHE'S MOTION TO DISMISS** was served to the following at their last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:

    **X**    **BY E-MAIL AND/OR ELECTRONIC MEANS**: addressees (s) having consented to electronic service, I via e-mail, Electronic Service through the Court's electronic filing system, or other electronic means to the e-mail address(es) of the addressee(s).

Adam Hosmer-Henner, Esq
Phil Mannelly, Esq.
Chelsea Latino, Esq.
**McDonald Carano LLP**
100 West Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benajmin J. A. Sauter
Amanda N. Tuminelli
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1288
Benjamin.sauter@kobrekim.com
Amanda.tuminelli@korbekim.com

*/s/ Jennifer Hogan*
An employee of the LAW OFFICES OF
P. STERLING KERR

LAW OFFICES OF P. STERLING KERR
ATTORNEYS AT LAW
2450 St. Rose Parkway, Suite 120, Henderson, Nevada 89074
Telephone: (702) 451-2055 Facsimile: (702) 451-2077