1  Adam Hosmer-Henner, Esq. (NSBN 12779)
2  Phil Mannelly, Esq. (NSBN 14236)
   Chelsea Latino, Esq. (NSBN 14227)
3  **McDONALD CARANO LLP**
   100 West Liberty Street, 10th Floor
4  Reno, NV 89501
   (775) 788-2000
5  ahosmerhenner@mcdonaldcarano.com
   pmannelly@mcdonaldcarano.com
6  clatino@mcdonaldcarano.com

7  Benjamin J.A. Sauter (admitted *pro hac vice*)
   Amanda N. Tuminelli (admitted *pro hac vice*)
8  **KOBRE & KIM LLP**
   800 Third Avenue
9  New York, NY 10022
   (212) 488-1288
10 benjamin.sauter@kobrekim.com
   amanda.tuminelli@kobrekim.com

11 *Attorneys for Defendant Matthew Brent Goettsche*

12            **UNITED STATES DISTRICT COURT**

13                 **DISTRICT OF NEVADA**

14 MINA DE ORO, LLC, a Nevada limited
   liability company; THE TOY CHEST, LLC a      CASE NO.:  2:20-cv-00994-CDS-VCF
15 Nevada limited liability company,

16              Plaintiffs,                       **DEFENDANT MATTHEW BRENT**
                                                  **GOETTSCHE'S REPLY IN SUPPORT OF**
17 v.                                             **MOTION TO DISMISS FIRST AMENDED**
                                                  **COMPLAINT**
18 MATTHEW BRENT GOETTSCHE, an
   individual, JOBEDIAH SINCLAIR WEEKS,
19 an individual, JOSEPH FRANK ABEL, an
   individual, SILVIU CATALIN BALACI, an
20 individual, BITCLUB, an unknown entity, and
   DOE and ROE Corporations,
21
              Defendants.
22

23        Defendant Matthew Brent Goettsche ("Mr. Goettsche"), by undersigned counsel,

24 respectfully submits this Reply in Support of his Motion to Dismiss the Amended Complaint of

25 Mina De Oro LLC and the Toy Chest, LLC, filed May 2, 2022, ECF No. 35.

26 / / /

27 / / /

28 / / /

1    <u>**MEMORANDUM AND POINTS OF AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        This is a civil securities action against Mr. Goettsche and others, through which Plaintiffs

4    Mina De Oro LLC and the Toy Chest, LLC (collectively, "Plaintiffs") allege the defendants

5    violated federal and state securities laws (and related state causes of action for fraud, breach of

6    contract, and unjust enrichment) by making untrue statements of material facts pertaining to the

7    sale of alleged securities. *See* ECF No. 33 at 7-13.  This is *not* a criminal conspiracy case.  The

8    simple fact is that all of Plaintiffs' newly added, sensationalist allegations related to the criminal

9    indictment and plea of a non-party, Mr. Brad Beckstead, for an alleged fraudulent tax return and

10   money laundering conspiracy have *nothing* to do with the causes of action asserted herein and only

11   highlight the fact that there is no jurisdiction over Mr. Goettsche, a Colorado resident. The

12   Amended Complaint attempts to focus on Mr. Goettsche for only one reason: he is the only one of

13   the five defendants who has appeared in this case, even though Plaintiffs have had two years to

14   act.

15       This Court previously found that Plaintiffs failed to allege facts sufficient to demonstrate

16   the existence of personal jurisdiction over Mr. Goettsche.  ECF No. 30 at 7.  Through their

17   Amended Complaint (ECF No. 33), Plaintiffs essentially ignore the defects raised by this Court

18   and, instead, try to capitalize on an unrelated criminal indictment of a non-party, Mr. Beckstead,

19   and allege that Mr. Beckstead and Mr. Goettsche engaged in a conspiracy to file fraudulent tax

20   returns on behalf of Mr. Goettsche in Nevada and created Nevada entities that Mr. Goettsche

21   allegedly used to hold assets as part of a money laundering conspiracy. *Id.* ¶ 5(b-d).  But even if

22   these allegations were true—which they are not—they have nothing to do with the plaintiffs'

23   securities and state law causes of action and do not come close to the high standard of establishing

24   general jurisdiction over Mr. Goettsche.  Accordingly, dismissal for lack of personal jurisdiction

25   is, once again, proper.

26       Moreover, Plaintiffs do not dispute that they failed to comply with the mandatory dispute

27   resolution provisions in their Membership Agreements, which require Plaintiffs to raise their

28   claims first through mediation and then, if unsuccessful, through arbitration. As these provisions

are enforceable against the Plaintiffs, dismissal is still independently warranted under Rule 12(b)(6) and the Federal Arbitration Act. ECF No. 35 at 13-17.

Finally, and solely in the alternative, if the Court does not dismiss the action, it should issue an unconditional stay pending resolution of the criminal proceeding in the District of New Jersey against Mr. Goettsche.  There is no reason to proceed against Mr. Goettsche, the only one of five named defendants who has appeared, given pending and parallel criminal proceedings and the absence of any prejudice to Plaintiffs, particularly in light of Plaintiffs' newfound reliance on allegations related to the criminal indictment and plea of Mr. Beckstead, who is expected to be a witness in the criminal case.

## II.   DISCUSSION

### A.   Plaintiffs Still Cannot Establish That This Court Has Personal Jurisdiction Over Mr. Goettsche.

#### i.   There Is No Basis to Deviate from the March 28, 2022 Order of Dismissal.

Judge Dorsey correctly determined that the Complaint did not establish personal jurisdiction over Mr. Goettsche. ECF No. 30 at 7. Thus, the analysis of the Amended Complaint does not begin from scratch; instead, this Court should only look at the differences in the Amended Complaint to determine whether they cure the deficiencies previously identified.

In fact, it would be contrary to the law of the case doctrine if Plaintiffs were permitted to use their Opposition as a belated, de facto motion for reconsideration of the Court's prior order of dismissal. In *Delta Savings Bank v. United States*, the Ninth Circuit held that the law of the case doctrine was applicable to a subsequent decision by a district court judge that reconsidered a different district court judge's decision in the same case. 265 F.3d 1017, 1027 (9th Cir. 2001). "The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.* (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997)). As none of these situations is applicable, Plaintiffs can only avoid dismissal if the changes in the Amended Complaint are material, which they are not.

ii.     Plaintiffs Fail to Establish General Personal Jurisdiction over Mr. Goettsche.

Despite previously conceding that this Court lacks general personal jurisdiction over Mr. Goettsche (*see* ECF No. 28 ("Plaintiffs do not dispute that this Court does not have general jurisdiction over Defendant Goettsche."); ECF No. 30 at 4, n.1 ("The parties agree that the Court does not have general jurisdiction over Mr. Goettsche)), Plaintiffs now backtrack without explanation (*see* ECF No. 37 at 9). Plaintiffs rely exclusively on case law that predates the controlling case of *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), which clearly states "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."

As an initial matter, Plaintiffs' Opposition improperly adds and relies on allegations beyond the four corners of their Amended Complaint regarding two inactive and revoked Nevada entities of which Mr. Goettsche is or was allegedly a president/director (*see id.*).[1]  Although these allegations do not establish general jurisdiction over Mr. Goettsche (as further discussed below), they are nonetheless improper to raise in motion practice and cannot be considered as part of this Court's jurisdictional analysis. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court <u>may not</u> look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Kersh v. Gastelo*, No. 221-CV-01921-CAS-JDE, 2022 WL 1037754, at *1 (C.D. Cal. Feb. 28, 2022).

Even still, it is well-established that these sorts of allegations do not support general jurisdiction.  In order to establish general jurisdiction over a non-resident defendant like Mr. Goettsche, the Plaintiffs must establish that Mr. Goettsche "has 'substantial' or 'continuous and systematic' contacts with the forum state." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163,

---

[1]  Specifically, for the first time Plaintiffs allege in their Opposition that Mr. Goettsche "is a president/director of two Nevada entities dating back to 2011," including "Cryptoback Inc., which was formed on or about October 15, 2015, and is likely one of the entities which Goettsche and his cohorts used to money-launder Plaintiffs' and other victims' investment capital" ECF No. 37 at 9-10.  Plaintiffs go on to add—again for the first time—that "[w]hile the entities are currently both currently revoked . . . it seems that at least from 2015 until approximately 2019, Cryptoback, Inc. held a valid business license to operate within the State of Nevada." *Id.* at 10.  These new allegations are entirely speculative and outside of the four corners of the Complaint and cannot be considered at this stage.

1    1171 (9th Cir. 2006).   This standard is "high," demanding that "contacts with a state must

2    'approximate physical presence.'"   *Id.* at 1169; *see also Ruhlmann v. Rudolfsky*, No. 2:14-cv-

3    00879-RFB, 2015 WL 5692054, at *4 (D. Nev. Sept. 27, 2015) ("General jurisdiction requires a

4    defendant be 'domiciled in the forum state,' or that he engage in 'continuous and systematic

5    general business contacts' that 'approximate physical presence' in the forum state.").   Here,

6    Plaintiffs claim general personal jurisdiction over Mr. Goettsche based on one meagre allegation:

7    Mr. Goettsche *previously managed* business entities in Nevada that *previously* held licenses to

8    operate in Nevada (but that are *no longer active today*), which were allegedly used to hold Nevada

9    real estate and assets as part of a money laundering and tax fraud scheme with Mr. Beckstead, a

10   non-party, who himself (not Mr. Goettsche) was the registered agent thereof. ECF No. 37 at 9-10.

11   Indeed, Plaintiffs themselves admit that such contacts are not continuous, as the Nevada "entities

12   are currently both revoked" and moreover they appear to have been revoked in 2011 and 2018,

13   prior to the filing of this action and presumably prior even to Plaintiffs' investments. *Id.*at 10, Exs.

14   2, 3.

15       Additionally, it is black letter law that merely owning property or business entities in a

16   state does not establish general jurisdiction over an individual.  *See, e.g.*, *Han v. Yangrai Cho*, No.

17   18-CV-00277-HG-KJM, 2019 WL 1300070, at *3 (D. Haw. Mar. 21, 2019) ("The mere presence

18   of property in a forum state does not establish sufficient relationship between the owner of the

19   property and the forum state to support the exercise of general jurisdiction over an unrelated cause

20   of action."), *aff'd sub nom. Han v. Cho*, 804 F. App'x 864 (9th Cir. 2020); *Harrell v. Kepreos*, 175

21   F. App'x 793, 794 (9th Cir. 2006) (holding that having vehicles registered in a state and owning

22   property located in a state is insufficient to "meet the high standard of general jurisdiction"); *NuCal*

23   *Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 989 (E.D. Cal. 2012) ("[M]ere ownership

24   of the company that is subject to personal jurisdiction in the forum is insufficient to confer the

25   court with personal jurisdiction over the Trust absent allegations or evidence that the Trust

26   purposefully availed itself of the benefits of conducting business in the forum."); *Hendricks v. New*

27   *Video Channel Am., LLC*, No. 2:14-CV-02989-RSWL-S, 2015 WL 3616983, at *4 (C.D. Cal. June

28

8, 2015) (finding that being an owner and director of a company in a state, as well as traveling to that state numerous times, are insufficient to establish general jurisdiction over an individual).

Accordingly, Plaintiffs' allegations come nowhere near establishing contacts approximating Mr. Goettsche's "physical presence" in Nevada and fail to establish general jurisdiction over non-resident Mr. Goettsche.

iii.    Plaintiffs Fail to Establish Specific Personal Jurisdiction over Mr. Goettsche.

Plaintiffs Amended Complaint fails to address this Court's prior order of dismissal for lack of specific jurisdiction under both purposeful availment and purposeful direction theories and should accordingly be dismissed again. Instead of fixing the deficiencies that this Court clearly articulated, Plaintiffs add a limited number of new allegations about an alleged money laundering and tax evasion conspiracy between Mr. Goettsche and non-party Mr. Beckstead, wherein the fraudulent tax returns were allegedly prepared in Nevada and they allegedly used Nevada entities to hold assets. Plaintiffs assert in conclusory fashion *for the first time* in their Opposition brief (and therefore it cannot be considered) to include "Plaintiffs' and other victims' investment capital." ECF No. 37 at 10. These new allegations, however, shed *no* light on Mr. Goettsche's *own* conduct in Nevada that gives rise to the alleged securities law causes of action asserted in this action.

The heart of Plaintiff's purposeful direction theory is, once again, that Mr. Goettsche directed others to solicit funds from Nevada entities through a website. *See* ECF No. 33 ¶ 5(a). However, this Court flatly rejected this allegation as insufficient in its prior order of dismissal, stating, "the Complaint merely suggests that Defendants solicited investments from Nevada residents in the State of Nevada. The Complaint does not explain *how* this solicitation was an act *expressly aimed at Nevada*, rather than an act generally aimed at anyone with access to the internet." ECF No. 30 at 5 (emphasis added). Instead of addressing this deficiency, Plaintiffs add unrelated allegations regarding the purported use of Nevada entities as part of a money laundering and tax fraud scheme with Mr. Beckstead. However, none of these allegations demonstrate *how* Mr. Goettsche *himself* aimed the solicitation of investors at Nevada, as opposed to over the internet generally, which is critical to this Amended Complaint.

1    Plaintiffs' purposeful availment theory is likewise uncured.  In this Court's prior finding

2    of no purposeful availment, this Court held that "Plaintiffs' Complaint provides no allegations

3    concerning the interactivity level of Bitclub's website, its geographic scope, or whether Bitclub or

4    Mr. Goettsche individually targeted either Plaintiff" and Plaintiffs "neglect to provide any

5    explanation of how Mr. Goettsche intended to 'serve the market' in Nevada." *Id.* at 7.  Ignoring

6    these deficiencies entirely, Plaintiffs now claim that Mr. Goettsche engaged in a money laundering

7    and tax fraud scheme in Nevada and "purposefully availed himself of Nevada's protections

8    because his Nevada entities were used to shield Goettsche association with the Bitclub Network

9    and disguise income derived from the Bitclub Network." ECF No. 37 at 13.  Not only do these

10   allegations have nothing to do with this civil securities lawsuit, but they have nothing to do with

11   showing how Mr. Goettsche intended to "serve the market" in Nevada, as required.   For these

12   reasons alone, specific jurisdiction fails.

13   Additionally, Plaintiffs fail to establish that their federal and state securities law claims

14   based on alleged fraudulent misrepresentations arise out of Mr. Goettsche's supposed contacts

15   with Nevada.  To be clear, Mr. Goettsche's *only* contacts alleged in the Amended Complaint are

16   (1) Plaintiffs were solicited in Nevada allegedly "at the direction of Defendant Goettsche" (albeit

17   in conclusory fashion and without any factual heft); (2) his alleged participation in a money

18   laundering scheme with Mr. Beckstead to launder funds; (3) his alleged use of Nevada entities to

19   "shield" his "association with the Bitclub Network and to disguise income derived" therefrom;

20   (4) his alleged hiring of a Nevada CPA,[2] who filed fraudulent tax returns in Nevada on his behalf

21   and at his alleged direction; and (5) his alleged holding of assets and/or entities in Nevada. *See*

22   ECF No. 33 ¶ 5.  This Court has previously found the first contact to be insufficient to establish

23   personal jurisdiction over Mr. Goettsche (ECF No. 30 at 5), and the remaining contacts facially

24   have *nothing* to do with Plaintiffs' causes of action for securities law violations and related fraud

25

26   [2] The location of an outside professional, such as an accountant, does not establish personal
     jurisdiction over the individual that retained that professional.  *Nat'l Conf. for Cmty. & Just., Inc.*
27   *v. Bos. Ctr. for Cmty. & Just., Inc.*, No. 06 C 4854, 2007 WL 9814430, at *10 (N.D. Ill. Mar. 8,
     2007) (concluding that the location of an outside accountant did not create minimum contacts with
28   that jurisdiction).

claims, all premised on fraudulent misrepresentations related to their purchase of an alleged security (ECF No. 33 ¶¶ 7-13, 19-24).

Indeed, Plaintiffs fail to make any showing about how the alleged securities law violations "arise" out of Mr. Goettsche's alleged money laundering and or tax fraud conduct (they do not). Even if these allegations are true, which they are not, the securities and fraud claims can only arise out of the fraudulent misrepresentations made as to the alleged securities, not any alleged money laundering scheme (which, to include money from Plaintiffs' purchase of securities, necessarily would have to occur *after* the purchase of said securities). To be clear, what happened to the money *after* the alleged security purchase is not at issue in these causes of action based on fraudulent misrepresentation, which relates entirely to what happened *before* the alleged security purchase. In other words, Plaintiffs' claims would still have arisen *but for* Mr. Goettsche's supposed contacts with Nevada, as Plaintiffs still would have purchased the same alleged securities based on the same alleged misrepresentations that underlie the Amended Complaint. Plaintiffs fail to articulate *how* these alleged contacts with Nevada *give rise* to the causes of action asserted herein and, therefore, Plaintiffs fail to show specific jurisdiction exists as to Mr. Goettsche.[3]

> iv.   <u>Plaintiffs' Requests for Leave to Amend and Jurisdictional Discovery Should be Denied.</u>

Plaintiffs request leave to amend their complaint for a second time, but fail to comply with Local Rule 15-1(a), as any such request "must attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading." Further, Plaintiffs do not provide any response to why further amendment would not be futile. They instead ask for jurisdictional discovery, which would amount to nothing more than a fishing expedition. A plaintiff

---

[3] In addition to the foregoing, Mr. Goettsche incorporates all arguments raised in his motion to dismiss. ECF No. 35. Mr. Goettsche also strongly opposes Plaintiffs' arguments found on page 16-18 of its Opposition brief (ECF No. 37), wherein it accuses Mr. Goettsche of making "bald-faced misrepresentations to this Court" regarding the deficiency of Plaintiffs' jurisdictional allegation amendments. Plaintiffs improperly use their Opposition as an avenue to either bring in additional allegations outside of the four corners of their Amended Complaint or otherwise refine their allegations in order to try to establish jurisdiction over Mr. Goettsche. This is improper. He relies on a series of alleged contacts, all of which are entirely unrelated to the alleged securities law claims asserted in this action.

"seeking jurisdictional discovery must provide some basis to believe that discovery will lead to relevant evidence providing a basis for the exercise of personal jurisdiction and courts are within their discretion to deny requests based "'on little more than a hunch that [discovery] might yield jurisdictionally relevant facts.'" *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1119 (D. Nev. 2013) (*quoting Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (plaintiffs' statement that they "believe" discovery will enable them to demonstrate personal jurisdiction insufficient to require jurisdictional discovery).

What is most striking about Plaintiffs' request is that, if discovery could establish jurisdiction, it would be within their control. Plaintiffs do not allege that they had any contact whatsoever with Mr. Goettsche or that he even knew they existed or resided in Nevada. Permitting discovery into Mr. Goettsche's connections with Nevada even though Plaintiffs cannot allege their own connection with Mr. Goettsche would be futile.

**B.   Mr. Goettsche is Entitled to Enforce the Dispute Resolution Signed by Plaintiffs.**

Plaintiffs' sole argument on arbitration is that Mr. Goettsche was not a party to the Membership Agreement and therefore lacks standing to enforce the dispute resolution provisions. ECF No. 37.[4] Plaintiffs do not cite any case law for their position, which is incorrect. *CMB Infrastructure Grp. IX, LP v. Cobra Energy Inv. Fin., Inc.*, No. 2:21-CV-00214-JAD-DJA, 2021 WL 5304175, at *13 (D. Nev. Nov. 15, 2021) ("[N]onsignatories may be bound to the arbitration agreements of others [under] common law principles of contract and agency law." (internal quotations omitted)). Plaintiffs allege that Mr. Goettsche directed the actions of defendant BitClub and participated in a conspiracy to induce them to enter into the Membership Agreement. This is more than sufficient to permit Mr. Goettsche to enforce the dispute resolution provisions of the Membership Agreement, which is explicitly drafted to incorporate the claims brought by Plaintiffs.

/ / /

---

[4] Plaintiffs also assert that they attempted to mediate in good faith, but produce no proof of this fact, which is also not contained in either of their pleadings.

1

### C.    A Stay is Justified Under all of The *Keating* Factors.

2          There are more than sufficient grounds to dismiss this action outright for lack of personal

3    jurisdiction and for failure to abide by a mandatory arbitration provision.  However, solely in the

4    alternative, Mr. Goettsche requests this Court exercise its discretion to stay this litigation pending

5    resolution of Mr. Goettsche's criminal case in the District of New Jersey.  Ignoring (and thus

6    conceding) the significant Fifth Amendment implications of this case proceeding parallel with the

7    criminal case, Plaintiffs instead argue that this matter should proceed so that "Plaintiffs can be

8    compensated as soon as possible." (ECF No. 37 at 20. Plaintiffs do not adequately address the

9    factors set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) and

10   merely state that they would like to receive damages sooner rather than later.  This specific

11   financial motivation does not implicate the general interest or public interest as to outweigh the

12   harm to the rights of Mr. Goettsche.  *See Perez v. Station Casinos LLC*, No. 215-CV-01553-JAD-

13   NJK, 2016 WL 8959135, at *2 (D. Nev. Feb. 8, 2016) ("engaging in the type of duplicative

14   discovery that is certain to occur once Defendant Nelson's Fifth Amendment rights are no longer

15   implicated would place a significant burden on Defendants, and on the Court's docket as well,

16   considering the unknown number of deadlines that would have to be extended once Defendants

17   know which discovery would have to be duplicated.").

18          The Plaintiffs' own delays and errors in service fatally undermine their purported interest

19   in "proceeding expeditiously with this litigation." *See Keating*, 45 F.3d at 324.  Indeed, to date,

20   they apparently have only served two of the five named defendants (and only one has appeared)

21   and have sought extensions of time to serve and made multiple requests to amend their complaint,

22   instead of proceeding diligently.   Even assuming that Plaintiffs might be entitled to any

23   compensation, there is no harm in staying this matter, as any amount potentially due would

24   necessarily involve the other defendants, none of whom have appeared and may not have even

25   been served properly.  Plaintiffs have obtained an entry of default against one other defendant but

26   do not appear to have taken further action.

27   / / /

28   / / /

1

### III.   CONCLUSION

2          Despite getting a second chance, Plaintiffs continue to fall well short of meeting their

3    burden to demonstrate that this Court has personal jurisdiction over Mr. Goettsche.  For this reason

4    alone, the Court may—once again—dismiss this case, this time *with prejudice*.  It is additionally

5    clear that Plaintiffs failed to abide by a binding dispute-resolution agreement, necessitating

6    dismissal.  Solely in the alternative, the Court may stay this case pending Mr. Goettsche's ongoing

7    criminal case in the District of New Jersey.  Thus, Mr. Goettsche respectfully requests that the

8    Court, once again, grant his Motion to Dismiss consistent with the prior order.

9          DATED: May 23, 2022.

10                                            McDONALD CARANO LLP

11                                            */s/ Chelsea Latino*
12                                            Adam Hosmer-Henner, Esq. (NSBN 12779)
                                              Phil Mannelly, Esq. (NSBN 14236)
13                                            Chelsea Latino, Esq. (NSBN 14227)
                                              100 West Liberty Street, 10th Floor
14                                            Reno, NV 89501
                                              (775) 788-2000
15                                            ahosmerhenner@mcdonaldcarano.com
                                              pmannelly@mcdonaldcarano.com
16                                            clatino@mcdonaldcarano.com

17                                            Benjamin J.A. Sauter
                                              Amanda N. Tuminelli
18                                            KOBRE & KIM LLP
                                              800 Third Avenue, 6th Floor
19                                            New York, NY 10022
                                              (212) 488-1288
20                                            benjamin.sauter@kobrekim.com
                                              amanda.tuminelli@kobrekim.com
21                                            (*Admitted Pro Hac Vice*)

22                                            *Attorneys for Defendant Matthew Brent*
                                              *Goettsche*

23

24

25

26

27

28